# COOK, KURTZ & MURPHY, P.C.
ATTORNEYS & COUNSELORS AT LAW
85 MAIN STREET
P.O. BOX 3939
KINGSTON, N.Y. 12402

(845) 331-0702

| | | |
|---|---|---|
| **ERIC M. KURTZ** | FAX: (845) 331-1003 | **ANDREW J. COOK, SR. (1884-1958)** |
| **THOMAS A. MURPHY** | e-mail: ekurtz@cookfirm.com | **ANDREW J. COOK, JR. (1918-1997)** |
| **MICHAEL T. COOK** | www.cookfirm.com | **FRANCIS X. TUCKER (1923-1987)** |
| **JOHN C. BURNS** | | **ROBERT D. COOK (Retired)** |
| **MATTHEW J. ALGINO** | | |

January 6, 2025

Hon. Miroslav Lovric
Federal Building and US Courthouse
15 Henry Street
Binghamton, New York 13901

Re:  **Happy Hour Drinks Company, Inc. vs. Can Man, LLC d/b/a Best Bev Co., and Best Bev LLC
Case No.: 3:24-cv-00047(TJM/ML)
Our File No.: 2024-116**

Dear Magistrate Judge Lovric:

This correspondence is submitted in opposition to Happy Hour Drinks Company, Inc.'s (hereinafter "Plaintiff") motion to compel seeking production of financial records in plaintiff's third demand for documents and third demand for interrogatories. As the Court is aware, Plaintiff brings this complaint against Defendants Can Man, LLC and Best Bev, LLC for claims of negligence, unjust enrichment, fraudulent misrepresentation, and fraudulent concealment (Doc. No. 1, at pages 7-14). Plaintiff is seeking damages resulting from production runs that occurred in November 2022, April 2023, and July 2023 and further alleges that these failed runs nearly resulted in Plaintiff's bankruptcy (*Id.* at pages 14-15).

Discovery to date has been extensive and has revealed that from March of 2021 up until June of 2022, the defendant, Can Man, LLC had performed at least four (4) production runs at its Pennsylvania facility involving Plaintiff's product without any issue. The first issue was discovered by employees of Can Man, LLC in September of 2022 and Plaintiff was immediately notified of the same (that being a discovery of pinhole leaks in inventory stored at Can Man's facility in the State of Pennsylvania). In late September and early October of 2022 another production run was performed by Can Man, LLC. Shortly after that production run Can Man, LLC was observing leaking cans

for a number of its customers that were not pinhole leaks but, rather, leaks in the seams of the cans which resulted in emails which were previously disclosed to Plaintiff. Having experienced this issue in the fall of 2022, Plaintiff retained a second co-packer in Las Vegas Nevada to produce its product with the first production run occurring in December of 2022. This second co-packer went on to perform approximately three additional production runs in 2023 without any leaking issue. During this time, Can Man LLC continued to investigate the cause of the pinhole leaks, requesting the specs for the aluminum cans provided by plaintiff through a manufacturer by the name of Ardagh and sending out samples of Plaintiff's product to a lab to determine the copper and dissolved oxygen levels. Both Plaintiff and Can Man, LLC were incurring costs (Plaintiff having to buy back damaged products and Can Man, LLC not receiving payments for the production runs). Despite these issues, at least two additional production runs were performed. The first was performed by Can Man, LLC in April of 2023, however, despite the changes to the formula, Plaintiff claims that the product continued to leak from the cans. By June of 2023, Can Man, LLC was winding down its production and Best Bev, LLC was opening up a new, larger, faster production facility in Waverly, New York. Best Bev, LLCs one and only production run for the Plaintiff occurred in July of 2023 but resulted in a defective seam in the cans. Plaintiff was notified of this issue and documentation concerning that issue has already been exchanged. Plaintiff was never invoiced for that final production run by Best Bev, LLC. According to the Plaintiff, its business shut down in mid-November of 2023.

Thus, from the above information one can conclude that the issues in this case involve four production runs performed between June of 2022 and July of 2023.

## **STANDARD OF REVIEW**

Fed. R. Civ. P. Rule 26(b)(1) states that "[u]nless otherwise limited by court order . . . Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. Rule 26(b)(1) (emphasis added).

"Information is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" ***Weilburg v. Koss*, No. 522CV00435BKSTWD, 2023 WL 4364201, at \*1 (N.D.N.Y. July 6, 2023)** (quoting Fed R. Evid. 401). "Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial." ***Weilburg v. Koss*, No. 522CV00435BKSTWD, 2023 WL 4364201, at \*1**. "[I]t is well established that relevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself." ***Weilburg v. Koss*, No. 522CV00435BKSTWD, 2023 WL 4364201, at \*1** (quoting ***Refco Grp. Ltd., LLC v.***

*Cantor Fitzgerald, L.P.*, **No. 13 CIV. 1654 RA HBP, 2014 WL 5420225 at \*7 (S.D.N.Y. Oct. 24, 2014)** (quoting *Arch Assocs., Inc. v. HuAmerica Int'l, Inc.*, **No. 93 CIV. 2168 (PKL), 1994 WL 30487 at \*1 (S.D.N.Y. Jan. 28, 1994)**)) [internal quotation marks omitted]; (citing *Degulis v. LXR Biotechnology, Inc.*, **176 F.R.D. 123, 125 (S.D.N.Y. 1997)**; *Quaker Chair Corp. v. Litton Bus. Sys., Inc.*, **71 F.R.D. 527, 530-531 (S.D.N.Y. 1976)**). "Relevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Weilburg v. Koss*, **No. 522CV00435BKSTWD, 2023 WL 4364201, at \*1** (quoting *Oppenheimer Fund, Inc. v. Sanders*, **437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)**). "However, the amended rule is intended to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse' by emphasizing the need to analyze proportionality before ordering production of relevant information." *Weilburg v. Koss*, **No. 522CV00435BKSTWD, 2023 WL 4364201, at \*1** (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment).

"The burden of demonstrating relevance remains on the party seeking discovery, and the newly-revised rule 'does not place on the party seeking discovery the burden of addressing all proportionality considerations.'" *Weilburg v. Koss*, **No. 522CV00435BKSTWD, 2023 WL 4364201, at \*1** (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment). "In general, when disputes are brought before the court, 'the parties' responsibilities [ ] remain the same' as they were under the previous iteration of the rules, so that the party resisting discovery has the burden of showing undue burden or expense." *Weilburg v. Koss*, **No. 522CV00435BKSTWD, 2023 WL 4364201, at \*1** (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment) (citing *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, **284 F.R.D. 132, 135 (S.D.N.Y. 2012)**).

> The advisory committee's notes to the recent amendment of Rule 26 further explain that "[a] party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery."

*Weilburg v. Koss*, **No. 522CV00435BKSTWD, 2023 WL 4364201, at \*2** (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment).

"A district court has broad latitude to determine the scope of discovery and to manage the discovery process." *Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, **2024 WL 1285390, at \*1 (N.D.N.Y. 2024)** (quoting *Tromblee v. New York*, **2022 WL 2818222, at \*2 (N.D.N.Y. 2022)** (quoting *EM Ltd. v. Republic of Argentina*, **695 F.3d 201, 207 (2d Cir. 2012)**, *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, **573 U.S. 134, 134 S. Ct. 2250, 189 L. Ed. 2d 234 (2014)**)) [internal quotation marks

omitted]. "This discretion includes imposition of 'limitations or conditions on discovery ... [and] extends to granting or denying motions to compel or for protective orders on just terms.'" *Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, 2024 WL 1285390, at *1 (quoting *Jenny Yoo Collection, Inc. v. David's Bridal, Inc.*, 2019 WL 6841966 **(S.D.N.Y., 2019)**). "[I]t is the discovering party who 'has the burden of demonstrating that the information sought is relevant to the subject matter of the pending action." *Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, 2024 WL 1285390, at *1 (quoting *Russell v. Scott*, 2022 WL 3084339, at *3 (D.Vt. 2022) (quoting *U.S. v. International Business Machines Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974) and citing *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F.Supp.3d 124, 139 (S.D.N.Y. 2017) [internal quotation marks omitted]. "The party opposing discovery on the grounds of relevancy also has a burden: to demonstrate that the requested documents either do not come within the broad scope of relevance defined pursuant to [Rule] 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure." *Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, 2024 WL 1285390, at *1 (quoting *Russell v. Scott*, 2022 WL 3084339, at *3 (quoting *Du Grenier v. Encompass Insurance Company*, 2018 WL 4692354, at *4 (D.Vt. 2018) (quoting *Go v. Rockefeller University*, 280 F.R.D. 165, 176 (S.D.N.Y. 2012)))) [internal quotation marks omitted].

## ARGUMENT

Plaintiff's motion to compel seeks to have Defendants Can Man and Best Bev produce documentary responses to Plaintiff's Third Demand for Production of Documents, request number 2, 4, and 7, and provide "non-evasive" responses to interrogatories, 2, 6, 7, and 8 in Plaintiff's Third Set of Interrogatories. Doc. No. 59 at 1. Plaintiff's Third Demand for Production of Documents includes the following demands:

2. Provide all financial statements for Can Man, LLC and Best Bev, LLC for the past three years, including any audit reports and tax returns.
4. Provide all bank statements, investment account statements and financial account statements for Can Man, LLC and Best Bev, LLC for the past three years.
7. Produce any documents related to the loans or financial obligations of Can Man, LLC and Best Bev, LLC including loan agreements, promissory notes and payment records.

*Id.* Defendants objected to these demands on the grounds that they were patently improper, overly broad, vague, ill-defined, unduly burdensome, not proportional to the needs of the litigation, not reasonably limited in time or scope and not reasonably calculated to lead to the discovery of admissible evidence. Essentially, the demands were irrelevant or, at the very least, premature. Despite these objections, in a good faith

effort to resolve any discovery dispute, Defendants offered a less intrusive means of disclosure by providing a statement laying out Defendants' assets and current gross annual revenue. Defendants even agreed to provide the information in affidavit form in an effort to avoid any unnecessary motion practice.

Turning to Plaintiff's Third Set of Interrogatories, Plaintiff demands that Defendants answer the following:

2. Describe the nature of the business operations of Can Man, LLC and Best Bev, LLC during the period from March of 2021 to the present, including any changes in business activities or focus.
6. List all financial statements, including balance sheets, profit and loss statements and cash flow statements for Can Man, LLC and Best Bev, LLC for the past three years.
7. Provide a list of all bank accounts, investment accounts, and other financial accounts held by Can Man, LLC and Best Bev, LLC including account numbers and the financial institutions where these accounts are held.
8. Disclose any loans or other financial obligations of Can man, LLC and Best Bev, LLC, including details of lenders, amounts owed and payment schedules.

Defendants objected to these demands on the same grounds.

Now, Plaintiff finds Defendants' discovery responses insufficient and moves to compel production of records and responses arguing that: (1) financial documents are directly relevant to Plaintiff's alter ego and punitive damages claims and are discoverable; (2) Defendants' interrogatory responses are contradictory and evasive; and (3) the supplemental responses do not contain verifications.

## POINT I

### PLAINTIFF'S MOTION TO COMPEL SHOULD BE DENIED BECAUSE THE REQUESTED DOCUMENTS ARE NOT RELEVANT TO THE PUNITIVE DAMAGES CLAIM.

"In order for a requesting party to prevail on a motion to compel the production of tax returns, whether corporate or personal, the requesting party must satisfy a two-prong test: (1) the tax returns must be relevant to the subject matter of the action, and (2) a compelling need must exist because the information is not readily obtainable from a less intrusive source. **Sadofsky v. Fiesta Products, LLC, 252 F.R.D 143, 149 (E.D.N.Y. 2008)** (citing **Hamm v. Potamkin, 1999 WL 249721, at \*2 (S.D.N.Y. 1999)**). "The showing of a compelling need for the information within the tax returns falls upon the party making the demand for this form of disclosure." **Trudeau v. New York State**

5

*Consumer Protection Bd.*, 237 F.R.D at 331 (N.D.N.Y. 2006) (citing *Laurin v. Pokoik*, 94 AFTR2d 2004-7080 (S.D.N.Y. 2004); *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D 625, 627 (E.D.N.Y. 1988)).

Plaintiff argues that the two-prong test referenced in *Sadofsky* is satisfied because "the tax returns are broadly relevant to both the issues of alter ego and punitive damages." Doc. No. 59 at 6. However, there are no alter ego claims in the Complaint and the claim for punitive damages is premature. There has been no liability determination by any Judge or Jury to even get to the issue of punitive damages and even then, Defendants have provided information concerning their respective assets and gross revenue to address any issues regarding an ability to pay a judgment. It is also noteworthy that Defendants have provided Plaintiff with: 1) copies of leases for the various production facilities they run and 2) copies of invoices for the purchase of production line equipment.

Financial statements are considered relevant where a plaintiff seeks punitive damages, however, "courts in this circuit are split on the issue of allowing pretrial disclosure of financial information relevant to a determination of punitive damages. Some permit it. Others have found such disclosure is premature." *Pasternak v. Dow Kim*, 275 F.R.D 461, 463 (S.D.N.Y. 2011) (quoting *Copantitla v. Fiskardo Estiatorio, Inc.*, 09 CIV. 1608 RJH JCF, 2010 WL 1327921, at *16 (S.D.N.Y. 2010) [citations omitted]). The court in *Hazeldine* looked at the timing of punitive damages discovery. *Hazeldine v. Beverage Media, Ltd.*, 94 CIV. 3466 (CSH), 1997 WL 362229, at *2 (S.D.N.Y. 1997). There, the court summarized the following

> In *Tillery v. Lynn,* 607 F.Supp. 399, 402 (S.D.N.Y.1985), involving a state law claim for fraud, then Chief Judge Motley allowed the plaintiff to take discovery of defendant's personal assets prior to a determination of liability for punitive damages, reasoning that "[i]t would be unduly burdensome to plaintiff, and most particularly a jury and the court, to delay resolution of the issue as to the amount of punitive damages, if any, which should be awarded until discovery as to defendant's personal assets had been completed." However, to avoid any prejudice to the defendant, Judge Motley bifurcated the trial between liability and damages.

*Hazeldine v. Beverage Media, Ltd.*, 94 CIV. 3466 (CSH), 1997 WL 362229, at *2. The *Hazeldine* court then compared the following

> In contrast, in *Davis v. Ross,* 107 F.R.D. 326, 327 (S.D.N.Y.1985), involving a state law claim for libel, Judge Carter relied on New York law and denied plaintiff's request for financial discovery prior to trial, holding that "[d]iscovery of defendant's net wealth will become necessary only in the event plaintiff obtains ... a special verdict [that she is entitled to punitive damages.]"

*Hazeldine v. Beverage Media, Ltd.*, 94 CIV. 3466 (CSH), 1997 WL 362229, at *2.

Notably, in ***Pasternak v. Dow Kim*** (**275 F.R.D. at 463**), the court held that disclosure of financial information was premature given that "the discovery sought is highly sensitive and confidential, it would be premature to order that it be produced given that the need for its disclosure may be abrogated by motion." The court in ***McNamee*** also reached a similar conclusion: "The financial information sought here is clearly sensitive and confidential, and [the defendant] has indicated that he intends to file a motion for summary judgment which may negate the need for disclosure." ***McNamee v Clemens* 09 CV 1647 SJ, 2013 WL 6572899 (E.D.N.Y. 2013),** *clarified on denial of reconsideration,* **09 CV 1647 (SJ), 2014 WL 12775660 (E.D.N.Y. 2014)**. To be clear, dispositive motions in this matter have not been filed to date

Plaintiff claims that the documents requested—all financial statements, all bank statements, investment account statements, financial account statements, and any documents related to the loans or financial obligations dating back three years—are relevant because Cincinnati Insurance Group (hereinafter "Cincinnati Insurance") has filed a declaratory judgment action to be relieved of its coverage obligations in this case and, as such, "there *may* be no insurance coverage." Doc. No. 59 at 6. With this allegation, Plaintiff itself admits that this demand is premature given that there is only a *possibility* that there may be no insurance coverage provided by Cincinnati Insurance. Indeed, Cincinnati Insurance has not yet even filed a declaratory judgment action (which Defendants, in their own self-interest, intend to vigorously oppose) and if Cincinnati Insurance is not successful then insurance coverage will apply making Plaintiff's demand for financial statements moot.

Plaintiff baldly claims that "Defendants' finances are at center issue in this case considering there may be no insurance coverage and considering that one of the Defendants no longer operates its business." Doc. No. 59 at 6. Plaintiff does not give any indication how the financial status of one Defendant is "at center issue in this case," other than providing that bare conclusion. Plaintiff attempts to argue that Defendants, by answering Plaintiff's interrogatory with "Can Man, LLC has assets in excess of $1,000,000 and Best Bev, LLC has assets in excess of $50,000,000 with annual gross revenue of approximately $8,000,000," has placed Defendants' financial condition at issue. Doc. No. 59 at 7. On the contrary, Plaintiff seeks to put Defendants' financial condition at issue by asking such a question. As noted above, this information was provided as a good faith effort to avoid unnecessary motion practice. The fact that one Defendant has ceased operations has no bearing on the elements of Plaintiff's claims and only relates to damages should Plaintiff's action be successful. Therefore, this issue would also be made moot if Plaintiff was not awarded any damages. As such, Plaintiff's demand for Defendants' financial records is premature, and, therefore, the records are not relevant at this stage in the litigation.

Even if the Court finds that Defendants' financial status is at issue in this case, then discovery should still be limited to less intrusive means. Plaintiff seeks all financial records dating back three years, which is unnecessary as Plaintiff only needs these

records to determine whether Defendants could satisfy a judgment should Plaintiff's claims prevail. Neither Defendant has filed for bankruptcy to date and information concerning the relative financial health of either defendant can be obtained through a less intrusive, less burdensome means by way of an affidavit.

Plaintiff's gratuitous note that it provided a tax return to Defendants pursuant to a demand served is obviously of no moment. It is Plaintiff who is seeking damages and alleging that the business was worth 20 million dollars. An analogy could be drawn to a personal injury auto accident. Plaintiff must provide a defendant with medical records if he or she is claiming personal injury. That does not mean that the defendant must provide his medical records (they would only be discoverable if defendant was making a claim that a medical condition *caused* the accident as a defense to liability).

## POINT II

### PLAINTIFF'S MOTION TO COMPEL SHOULD BE DENIED BECAUSE THE REQUESTED DOCUMENTS ARE NOT RELEVANT TO THE ALTER EGO CLAIM.

Plaintiff continues to argue that the requested documents are "highly relevant for Plaintiff to evaluate its alter ego claims." (Doc. No. 59 at page 6). Plaintiff seeks financial documents dating back three years which Plaintiff claims "is appropriate considering the changes in structure and ownership over the last three years." *Id.* However, Plaintiff has not made any alter ego claims and there are no facts in the complaint or anywhere else in Plaintiff's submissions indicating the potential existence of an alter ego claim. Plaintiff merely hints at an alter ego allegation in its second argument stating that an alter ego claim *could* exist because there are no recorded communications or agreements between Defendants Can Man and Best Bev (Doc No. 59 at page 7). In addition, Plaintiff has failed to identify which Defendant or other individual engaged in the use of an alter ego. Specifically, Plaintiff alludes that the "entities are alter egos of each other and are controlled by a single individual." (Doc. No. 59 at page 7). Without providing clarity as to the identity of the individual or entity that used an alter ego and the acts they committed, Plaintiff's alter ego allegations are futile. *See* **EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005).** If Plaintiff wishes to bring an alter ego claim, it would first need to amend the complaint. *See* **In re Priv. Cap. Partners, Inc., 139 B.R. 120, 126 (Bankr. S.D.N.Y. 1992)**. Further, Plaintiff cannot use these discovery proceedings to go on a fishing expedition to weigh whether it wants to bring an alter ego claim. *See* **Florence v. New York State Department of Environmental Conservation, 2024 WL 1116286, at \*5 (N.D.N.Y. 2024)**. It is noteworthy that Defendants have disclosed the members for both LLC's both at inception and currently as well as their respective domiciles.

Even if the Court finds an alter ego claim has been brought in Plaintiff's pleadings, Plaintiff has not sufficiently alleged facts that would permit the Court to pierce

either Defendants' corporate veil. "In order to piece the corporate veil under New York Law, a party must demonstrate that '(1) the owner has exercised such control that the corporation has become a mere instrumentality of the owner, which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff.'" ***Network Enterprises, Inc. v. APBA Offshore Prods., Inc.*, No. 01 CIV. 11765 (CSH), 2002 WL 31050846, at \*3 (S.D.N.Y. Sept. 12, 2002)** (quoting ***Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir. 1997)**). It should be noted that *all* elements—not just fraud *or* mere instrumentality—must be established in order to justify piercing the corporate veil. ***Micro Fines Recycling Owego LLC v. Ferrex Eng'g, Ltd.*, 585 F. Supp. 3d 289 (N.D.N.Y. 2022)*, appeal withdrawn sub nom. Micro Fines Recycling Owego LLC v. Clarkson*, No. 22-513, 2022 WL 4086695 (2d Cir. July 25, 2022)** (citing ***EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005)** (quoting ***Morris v. New York State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 623 N.E.2d 1157, 1160-61 (1993)**)).

"It is well-established that determining whether the purported dominator 'exercised complete domination is highly case-specific and must be made in view of the totality of the facts.'" ***138-77 Queens Blvd LLC v. Silver*, 682 F. Supp. 3d 271, 281 (E.D.N.Y. 2023)** (citing ***Mirage Ent., Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018)**; ***Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1051 (2d Cir. 1997)**; ***CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 646 (S.D.N.Y. 2018)**). "While the determination of a 'complete domination' is always fact dependent, courts have outlined ten factors that may be relevant to such a finding," and these factors include:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

***Micro Fines Recycling Owego LLC v. Ferrex Eng'g, Ltd.*, 585 F. Supp. 3d 289, 296** (quoting ***Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)**). None of the factors listed above are present in this case.

Even disregarding these factors, the facts do not show that any Defendants exercised "complete domination" over any entity and, further, do not show that any Defendants "abused the privilege of doing business in the corporate form." **Liberty Synergistics, Inc. v. Microflo Ltd., 50 F. Supp. 3d 267, 297 (E.D.N.Y. 2014)** (citing **JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 386, 465 F. Supp. 2d 461 (S.D.N.Y. 2005)** (quoting **Morris v. New York State Dep't of Tax'n & Fin., 82 N.Y.2d 135, 141, 623 N.E.2d 1157 (1993)**)). As Plaintiff failed to allege *any* of the above-listed facts, Plaintiff's bare allegations are insufficient to raise an alter ego claim. Further, there are no facts shown present in this case that would present an alter ego claim. Thus, Plaintiff's demands for financial records dating back three years for an alleged alter ego claim is groundless.

### POINT III

### PLAINTIFF'S MOTION TO COMPEL SHOULD BE DENIED BECAUSE DEFENDANTS' INTERROGATORY RESPONSES ARE SUFFICIENT.

"Generally, 'a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one cannot be required to produce the impossible.'" **Bernazard v. Koch, No. 15-CV-642 (PKC) (LB), 2017 WL 11711323, at *1 (E.D.N.Y. June 13, 2017)** (quoting **Zervos v. S. S. Sam Houston, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)**). "In the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion." **Bernazard v. Koch, No. 15-CV-642 (PKC) (LB), 2017 WL 11711323, at *1** (**quoting Golden Trade, S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 525 (S.D.N.Y. 1992)**) (internal quotation marks omitted)). "In other words, Plaintiffs must cite to specific evidence to challenge Defendants' assertions that no additional responsive documents exist." **Bernazard v. Koch, No. 15-CV-642 (PKC) (LB), 2017 WL 11711323, at *1** (quoting **Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc., 318 F.R.D. 28, 36 (S.D.N.Y. 2016)** (internal quotation marks omitted)).

Plaintiff claims that Defendants' responses to Interrogatories are contradictory. Specifically, Plaintiff alleges that because Defendant Best Bev operated Defendant Can Man's facilities that there must be documents or communications between the two entities due to the operational transition. (Doc. No. 59 at page 7). Plaintiff claims: "[o]ne entity does not simply being operating another entity's facilities without a single communication or agreement (unless of course, the entities are alter egos of each other and are controlled by a single individual)." *Id.* While Plaintiff may have highlighted that a written communication or document must exist, Plaintiff has failed to consider, however, that such agreements can be achieved through verbal communication. Plaintiff reached its conclusion without knowledge about the company's internal structure and has no basis for this allegation as a result. Indeed, Defendants have informed Plaintiff in the

past that the Defendants did not communicate exclusively through email and often used a telephone to conduct business. Further, as mentioned *supra.*, the single fact that there is no written agreement or communication between Defendants Can Man and Best Bev is insufficient to establish an alter ego claim, given the myriad of factors that are present in an alter ego analysis.

Next, Plaintiff argues that Defendants' response to Interrogatory No. 2 needs to be "more thorough." (Doc. No. 59 at page 7). Interrogatory No. 2 asks Defendants to "[d]escribe the nature of the business operations of Can Man, LLC and Best Bev, LLC during the period from March of 2021 to the present, including any change in business activities or focus." *Id.* Defendants responded with: "The primary business of both entities is to place liquid in cans for third-parties. The business is more particularly described on the website for Best Bev, LLC which can be found at www.bestbev.co." *Id.* Plaintiff claims Defendants' response does not answer the interrogatory and that the response fails to describe any change in business activities. *Id.* Defendants' business activities, however, have not changed. While Defendant Can Man may no longer operate at its' facilities in Pennsylvania and has no employees, the nature of Defendants' operations is still to place liquid into cans for third parties; just because Defendant Can Man is no longer operating facilities does not mean that its business activities have changed. It is also noteworthy that in responses to previous discovery demands, Defendants have described the production process, even providing a flow chart to show the steps taken in producing Plaintiff's product.

## **CONCLUSION**

Plaintiff's motion to compel should be denied as the financial records dating back three years are not relevant to the claim. Plaintiff argues that the financial records are broadly relevant as to the punitive damages and alter ego claims. However, the alter ego claim is not sufficiently pled and is not contained within the Complaint. Further, there are no facts that would even suggest the existence of an alter ego claim. In addition, the punitive damages claim is premature as Plaintiff's need for Defendants' financial records will be moot should Cincinnati Insurance not prevail in the declaratory judgment action and/or a jury does not find cause for an award of punitive damages.

Defendants' interrogatory responses are also sufficient as no records exist which detail the facilities' operational transition between Defendants. As noted previously, each defendant operated its own facility. Leases for the Pennsylvania facility operated by Can Man, LLC and the New York facility operated by Best Bev, LLC have already been provided. Discovery documents and testimony has already established that Can Man, LLC ceased operations at its Pennsylvania facility by December of 2023 and that Best Bev, LLC had started its operations in New York at a brand new facility in June or July of 2023. Further, the nature of the business has not changed, even though Plaintiff baselessly concludes otherwise. To be sure, there has already been testimony that the New York facility that is run by Best Bev, LLC is larger and utilizes a production line that

can produce more product than the facility that was operated by Can Man, LLC in Pennsylvania.

While not addressed in the body of this memorandum, Plaintiff's argument that the supplemental responses do not contain a verification has been addressed. After verifying that my staff had erroneously attached the unsigned copies of the responses in an email to Plaintiff's counsel, I forwarded a copy of the signed original responses to Plaintiff's counsel on December 30, 2024.

      Very truly yours,

      COOK, KURTZ & MURPHY, P.C.

      */s/ Eric M. Kurtz*

      ERIC M. KURTZ

EMK:tmr

cc: Joseph A. Churgin, Esq.
    Savad Churgin