UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAPPY HOUR DRINKS COMPANY INC., <br><br> Plaintiff, <br><br> vs. <br><br> CAN MAN, LLC d/b/a Best Bev Co., Best Bev, LLC, and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.: 3:24-cv-00047 (TJM/ML) <br> Assigned to Hon. Thomas J. McAvoy <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPEAL OF MAGISTRATE JUDGE LOVRIC'S DECISION AND ORDER** <br><br> Date: <br> Time: <br> Dept: <br> Reservation ID: <br><br> Case Filed: <br> Trial Date: |

Plaintiff HAPPY HOUR DRINKS COMPANY, INC. ("Plaintiff" or "Happy Hour") hereby submits this Opposition to the Appeal of Magistrate Judge Lovric's Decision and Order ("Appeal") filed by Defendants CAN MAN, LLC d/b/a Best Bev Co. ("Can Man") and BEST BEV, LLC ("Best Bev") (collectively, "Defendants"). ECF No. 67.

## I.    PRELIMINARY STATEMENT

This is a case about Defendants' negligence and fraudulent concealment that caused a rapidly growing tequila-seltzer business to implode. Through a series of defective manufacturing runs, and by failing to disclose widespread "leaking can" issues with nearly every customer at their manufacturing facility,

Defendants took calculated steps to cover up their negligence, asphyxiating Happy Hour's business in the process. Rather than take accountability for these actions, Defendants have avoided their discovery obligations by concealing critical documents[1] and are suspected of winding down one of the Defendant entities, Can Man, and transferring its assets to the other, Best Bev. Simply put, Defendants have been abusing the discovery process[2] to evade liability for their actions.

    Magistrate Judge Lovric's order requiring Defendants to produce certain financial documents and to provide related interrogatories responses, is far from "clearly erroneous or contrary to law." FED. R. CIV. P. 72(a). To the contrary, the order is based on well-reasoned application of Second Circuit law that considers the specific facts of this case. Specifically, the Court found the plaintiff's motion to compel was well-grounded and not speculative, emphasizing that financial records would help "tell the story" (ECF No. 67-5 at pp. 10:3, 16:1-6) since they are difficult to manipulate and often come from

---

[1] This is not the Parties' first discovery dispute. ECF Nos. 21, 26, 38. Defendants have withheld critical documents from the outset of this case. Through discovery, Happy Hour uncovered that Defendants had been experiencing widespread leaking issues across its entire customer base yet failed to disclose this ongoing problem to Happy Hour. After initially denying that other Client's had leaks, Defendants inadvertently produced an insurance denial letter that revealed an internal communication "Subject Line: Leakers Sinking The Ship" dated October 13, 2022, stating, in relevant part: "nearly every customer that we have run in the last 3 months has had leaking cans, some in market or in their warehouses." The email further reads: "If we do not resolve these issues we will have two facilities, + $30MM worthy of equipment, and no product to produce." ECF No. 21-4 at pp. 6-7.

[2] Based on this conduct, Magistrate Judge Lovric aptly noted at the January 21, 2025 hearing: "Mr. Kurtz, I think we've had a couple of hearings before where this <u>Court has concerns about the defendants</u>, not counsel, <u>but the defendants being forthright in their discovery obligations</u>. We've had a couple of rounds and a couple of things that have occurred have at least planted a seed in my mind that <u>I have some concerns about what's going on with the individual defendants and meeting their discovery obligations</u>. And that is a concern that carries on with these events where discovery just seems to hit a wall and the defendants are not of the mind to share materials that at least on their face appear to be discoverable." ECF No. 67-5 at pp. 18:24 – 19:10 (emphases added).

third-party sources like banks and accountants. Additionally, the Court determined the requests were not overly burdensome as most records would be in electronic form, and the documents sought were standard "bread and butter" business records that companies routinely maintain. ECF No. 67-5 at p. 18:23. While acknowledging the defendants' confidentiality concerns, the Court noted these were adequately addressed by the existing protective order that limits use of the materials to this litigation and requires their destruction or return after discovery. ECF No. 67-5 at p. 19:3-11. Given the unusual circumstances of how one business apparently assumed another's operations without clear documentation, the Court concluded that following "the money" through financial records was both relevant and necessary to understand the true nature of the defendants' relationship. ECF No. 67-5 at p. 17:7-12.

For these reasons, and as discussed in greater detail below, Defendants' appeal should be denied in its entirety, and Magistrate Judge Lovric's Decision and Order compelling discovery should be upheld. ECF No. 64.

## II. **BACKGROUND**

In an August 19, 2024 filing, Defendants disclosed that "the defendant, Can Man, LLC no longer operates any of the facilities and has no employees. Can Man is currently without any employees and essentially not functioning as a business." ECF No. 22. On August 29, 2024, as a result of this alarming disclosure, Happy Hour promptly served RFPs and Interrogatories seeking clarity on these issues. On September 29, 2024, Defendants, as has been their practice throughout this case, objected to the crucial document requests and

evasively responded to the interrogatories. Rather than provide any clarity, Defendants simply stonewalled Plaintiff, giving it no opportunity to discern whether Defendants have the money or assets to afford a judgment, or are improperly using the corporate form to unjustly avoid paying creditors such as Plaintiff.

Rather than provide any financial documents, Defendants' claim such discovery is "patently improper," "premature," and protected by various confidentiality provisions. Instead of producing documents, Defendants have only provided high-level statements that Can Man has "assets in excess of $1,000,000" and Best Bev has "assets in excess of $50,000,000 with annual gross revenue of approximately $8,000,000." While this information is superficially reassuring, Defendants have shown nothing to support its veracity.

Further complicating matters is the fact that Defendants' insurance filed a declaratory judgment action seeking to avoid coverage for Happy Hour's claims. *Cincinnati Insurance Company v. Can Man, LLC and Best Bev, LLC*, E.D. Pa. Case No. 2:25-cv-00418-MKC. There are now serious questions as to whether Happy Hour will be able to recover a penny in this case. There are outstanding issues relating to:

1. Documents proving the finances of either of the defendants.

2. Can Man's cessation of production operations in December 2023.

3. Best Bev taking over operations at the same facilities.

4. Both entities sharing common ownership through the Shawn P. Sheehan Revocable Trust.

5. No documented transfers existing between entities despite the operational transition.

Adding to the suspicion is Defendants' refusal to produce basic financial documents that would clarify the relationship between Can Man and Best Bev. Their objections to producing tax returns, bank statements, and other financial records are not grounded in any legitimate privacy concerns but are transparent attempts to conceal the financial entanglements that would expose their conduct. Defendants' selective disclosure of materials, while refusing to produce critical financial data, further underscores their intent to obfuscate the true nature of their relationship.

Magistrate Judge Lovric, recognizing the glaring inconsistencies and gaps in Defendants' story, correctly concluded that Happy Hour is entitled to the requested financial documents. ECF No. 64. These records are essential not only to establish the alter ego relationship between Can Man and Best Bev but also to uncover the full extent of Defendants' efforts to evade their legal obligations.

Defendants' appeal of the Magistrate Judge's decision (ECF No. 67) is yet another delay tactic designed to prevent Happy Hour from uncovering the truth. Defendants' arguments are without merit and should be rejected to prevent Defendants from evading accountability through improper obstruction.

### III. LEGAL STANDARD

A magistrate judge may issue orders regarding nondispositive pretrial matters, and the district court reviews such orders under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). An order is clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed. An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp. 2d 70, 74 (N.D.N.Y. 2000) (citations and internal quotation marks omitted). Under this highly deferential standard, magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused. *Williams v. Rosenblatt Sec., Inc.*, 236 F.Supp.3d 802, 803 (S.D.N.Y. 2017) (quoting *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F.Supp.2d 508, 511 (S.D.N.Y. 2013).

Discovery disputes, like the motion to compel at issue here, are classic examples of non-dispositive matters entrusted to the sound discretion of magistrate judges. Courts consistently recognize that magistrate judges have broad latitude in managing discovery and resolving related disputes. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). It is well established that a magistrate judge's determination in the context of discovery will not be overturned merely because the district court might have decided the matter differently. *Id.*

## IV. LEGAL ARGUMENT

### A. The Discovery Order Was Proper and Necessary for Plaintiff's Claims

The magistrate judge's decision to compel the production of financial records was both legally sound and essential for the fair adjudication of Plaintiff's claims. Defendants argue that the discovery sought is premature, improper, overreaching, and overly intrusive (*See* ECF No. 67-6 at p. 5 [listing objections 1-4]), but this position mischaracterizes both the nature of Plaintiff's claims and the applicable legal standards governing discovery in federal litigation. None of Defendants' four objections have merit.

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The court evaluates proportionality by considering factors such as the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, their resources, and the importance of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1). Courts have broad discretion to manage the discovery process, and relevance is construed broadly to include any information that may reasonably lead to the discovery of admissible evidence. *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012).

Here, Plaintiff's claims of fraud, negligence, and alter ego liability squarely implicate the financial operations and relationships between Can Man, LLC and Best Bev, LLC. Plaintiff has presented credible evidence suggesting that Defendants engaged in a coordinated effort to transfer assets

7

and business operations in a manner designed to frustrate liability and evade financial responsibility. The abrupt cessation of Can Man's operations, the seamless transition of Plaintiff's orders to Best Bev without any formal contractual agreements, and the shared personnel and resources between the two entities all point to a possible misuse of corporate forms to shield liability.

Courts have routinely recognized that financial records are critical in cases involving alter ego liability and fraudulent conveyance. For example, in *Conopco, Inc. v. Wein*, the court held that "even the confidentiality of personal financial matters must yield to the Federal Rules of Civil Procedure, which govern the discovery of information relevant to the claims and defenses in a federal court action" (No. 05-CV-9899, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007)). Without access to Defendants' financial records, Plaintiff cannot adequately establish whether Defendants improperly transferred assets to avoid liability or operated as a single business entity under the guise of separate corporate forms. Financial documents, such as tax returns, bank statements, loan agreements, and profit and loss statements, are not merely tangential to Plaintiff's claims—they are central to proving the existence of an alter ego relationship and potential fraudulent conduct.

Moreover, disclosure of financial records, including tax returns, is warranted when a defendant places its income in issue. In *SEC v. Cymaticolor Corp.*, the court noted that tax returns are discoverable if relevant to the claims at hand (106 F.R.D. 545, 548 n.2 (S.D.N.Y. 1985)). Courts have also allowed pretrial disclosure of financial information where punitive damages are sought,

recognizing that delaying such discovery would unduly burden the court and jury (*Tillery v. Lynn*, 607 F.Supp. 399, 402 (S.D.N.Y 1985)).

Defendants' argument that such discovery is premature ignores the well-established principle that discovery is the primary mechanism for uncovering evidence necessary to support a party's claims. Courts have long recognized that claims involving complex financial arrangements or corporate structures require early and comprehensive access to financial documents. To deny such discovery at this stage would effectively shield Defendants from scrutiny and allow them to benefit from the very obfuscation that Plaintiff seeks to expose.

Defendants also contend that the production of financial documents is overly burdensome and invasive. However, this argument holds little weight given that the requested information is within Defendants' possession, readily accessible, and can be produced under the existing protective order, which ensures confidentiality and limits the dissemination of sensitive information. Courts have consistently held that the existence of a protective order mitigates concerns about privacy and confidentiality, particularly where the requested documents are highly relevant to the claims at issue (*Id.* at 402).

Therefore, the magistrate judge's order compelling the production of Defendants' financial records was a proper exercise of discretion, grounded in the broad principles of relevance and proportionality under Rule 26. The requested documents are not only relevant but essential to Plaintiff's ability to establish key elements of her claims. Defendants' objections to the discovery are unsupported by law and should be rejected.

## B. Defendants' Arguments Misapply the Law

Defendants' appeal rests on a fundamental misapplication of well-established legal standards governing discovery and the production of financial records. Rather than addressing the actual relevance and necessity of the requested documents in light of Plaintiff's claims, Defendants rely on inapposite legal principles and misinterpret the scope of discovery permitted under the Federal Rules of Civil Procedure.

*First*, Defendants argue that the production of financial records is premature absent a judgment against them or a formal finding of liability. This argument is misguided. The Federal Rules of Civil Procedure do not impose such a restrictive threshold for financial discovery. Rule 26(b)(1) allows for discovery of any non-privileged information that is relevant to a party's claim or defense, without requiring a preliminary showing of success on the merits. Courts have consistently held that financial information is discoverable when it relates to the claims or defenses at issue, particularly in cases involving allegations of fraud, alter ego liability, or asset transfers. *See Tillery v. Lynn*, 607 F. Supp. 399, 402 (S.D.N.Y. 1985) (allowing discovery of a defendant's personal assets prior to a liability determination in a fraud case, reasoning that delaying such discovery would be unduly burdensome to the plaintiff and the court). The mere fact that liability has not yet been established does not shield Defendants from their discovery obligations.

*Second*, Defendants incorrectly assert that tax returns and other financial documents are categorically protected from discovery unless a

compelling need is demonstrated. While courts do recognize a qualified privilege for tax returns, this privilege is not absolute. The two-prong test cited by Defendants—requiring that (1) the tax returns are relevant to the claims and (2) the information is not available from a less intrusive source—has been satisfied here. (*Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143, 149 (E.D.N.Y. 2008)). Defendants rely on *Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325 (N.D.N.Y. 2006), to argue against the production of financial documents, but their reliance is misplaced. The *Trudeau* court explicitly stated, "But once a compelling need has been shown, there is no justifiable reason to deny this pretrial financial discovery." *Id.* at 331.

Plaintiff has demonstrated a compelling need here. Plaintiff's claims of fraud and alter ego liability directly implicate Defendants' financial records, including tax returns, as they are essential to uncovering the financial relationships and transactions between Can Man, LLC and Best Bev, LLC. Moreover, Defendants' suggestion that Plaintiff can obtain the necessary information through depositions or affidavits ignores the fact that financial documents provide objective, verifiable evidence that cannot be replicated through testimony alone. Courts routinely reject the notion that parties can satisfy their discovery obligations by offering affidavits in place of documents, particularly where the documents themselves are the most reliable evidence of financial dealings. *Tillery v. Lynn*, 607 F. Supp. 399, 402 (S.D.N.Y. 1985). Thus, the production of these documents is not only justified but necessary for the fair adjudication of Plaintiff's claims.

*Third*, Defendants' reliance on cases involving post-judgment enforcement or punitive damages is misplaced. Defendants argue that financial discovery is only appropriate after a judgment has been entered or when punitive damages are at issue. This conflation of post-judgment collection procedures with pretrial discovery obligations is legally erroneous. The alter ego doctrine and fraudulent conveyance claims inherently require scrutiny of financial transactions during the discovery phase to determine whether liability can be extended beyond the nominal party to the action. *Trustees of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003). Plaintiff is not seeking discovery to collect on a hypothetical judgment but rather to establish the very basis of Defendants' liability.

Finally, Defendants overstate the burdensomeness of producing the requested documents. The proportionality factors under Rule 26(b)(1) weigh heavily in favor of disclosure. The issues at stake—fraud, negligence, and corporate malfeasance—are significant, and the amount in controversy justifies the scope of discovery sought. Defendants are sophisticated corporate entities with the resources to comply with standard discovery obligations. Furthermore, the existing protective order addresses any legitimate confidentiality concerns and ensures that sensitive financial information remains secure and is used solely for the purposes of this litigation.

In sum, Defendants' arguments are not supported by the applicable legal standards governing discovery. Their attempt to shield critical financial records from production is a transparent effort to avoid accountability and frustrate

Plaintiff's ability to pursue legitimate claims. The magistrate judge properly applied the law, and Defendants' misinterpretation of discovery rules provides no basis for overturning that decision.

## V. **CONCLUSION**

Magistrate Judge Lovric correctly observed that: "It does appear to the Court that there is a vacuum here and it's simply just that. Documents and records of corporations of the type that you would expect, and I think Mr. Churgin says it very well when he says that it just defies logic to believe that this relationship between these two defendants changed to such a degree that all of a sudden one defendant has essentially taken over the other defendant's entire business model and the business itself without any substantial documents or records. And that is concerning to the Court. I too am a little perplexed how that can happen. This is not a food truck outside on the corner, we have a food truck and that's it, that's the business, and maybe a handshake and a verbal understanding. We're talking about a fairly sophisticated company with assets, and a facility, and equipment, and employees, and everything that comes with those things, such as retirement accounts, and tax obligations, and insured unemployment, and health insurance. All of that you just can't do on a handshake and say, okay, today we're no longer in existence, tomorrow you have taken everything over. It's just inconceivable. And it appears to be a very large vacuum that just is unexplainable." ECF No. 67-5 at pp. 15:13—16:9. Magistrate Judge Lovric did not clearly err or run afoul of any well-established principles of law in making this determination. Indeed, there is significant case

law allowing pre-trial financial discovery. *E.g., Tillery*, 607 F.Supp. at 402 (in a state law claim for fraud, the Court allowed the plaintiff to take discovery of a defendant's personal asserts prior to a determination of liability for punitive damages, reasoning that "[i]t would be unduly burdensome to plaintiff, and most particularly a jury and the court, to delay resolution of the issue as to the amount of punitive damages, if any, which should be awarded until discovery as to defendant's personal assets has been completed").

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Appeal of Magistrate Judge Lovric's Decision compelling the production of financial documents. Magistrate Judge Lovric's order was firmly grounded in applicable law and facts, recognizing the relevance of the requested discovery to Plaintiff's fraud and alter ego claims. Defendants have failed to demonstrate that the decision was clearly erroneous or contrary to law.

Additionally, although a stay has been allowed until March 11, 2025 (ECF No. 69), there is no basis to extend the stay any further. Plaintiff respectfully requests that the Court uphold the magistrate judge's discovery order in full and deny all relief sought by Defendants.

Dated: Nanuet, New York
      February 18, 2025

*Joseph A. Churgin*
_____
JOSEPH A. CHURGIN, ESQ.
Savad Churgin
*Attorneys for Plaintiff*
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954
(845) 624-3820
j.churgin@savadchurgin.com

To: Eric M. Kurtz, Esq.
    Cook, Kurtz & Murphy, P.C.
    *Attorneys for Defendants*
    *Can Man d/b/a Best Bev et al.*
    85 Main Street, PO Box 3939
    Kingston, NY 12402