UNITED STATES DISTRICT COURT
NORTHERN DISTICT OF NEW YORK
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

HAPPY HOUR DRINKS COMPANY, INC.,                         3:24-cv-00047
                                                        (TJM/ML)
                                    PLAINTIFF,

            -against-

CAN MAN, LLC d/b/a Best Bev Co.,
BEST BEV, LLC and
JOHN DOES 1 through 100
                                    DEFENDANTS.
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF APPEAL FROM MAGISTRATE JUDGE LOVRIC'S DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL


                              BY: _____
                                    Eric M. Kurtz, Esq.
                                    Cook, Kurtz & Murphy, P.C.
                                    Federal Bar Roll No.: 103869
                                    Attorneys for Defendants
                                    CAN MAN, LLC d/b/a Best Bev
                                    Co. and BEST BEV, LLC
                                    85 Main Street, PO Box 3939
                                    Kingston, New York 12402

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     iii

ARGUMENT

      POINT I      PLAINTIFF'S OPPOSITION MAKES A NUMBER OF
                        MISSTATEMENTS OR OTHERWISE HIGHLIGHTS
                        IRRELEVANT INFORMATION. . . . . . . . . . . . . . . .     1

      POINT II     THE CASES RELIED UPON  BY PLAINTIFF
                        IN OPPOSITION ARE INAPPLICABLE TO
                        THE PRESENT CASE. . . . . . . . . . . . . . . . . . . . . .     3

      POINT III    PLAINTIFF'S EFFORTS TO DISTINGUISH
                        THE CASES RELIED UPON BY THE
                        DEFENDANTS IN THEIR MOTION SHOULD
                        FAIL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

# TABLE OF AUTHORITIES

***Biliske v. American Live Stock Insurance Co.,***
  73 F.R.D. 124, 126 n.1 (W.D. Okla. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

***Conopco Inc. v. Wein,*** 2007 WL 21198507 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . 4,5

***EM Ltd. V. Republic of Argentina,*** 695 F.3d 201, 207 (2d Cir. 2012) . . . . . . . . . 3,4

***McNamee v. Clemens,*** 2013 WL 3572899 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . 7,8

***Sadofsky v. Fiesta Products, LLC,*** 252 F.R.D 143 (E.D.N.Y. 2008) . . . . . . . . . . . 8

***S.E.C. v. Cymaticolor Corp.,*** 106 F.R.D. 545, 548 n.2 (S.D.N.Y. 1985) . . . . . . . .. 6

***Tillery v. Lynn,*** 607 F.Supp. 399 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 7,8

***Trudeau v. New York State Consumer Protection Bd.,***
  237 F.R.D 325 (N.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

iii

## POINT I

## PLAINTIFF'S OPPOSITION MAKES A NUMBER OF MISSTATEMENTS OR OTHERWISE HIGHLIGHTS IRRELEVANT INFORMATION.

Before addressing the substantive legal arguments relating to the instant application, Plaintiff's opposition to the defendants' appeal makes a number of misstatements relating to the facts of this case. For example, Plaintiff argues that the defendants "have been abusing the discovery process to evade liability for their action." (See Doc. No. 73 at page 2). However, Best Bev, LLC, has already acknowledged an issue on the production line for the July, 2023, production run. Plaintiff further states that the Court properly determined the tax information to be relevant and necessary "given the unusual circumstance of how one business apparently assumed another's without clear documentation." (See Doc. No. 73 at page 3). However this, again, is inaccurate. The defendants have disclosed the members of both Can Man and Best Bev, both at inception and currently, and have disclosed leases for their respective production facilities. Can Man LLC has always operated out of a facility in Pennsylvania which it leases and Best Bev LLC has always operated out of a facility in New York which it leases.

Plaintiff further accuses the defendants of "winding down one of the Defendant entities, Can Man, and transferring its assets to the other, Best Bev" in an abuse of the discovery process. However, this argument makes no logical sense. Both Can Man and Best Bev are named defendants in this action; both entities are subject the Federal Rules of Civil Procedure as it relates to discoverable materials. Transferring assets from one entity to the other would be pointless as the information would be discoverable regardless. To be sure, this is not a situation where Plaintiff is accusing the defendants to transferring

assets to some unknown entity "behind the scenes" and outside the jurisdiction of this Court. Plaintiff's opposition also improperly mischaracterizes Plaintiff as a "creditor" of the defendants. In fact, no judgment has been rendered to date.

Plaintiff's submission also highlights a number of "outstanding issues" relating to:

"1.    Documents proving the finances of either of the defendants.

2.    Can Man's cessation of production operations in December 2023.

3.    Best Bev taking over operations at the same facilities.

4.    Both entities sharing common ownership through the Shawn P. Sheehan Revocable Trust.

5.    No documented transfers existing between entities despite the operational transition." (See Doc. No. 73 at pages 4-5).

Most, if not all, of these "outstanding issues" may be properly explored through depositions, some of which have already been conducted. Indeed, there is no justification whatsoever for the position that the defendants are incapable of testifying about their financial status or providing appropriate affidavits. The defendants' witnesses are similarly capable of providing testimony relating to Can Man's cessation of production operations in December of 2023. Ownership through the Shawn P. Sheehan revocable trust would similarly be best explored by way of a deposition; tax returns will do nothing to explain this arrangement or the lack of "documented transfers existing". Rather, the tax documents will reveal nothing more than income received and expenses incurred for each entity.

Finally, Plaintiff argues that "[t]hese records are essential not only to establish the alter ego relationship between Can Man and Best Bev but also to uncover the full extent

of Defendants' efforts to evade their legal obligations." This argument may have merit if both entities were not already named defendants in the instant proceeding, however, they are already subject to the Court's authority and discovery through ordinary means. There is simply no basis to determine that disclosure of tax documents is required at this juncture. If the defendants are alleged to have hidden their assets amongst each other then it logically follows that one of the named entities currently holds those assets. In short, there is no allegation that any of the assets have been siphoned off to an unknown Third Party and disclosure of tax information will serve no purpose other than to unreasonably invade the defendants' privacy. As such, Judge Lovric's decision should be reversed and the motion to compel should be denied.

### POINT II

### THE CASES RELIED UP ON BY PLAINTIFF IN OPPOSITION ARE INAPPLICABLE TO THE PRESENT CASE.

Plaintiff, in their opposition, cites a number of cases which, they claim, support the disclosure of financial information. However, the cases relied-upon by Plaintiff are inapplicable to the instant proceeding. For example, Plaintiff cites *EM Ltd. V. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) to state that "Courts have broad discretion to manage the discovery process, and relevance is construed broadly to include any information that may reasonably lead to the discovery of admissible evidence." However, *EM Ltd.* Involved post-judgment discovery in the aid of executing a judgment. The Court specifically stated:

> "At the outset, we note that broad post-judgment discovery in the aid of execution is the norm in federal and New York state courts. Post-judgment discovery is governed by Federal Rule of Civil Procedure 69, which provides that '[i]n aid of the

3

> judgment or execution, the judgment creditor ... may obtain
> discovery from any person – including the judgment debtor –
> as provided in these rules or by the procedure of state where
> the Court is located.'" ***EM Ltd. V. Republic of Argentina,***
> **695 F.3d 201 (2d Cir. 2012)**.

The court then continued to note that "as in all matters relating to discovery, the district

court has broad discretion to limit discovery in a prudential and proportionate way." **Id**.

Thus ***EM Ltd*** is clearly inapplicable to the instant matter, as there has been no judgment

and plaintiff is not a judgment creditor. If anything, ***EM Ltd*** supports the position of the

defendants that plaintiff's demands for financial disclosure is premature. Further,

inasmuch as it relates to the Court's inherent power to manage discovery in a "prudential

and proportionate" way, Plaintiff has failed to demonstrate proportionality where, as here,

the information may be properly obtained through less intrusive means.

Similarly distinguishable is ***Conopco Inc. v. Wein***, **2007 WL 21198507 (S.D.N.Y.**

**2007)**, which Plaintiff cites to state "even the confidentiality of personal financial matters

must yield to the Federal Rules of Civil Procedure, which govern the discovery of

information relevant to the claims and defenses in a federal court action." However, the

defendant in ***Conopco***, Wein, was the focal point of a RICO claim. Specifically, she was

the president and founder of various corporate entities which had been formed for the

sole purpose of "advancing a fraudulent scheme." At his deposition, the Wein's

accountant testified that Wein's personal accounts were the source of the initial funds

used to purchase products from manufacturers who Plaintiff claimed had been defrauded.

Specifically, Wein would transfer money to one of the corporate accounts, and use this

transferred money to pay the manufacturers. When a sale was made, the money would

go into a different account before ultimately being transferred back to Wein's personal

4

account. **Id. at \*2**. In assessing the relevance to the claim, the Court noted that "there is reason to believe that the financial accounts of Wein and the corporate entities she established may provide evidence of (1) Wein's participation in the conduct of a RICO enterprise through a pattern of racketeering activity, (2) the use of income that is derived from racketeering activity to operate  the RICO enterprise, and (3) evidence of a conspiracy in which income derived from a pattern of racketeering activity is used to operate the RICO enterprise." **Id. at \*3**. Thus, the Court concluded that "the money Wein either invests in or receives from the alleged RICO conspiracy may be evidence of how the enterprise operates, and the role Wein plays in the enterprise." **Id**. Thus the subpoena was determined to be "reasonably calculated to lead to the discovery of admissible evidence" and the defendant's motion to quash was denied.  In the present case, by contrast, there has been no evidence or testimony whatsoever to support any allegations of commingling or misuse of funds.  Rather, Plaintiff simply seeks disclosure of the defendants' financial information in an effort to bolster their unfounded allegations of fraud and their concern about their ability to recover if they obtain a favorable verdict.  It is noteworthy that plaintiff is the only entity that has brought legal action against the defendants for a scenario where they assert that nearly every client was experiencing leaking cans (at the time of the memo referenced by plaintiff's counsel, plaintiff's production runs were relatively small in relation to other Can Man customers as evidenced by production run information disclosed to plaintiff in the months leading up to October of 2022).

Plaintiff relies upon the language of a single footnote to state that "disclosure of financial records, including tax returns, is warranted when a defendant places its income

at issue." (See Doc. No 73 at page 8 citing *S.E.C. v. Cymaticolor Corp.,* **106 F.R.D. 545,**
**548 n.2 (S.D.N.Y. 1985)**). *Cymaticolor Corp.,* was an action brought by the Securities
and Exchange Commission for violations of various securities laws. Specifically, the
defendant was alleged to have manipulated the stock price by buying *Cymaticolor Corp.*
stock through his own account and the accounts of third parties, to inflate the stock price.
The SEC sought, among other things, the defendant's tax returns. In ordering the
disclosure of the returns, the Court noted "Green does not dispute that information
regarding profit is relevant, but contends that the SEC and not Green placed he
information allegedly contained in the return at issue and that this precludes the
production of the returns. Whether the SEC or the defendant placed the tax information
in the return in issue is not dispositive. Once the Court determines that the information is
relevant to the issues to be tried and cannot be obtained readily elsewhere, disclosure is
warranted." **Id. at 548**. In a footnote to this paragraph, the Court noted, "Courts have
considered whether the party seeking to prevent disclosure of the returns has placed
income in issue. This is apparently an alternative ground for disclosure even if the two
requirements of relevancy and availability are not found." **Id. at n.2.** citing *Biliske v.*
*American Live Stock Insurance Co.,* **73 F.R.D. 124, 126 n.1 (W.D. Okla. 1977)**. It
cannot be logically stated that opposing disclosure of sensitive financial information
"places" that information at issue. This would necessarily mean that any party opposing
the disclosure of sensitive information has placed that information at issue and waived
any protections relating to the same. In any event, the *Cymaticolor Corp.* Court
determined that the defendant failed to meet its burden that the information was available
through other means, particularly where the defendant refused to identify all of his

6

transactions relating to the stock. Thus disclosure of the information was warranted. In the present case, by contrast, the defendants have provided ample information including leases for both defendants, invoices for purchases of production line equipment, names and domiciles of each member of both LLCs at the time of inception and currently and are available to testify about the information sought by the plaintiff. As such, Judge Lovric's order should be reversed and the motion should be denied.

Finally, the primary case relied upon by Plaintiff in their opposition, ***Tillery v. Lynn***, **607 F.Supp. 399 (S.D.N.Y. 1985)** was a dental malpractice action in which the plaintiff alleged, among other things, negligence and fraud. The defendant moved for summary judgment and, in the alternative, sought to have a bifurcated trial as to the amount of punitive damages. The Court granted the application for punitive damages but noted that the discovery of the defendant's personal assets could proceed at that time. The Court simply noted that it would be unduly burdensome to the plaintiff, a jury, and the Court to delay resolution of the punitive damages, if any, until discovery of the defendant's assets was completed. However, ***Tillery*** is not applicable to this matter for at least two reasons; first, the procedural posture of the ***Tillery*** decision is inapplicable to the instant matter. More specifically, the ***Tillery*** defendant's motion for summary judgment had just been denied and the matter was going to proceed to trial. Thus, the Court reasoned that disclosure of financial information at that time was appropriate, so as to avoid a delay in the event of a favorable verdict to the plaintiff. More significantly, however, is the fact that since 1985, the Courts have begun to shift away from ***Tillery***. ***McNamee v. Clemens***, **2013 WL 3572899 (E.D.N.Y. 2013)**.

The Court in ***McNamee v. Clemens***, **2013 WL 3572899 (E.D.N.Y. 2013)** was

7

faced with the plaintiff's motion to compel discovery of certain documents, including the defendant's financial information. In considering the application, the Court noted "Several courts have found that 'pre-trial financial discovery and a bifurcated trial is the more efficient method of managing a trial involving punitive damages claims . . . More recent cases, however, have found that pre-trial discovery of financial information is premature where the documents sought are 'highly sensitive and confidential' and where 'the need for disclosure may be abrogated by motion.'" **Id. at \*8**. Significantly, ***Tillery*** was among the cases cited by the Court before its discussion of more recent case law which discourages disclosure of financial information. Even the cases cited by Plaintiff are indicative of this shift, as several of them are District Court decisions from the 1980s, with the more recent cases being clearly distinguishable. As such, because the information sought is sensitive, confidential, and premature, this Court should reverse the decision of Judge Lovric and deny the motion to compel.

## POINT III

### PLAINTIFF'S EFFORTS TO DISTINGUISH THE CASES RELIED UPON BY THE DEFENDANTS IN THEIR MOTION SHOULD FAIL.

Finally, Plaintiff's efforts to distinguish this matter from the cases cited by the defendants should fail. For example, Plaintiff notes the test from ***Sadofsky v. Fiesta Products, LLC*, 252 F.R.D 143 (E.D.N.Y. 2008)**, highlighted by the defendants in their motion, before simply stating that the test is "satisfied here". A Plaintiff seeking production of tax returns must demonstrate that the returns are 1) relevant to the claims; and 2) the information is not available from a less intrusive source. See generally ***Sadofsky v. Fiesta Products, LLC*, 252 F.R.D 143 (E.D.N.Y. 2008)**. To be sure, the defendants' tax

8

returns are not relevant to the instant action. Plaintiff has not asserted a cause of action for a claimed  "alter ego" in the complaint. Despite this, Plaintiff seeks disclosure of financial records for the past three years as well as loan agreements, promissory notes and payment records and bank statements, investment account statements and financial account statements including account numbers.  The mere fact that, at this juncture, Plaintiff believes there might have been fraudulent concealment of production issues or the transfer of assets, cannot serve to make certain protected documents relevant to causes of action which were never even pled. Further, despite Plaintiff's insistence to the contrary, the information requested is absolutely available through less intrusive means. The fact that Plaintiff would prefer to examine the defendants' tax returns does not definitively mean that the defendants are incapable of offering testimony or other evidence with respect to the same or that plaintiff cannot obtain the necessary information by less intrusive means.

Plaintiff's efforts to differentiate this matter from **Trudeau v. New York State Consumer Protection Bd., 237 F.R.D 325 (N.D.N.Y. 2006)** should similarly fail. Indeed, Plaintiff relies upon a single line from **Trudeau**, "[b]ut once a compelling need has been shown, there is no justifiable reason to deny financial pretrial discovery" before offering the conclusory assertion that they have demonstrated a compelling need.  Plaintiff then claims that their claims of "fraud and alter ego" implicate the defendants' tax records.  As previously noted, there is no "alter ego" cause of action in the complaint.  Plaintiff may argue that the defendants have utilized an alter ego or that their corporate entities are alter egos of one another, however, there has been no particularized cause of action. The mere accusation of fraud or an alter ego is insufficient to create a "compelling need" where

9

none exists and where Plaintiff has not pled the claims it allegedly seeks to prove. This, of course, does not even address the fact that both defendants are named in this action, both defendants have appeared in this action and, it is alleged by plaintiff, that both defendants were negligent in their conduct of co-packaging of plaintiff's product.

## CONCLUSION

In light of the foregoing, the defendants, Can Man, LLC d/b/a Best Bev Co., and Best Bev, LLC, respectfully request an Order of this Court, granting their appeal, reversing the Order of Magistrate Judge Lovric, and denying the plaintiff's motion to compel. The Court's order directing the disclosure of financial information was clearly erroneous and premature, as there has been no judgment entered against the defendants and there is no basis to believe that Cincinnati Insurance will be successful in its declaratory judgment action. Moreover, the cases cited by Plaintiff are inapplicable to the instant proceeding, as in those cases there had been demonstrable fraud and the information was sought in support of claims which had been specifically pled. As such, the plaintiffs are not entitled to production of the tax returns or the disclosure of all bank accounts, investment accounts, loans (including very personal information including account numbers and information concerning parties who are not a part of this litigation) when they can obtain the information through less intrusive means. As noted by Magistrate Treece in the *Trudeau* case cited in defendants' initial memo of law, disclosure of tax returns should be denied when less intrusive means are available such as a deposition or affidavit.