UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**HAPPY HOUR DRINKS COMPANY, INC.,**

                        **Plaintiff,**

v.                                                        3:24-CV-0047
                                                                      (ECC/ML)

**CAN MAN, LLC d/b/a Best Bev Co.,**
**BEST BEV, LLC and JOHN DOES 1-100,**

                        **Defendants.**

---

**Elizabeth C. Coombe, United States District Judge[1]**

## DECISION & ORDER

Before the Court is Defendants' appeal of the Magistrate Judge's non-dispositive decision granting Plaintiff's motion to compel production of discovery materials and responses to certain interrogatories. Dkt. No. 67. The Complaint alleges negligence, unjust enrichment, fraudulent misrepresentation, and fraudulent inducement. After Defendants answered the Complaint, the parties engaged in discovery, and Plaintiff has filed several motions to compel. Dkt. Nos. 21, 38, 59. After hearings, the Magistrate Judge granted those motions. Dkt. Nos. 40, 55, 64. This appeal focuses on Plaintiff's last motion to compel. Dkt. No. 59.

**I. BACKGROUND**

Plaintiff Happy Hour Drinks Company, Inc. (Happy Hour), manufactures tequila seltzer cocktails and sells them in aluminum cans. *See* Complaint (Compl.), Dkt. No. 1, at ¶ 9. Defendant

---

[1] This case was originally assigned to Senior United States District Judge Thomas J. McAvoy and has since been reassigned to the undersigned.

1

Can Man, LLC (Can Man), is a Pennsylvania company operating in New York that does business as Best Bev Co. *Id.* at ¶ 3. Defendant Best Bev, LLC (Best Bev), is a U.S. Virgin Islands Company doing business in New York. *Id.* at ¶ 5. Plaintiff alleges that Can Man received the ingredients for Happy Hour's cocktails and packaged them into cans. *Id.* at ¶ 11. As Happy Hour's business grew, so did Can Man's operations, and Can Man moved into a larger facility in Waverly, New York packaging more than 1 million cans annually for Happy Hour. *Id.* at ¶ 12.

In November 2022, Happy Hour requested a "run" of about 240,000 cans, or 10,000 cases. Compl, at ¶ 13. When Happy Hour received the cans, it discovered that nearly 80% of the cans were leaking and could not be repaired. *Id.* Happy Hour's distributor threw out nearly 8,000 cases and billed Happy Hour for the damage. *Id.* Happy Hour investigated the issue, and Can Man denied any liability. *Id.* at ¶¶ 14-15. Happy Hour, which had a longstanding relationship with Can Man, continued that relationship and ordered runs of 5,000 cases in April 2023 and 7,000 cases in July 2023. *Id.* at ¶¶ 16-17. Both runs produced cans that leaked. *Id.* at ¶¶ 18-19.

Plaintiff alleges that Can Man caused the leaks by changing the amount of copper in the tequila for the drinks, Can Man has refused to accept responsibility for its packaging failures, and Can Man has not reimbursed Happy Hour for all of the damage caused or the value of the cans that could not be sold. *Id.* at ¶¶ 20-25.

In the motion to compel, Plaintiff demanded that Defendants (1) provide responses to Plaintiff's third request for production of documents, requests number 2, 4, and 7, [2] and (2) provide

---

[2] Request for Production of Documents No. 2 sought "all financial statements for Can Man, LLC and Best Bev, LLC, for the past three years, including any audit reports and tax returns." Request for Production of Documents No. 4 sought "all bank statements, investment account statements and financial account statements for Can Man, LLC and Best Bev, LLC for the past three years." Request for Production of Documents No. 7 sought "any documents related to loans or financial obligations of Can Man, LLC and Best Bev, LLC, including loan agreements, promissory notes, and payment records."

"non-evasive responses" to interrogatories 2, 6-8 of Plaintiff's third set of interrogatories.[3]  *Id.* Defendants had refused to provide the requested information.[4]

Plaintiff argued that Defendants put their financial status at issue by stating that "Can Man, LLC no longer operates any of the facilities and has no employees and" was not "functioning as a business." *Id.*  Plaintiff also pointed to a declaratory judgment action filed by Defendants' insurer seeking to avoid paying any judgment on Plaintiff's claims in this litigation. *Id.* at 1-2.  Plaintiff asserted that "Defendants' financial condition is directly relevant to Happy Hour's ability to

---

[3] Interrogatory 2 directed Defendants to "[d]escribe the nature of the business operations of Can Man, LLC and Best Bev, LLC during the period from March 2021 to the present, including any change in business activities or focus."  Interrogatory 6 directed Defendants to "[l]ist all financial statements, including balance sheets, profit and loss statements and cash flow statements for Can Man, LLC and Best Bev, LLC for the past three years." Interrogatory No. 7 directed Defendants to "[P]rovide a list of all bank accounts, investments accounts, and other financial accounts held by Can Man, LLC and Best Bev, LLC, including account numbers and the financial institutions where these accounts are held."  Interrogatory No. 8 directed Defendants to "[d]isclose any loans or other financial obligations to Can Man, LLC and Best Bev, LLC, including details of lenders, amounts owed, and payment schedules."

[4] Defendants responded to Interrogatory No. 2 by stating "The primary business of both entities is to place liquid in cans for third parties.  The business is more particularly described on the website for Best Bev, LLC which can be found at www.bestbev.com."  Defendants responded in the same way to requests for production of documents 2, 4, and 7 and to interrogatories 6-8:

> These answering defendants object to this demand on the grounds that it is patently improper, overly broad, vague, ill-defined, unduly burdensome, not proportional to the needs of the litigation, not reasonably limited in time or scope and not reasonably calculated to lead to the discovery of admissible evidence. Tax returns have been considered confidential pursuant to 26 U.S.C. § 6103. *Gates vs. Wilkinson*, 03-cv-763 GLS/DRH, 2005 WL 758793 (NDNY 2005). Courts within the Second Circuit have found personal financial information to be presumptively confidential or cloaked with qualified immunity. Said privacy issues equally apply to corporate tax returns. *Sadofsky vs. Siesta Products*, LLC., 252 FRD 143 (EDNY 2008). Furthermore, discovery of financial records is premature.  *Pasternak vs. Dow Kim*, 275 FRD 461 (SDNY 2011); *McManee vs. Clemens*, 09 cv 1647 SJ, 2013 WL 6572899 (EDNY 2013), clarified on denial of reconsiderations, 09 cv 1647 (SJ) 2014 WL 12775660 (EDNY 2014). Without waiving said objections, and subject to them. Can Man, LLC has assets in excess of $1,000,000 and Best Bev, LLC has assets in excess of $50,000,000 with annual gross revenue of approximately $8,000,000."

3

recover damages should it prevail in this action," and that discovery on the issue of Defendants' ability to pay damages was not premature because Defendants had already admitted some liability in the action. *Id.* Finally, Plaintiff argued that Defendants' discovery responses were improper because they were not signed by Defendants or Defendants' counsel. *Id.*

Although Defendants objected that the requests were "patently improper, overly broad, vague, ill-defined, unduly burdensome, not proportional to the needs of the litigation, not reasonably limited in time or scope and not reasonably calculated to lead to the discovery of admissible evidence," they nevertheless "offered a less intrusive means of disclosure by providing [an affidavit] laying out Defendants' assets and current gross annual revenue." Defendants' Response, Dkt. No. 60, at 4, 5. Defendants argued that the request for tax and financial information was premature even on the issue of their ability to pay damages on the declaratory judgment action because they contest liability and the issue of insurance coverage has not been decided. *Id.* at 5-6. They also asserted that there were other less invasive means for Plaintiff to obtain the relevant information. Finally, Defendants maintained that (1) they have sufficient assets to cover the claims, (2) their discovery responses were sufficient, and (3) to the extent Plaintiff relied on an altar ego claim, Plaintiff had not alleged such a claim, could not prove it, and the information was not relevant to any such claim.

During oral argument on the motion to compel, Plaintiff argued that it asked for financial records of both defendants because it was trying to determine whether Can Man is the alter ego of Best Bev. Dkt. No. 65 at 5. Plaintiff "believe[d] that all of the assets of Can Man, including the equipment that's used to do the canning, including the facilities, was just taken from one into the other." *Id.* at 6. Although the initial discovery responses from Defendants claimed that there was "no agreement" between Can Man and Best Bev, Plaintiff argued that "it just makes no sense that

4

there would be no agreement between the two. And there has to be some kind of arrangement for this to have occurred." *Id.*

Defendants responded that discovery of tax returns is not appropriate if the information in those returns is available from other sources. *Id.* at 7. Defendants also denied that they have any agreements with one another: "Best Bev has a lease interest in the New York facility. Best Bev did not take over the lease from Can Man. There is no agreement that exists, that's what I've been told. So it's basically anything at this point would be premature." *Id.* at 8.

The Magistrate Judge responded that:

So if I understand [Plaintiff's counsel] here today and in his papers, one of the reasons that plaintiff is seeking these financials, whether it's banking documents and statements and/or returns, is that there appears to just be a vacuum where it shouldn't be, which is you have one business that's a business one day and then the next day it's no longer a business but it now has been taken over, or whatever the word they want to use, by the second defendant in this case. And his point is there is something going on here and no documents have been produced to explain it.

And [counsel] doesn't use this but this is what came to my mind as I was reading and listening here today which is the old adage, follow the money. The money will tell you what's going on because after all pretty much everything in this business and in this case is about money, as most of life is all about. So even though you may not get a document or a memo that tells you here's what happened in our business between X and Y, if you don't have that when you look at financials very often, and if not almost always, they tell the story because you see where money is being transferred in to which accounts, how it's being sent, how much of it on what basis, and where does that money go.

So that's what I took [counsel's] part of his argument, not entirely, to be, which is we can't tell from these other documents because we have none, have not been produced. The defendants claim they don't exist. But we know something happened because we see it. We see these two entities and they are reacting to each other's business dealings in a way that indicates that there is some connections [sic] here.

*Id.* at 8-9.

5

Defendants responded that there were less intrusive means to obtain the information and "[y]ou don't have to have a defendant's loan accounts or bank accounts to find that information; simply ask that question in a deposition; which is already being done." *Id.* at 9.

The Magistrate Judge pointed out that there was a protective order, and that "the vast majority of materials or documents" produced "are electronic." *Id.* at 10. Defendants responded, "imagine being here if I owned a building and an LLC and imagine someone falls on my sidewalk and then someone comes in here and says, listen, we think that LLC is a front and we want all of [counsel's] personal records, his income tax returns and everything else." *Id.* Defendants insisted that such information is "privileged, it's protected." *Id.*

Plaintiff asserted that another party involved in litigation with the Defendants had made similar claims that the company was "doing business with a company and all of a sudden we're doing business with another company and we didn't decide to do business with Company B. That's their arrangement, they did that." *Id.* 10-11. Plaintiff also argued that financial records are commonly produced in litigation, and Defendants had not articulated any reason why producing those records would be unduly burdensome. *Id.* at 11. Defendants responded that "there are [other] means of obtaining information without having to disclose bank account records." *Id.*

The Magistrate Judge granted Plaintiffs' motion to compel for the reasons set forth in his oral decision at the motion hearing. *Id.* at 13-19; Dkt. No. 64. This appeal followed.

## II. LEGAL STANDARD

A district court judge reviewing a magistrate judge's non-dispositive pretrial order may not modify or set aside any part of that order unless it is clearly erroneous or contrary to law. *Labarge v. Chase Manhattan Bank, N.A.*, 1997 WL 5853122, at *1 (N.D.N.Y. Sept. 3, 1997) (citing 28 U.S.C. § 636(b)(1)); Fed. R. Civ. P. 72(a); *Mathias v. Jacobs*, 167 F.Supp.2d 606, 621-

6

23 (S.D.N.Y. 2001). Findings are clearly erroneous when the reviewing court is firmly convinced the lower court decided an issue in error. *Lanzo v. City of New York*, 1999 WL 1007346, *2-3 (E.D.N.Y. Sept. 21, 1999). This standard imposes a heavy burden on the objecting party, and only permits reversal where the district court determines the magistrate judge "abused his broad discretion over resolution of discovery matters." *Labarge*, 1997 U.S. Dist. LEXIS 13803, 1997 WL 583122 at *1.

### III.  ANALYSIS

Defendants argue that the Magistrate Judge committed clear errors of law and abused his discretion in granting the discovery requests.

####   A.  Order was Premature

Defendants argue that the Magistrate Judge's order was premature because the requests regarding their financial condition are relevant only to damages, not liability, and discovery regarding damages should not occur until after dispositive motions are decided.

"The Federal Rules of Civil Procedure allow for broad discovery demands so long as the information requested is relevant and not privileged or otherwise limited by court order." *Xchange Telecom Corp. v. Sprint Spectrum L.P.*, No. 14-cv-54(GLS/CFH), 2015 WL 773752, at *2 (N.D.N.Y. Feb. 24, 2015) (citing Fed. R. Civ. P. 26(b)(1)). Discovery "[d]emands are construed broadly to encompass any matter, not privileged, that is relevant to the claim or defense of any party." *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Information need not be admissible in evidence to be discoverable, but must appear "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In short, "[a]lthough not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004). Indeed, "discovery is not limited to issues raised by the

pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer*, 437 U.S. at 351. "Nor is discovery limited to the merits of the case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Id.*

Here, discovery has revealed that the relationship between defendants changed during the litigation and that Can Man no longer operates its business. Plaintiff argues that this means that Defendants have shifted resources and property from Can Man to Best Bev to avoid liability for the damages. Given that the two companies had different roles in the canning process, information about their relationship and changes in that relationship may aid a factfinder's assessment of liability.

To the extent that the Magistrate Judge relied on the alter ego theory in granting the motion to compel, that was not clear error or an abuse of discretion. In New York, alter ego liability generally requires a showing of "'complete domination of the corporation . . . in respect to the transaction attacked' and 'that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'" *Baby Phat Holding Co., LLC v. Kellwood Co.*, 123 A.D.3d 405, 407 (1st Dept. 2014) (quoting *Matter of Morris v. New York State Dept. of Taxation & Fin.*, 82 N.Y.2d 135, 141 (NY 1993)). "Wrongdoing in this context does not necessarily require allegations of actual fraud." *Id.* Allegations of fraud can state a claim, but "other claims of inequity or malfeasance will also suffice." *Id.* "Allegations that corporate funds were purposefully diverted to make it judgment proof or that a corporation was dissolved without making appropriate reserves for contingent liabilities are sufficient to satisfy the pleading requirement of wrongdoing which is necessary to pierce the corporate veil on an alter-ego theory." *Id.* at 407-08.

Defendants rely on cases addressing when discovery about financial resources should be permitted to establish punitive damages. *See, e.g., Davis v. Ross*, 107 F.R.D. 326, 327 (S.D.N.Y.

8

1986) (relying on New York law[5] to conclude that "[d]iscovery of defendant's net wealth will become necessary only in the event plaintiff obtains" a verdict awarding punitive damages); *Pasternak v. Dow Kim*, 275 F.R.D. 461 (S.D.N.Y. 2011) (concluding that "highly sensitive and confidential" financial information should not be "produced given that the need for its disclosure may be abrogated by motion). Those cases are not relevant here because the Magistrate Judge's decision relied on his conclusion that the financial information would be useful to understand the relationship between the defendants. As the Magistrate Judge explained, the relationship between the two companies changed during the litigation, including Can Man's apparent winding down, and that created issues about the relationship of the companies relevant to liability. Under these circumstances, that decision was not clearly erroneous, contrary to law, or an abuse of discretion.

    B.    Tax Returns

Defendants also argue that the returns were not relevant to any claims in the case, and that the Magistrate Judge erred by failing to order an alternate means of producing the information that did not require discovery of the actual returns.

"While tax returns are not privileged, a court should compel disclosure only if, on balance, the federal policy of liberal discovery outweighs the policy of maintaining confidentiality of tax returns." *Hazledine v. Beverage Media, Ltd.*, 94 Civ. 3466, 1997 WL 362229, at *4 (S.D.N.Y. June 27, 1990). Courts use a two-part test to determine whether to order discovery of such returns. *Id.* "'[F]irst, the court must find that the returns are relevant to the subject matter of the action; and second, that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable.'" *Id.* (quoting *SEC v. Cymaticolor Corp.*, 106 F.R.D.

---

[5] "[M]atters of procedure in federal court, such as discovery, are governed by federal law." *Hazeldine v. Beverage Media, Ltd.*, 1997 WL 362229, at *3 (S.D.N.Y. June 27, 1997) (citing *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 282-83 (2d Cir. 1990)).

9

545, 547 (S.D.N.Y. 1985)). Courts decide whether the material contained in the returns is relevant by applying "the broad definition of relevance contained in Rule 26(b)(1)." *Gates v. Wilkinson*, No. 03-cv-763 (GLS/DRH), 2005 WL 758793, at *2 (S.D.N.Y. April 5, 2005). The second part of the test means that "if the information contained in a tax return is otherwise available to a party from other sources, compelled production should be denied." *Id.* "A compelling need for an adversary's tax returns does not exist where the requesting party is in possession of financial documents from which the information sought by the tax returns may be readily obtained." *Sadofsky v. Fiesta Products, LLC*, 252 F.R.D. 143, 150 (E.D.N.Y. 2008). "The showing of a compelling need for the information within the tax return falls upon the party making the demand for this form of disclosure." *Trudeau v. New York State Consumer Protection Bd.*, 237 F.R.D. 325, 331 (N.D.N.Y. 2006). The party whose tax returns are sought "has the burden in this discourse to provide alternative sources for this sensitive information." *Id.* "Gathering this financial information by deposition is one alternative source." *Id.* at 331-32. "Another approach would have the party disclose the relevant financial information by providing an affidavit of net worth, wealth, and income." *Id.* at 332.

The Magistrate Judge's decision did not analyze the tax returns separately or explicitly apply the relevant two-part test, and it is not clear from his reasoning that he evaluated both parts of the test. As to the first part of the test—whether the returns are relevant—the Magistrate Judge found that they were relevant to deciphering the financial relationship between Best Bev and Can Man. That was not a clear error or an abuse of discretion because information about the taxes that each party paid, the deductions they took, the sources of their income, and other matters contained in tax returns could clarify the financial relationship between the two defendants. In addition, that

information is relevant, in the broad sense of the federal discovery rules, to the question of alter ego liability and culpability.

As to the second part of the test—a finding that the production of the actual tax returns is necessary because the information contained in the tax returns was not available from another source—the Magistrate Judge did not address this part of the test and therefore committed a clear error of law. This issue is therefore remanded to the Magistrate Judge to determine whether the relevant information is available from other, less-intrusive sources and then deciding whether to order discovery of the tax records.

### C. Scope of Discovery

Defendants argue that the Magistrate Judge erred by ordering discovery of financial documents for a three-year period. It is their position that discovery should be limited to the time period relevant to this litigation (June 2022 to July 2023) and the period when Can Man's financial and operating status changed.

Given the broad view of relevance in discovery, Defendants' financial situation and relationship during the time covered by the Magistrate Judge's order is reasonably calculated to lead to discoverable material. As the Magistrate Judge found, both the financial relationship between the Defendants and the financial health of Can Man are relevant to the issue of alter ego liability, and the time period in the order will allow Plaintiff to analyze financial trends over time. As a result, the Magistrate Judge did not clearly error or abuse his broad discretion.

### D. Less Intrusive Discovery

Finally, Defendants argue that the Magistrate Judge erred by ordering the production of documents when less-intrusive means of discovering the relevant information was available, such as depositions or affidavits.

11

As explained above, the question of whether there are less intrusive means of discovering information is part of the test to decide whether to order the production of tax returns. Given that financial records and banking records do not have the same privacy protections as tax returns, such information is routinely produced in business litigation, and in light of the protective order in this case, the Magistrate Judge did not abuse his discretion when he ordered the production of the financial information other than the tax returns.

    **E.**    **Request to Stay**

Defendants request that the Court stay the order to produce the documents while the appeal is pending. The Court notes that the Magistrate Judge has extended discovery in this matter several times while this appeal was pending. Dkt. Nos. 69, 72, 79, 82, 88. As the Magistrate Judge supervises discovery in this matter and issues non-dispositive orders, seeking an extension of time to respond from the Magistrate Judge was the appropriate approach, and the Magistrate Judge has effectively provided Defendants the relief sought, so the request is therefore moot. The request is also moot now that the appeal has been decided. The Magistrate Judge shall address the remaining discovery issues and timing on remand.

**IV.**    **CONCLUSION**

For the reasons stated above, Defendant's appeal of the Magistrate Judge's non-dispositive decision, Dkt. No. 67, is hereby **DENIED** in part and **GRANTED** in part. The Magistrate Judge's order, Dkt. No. 64, granting Plaintiff's motion to compel, Dkt. No. 59, is hereby **AFFIRMED in part**. The matter is remanded to the Magistrate Judge for proceedings consistent with this Decision and Order.

**IT IS SO ORDERED**

**Dated:** October 1, 2025

Elizabeth C. Coombe
U.S. District Judge