# SAVAD | CHURGIN
## ATTORNEYS AT LAW

Paul Savad (1941-2020)
Joseph A. Churgin

Of Counsel
Susan Cooper
Donna Sobel

55 OLD TURNPIKE ROAD – SUITE 209
(Rt. 59 & THRUWAY EXIT 14)
NANUET, NEW YORK 10954

(845) 624-3820
Fax: (845) 624-3821

November 7, 2025

Hon. Magistrate Judge Miroslav Lovric
U.S. District Court Northern District Of New York
15 Henry Street
Binghamton, NY 13901

RE:     Happy Hour Drinks Company, Inc. v. Can Man, LLC et al.
        Case No. 3:24-cv-00047-TJM-ML

Your Honor:

Plaintiff Happy Hour Drinks Company, Inc. ("Happy Hour"), by and through undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 37(a) to compel Defendants Can Man, LLC ("Can Man") and Best Bev, LLC ("Best Bev") (collectively, "Defendants") to immediately produce and provide the following, and for monetary sanctions:

(1) Best Bev's 2024 tax returns, which were filed with the IRS no later than October 15, 2025;

(2) Can Man's 2024 tax returns, or a sworn explanation of why none exists despite Can Man providing discovery responses on November 18, 2024 attesting that "Can Man, LLC has assets in excess of $1,000,000"

(3) complete bank statements and financial records for both entities through November 2025; and

(4) complete and accurate interrogatory responses to interrogatories 2 and 6 from Plaintiff's third set of interrogatories through the present date.

This is Plaintiff's <u>fourth</u> motion to compel in this case. Dkt. Nos. 21, 38, 59 (prior motions to compel). The Court granted the previous three motions in their entirety. Dkt. Nos. 30, 40, 64 (*see also* Dkt. No. 90 [denying Defendants' Fed. R. Civ. P. 72 motion but granting the motion to conduct balancing test regarding tax returns], 94 [status letter from Defendants stating that they "will be providing the tax returns for both defendants as demanded by plaintiff in its previously submitted demand for documents, subject, of course, to the protective order . . . ."], 95 [finding that "there are no remaining issues regarding the matters discussed in Decision & Order [Dkt. No. 90].) Defendants' pattern of obstruction must end.

1

## I. INTRODUCTION

This motion concerns enforcement, not new discovery. The District Court affirmed this Court's order compelling production of comprehensive financial information to investigate whether Can Man is the alter ego of Best Bev and whether assets were improperly transferred between these entities to avoid liability. *See* Decision & Order, Dkt. No. 90, at 8-11. The District Court specifically found that financial records—including tax returns— "could clarify the financial relationship between the two defendants" and are "relevant to the question of alter ego liability." *Id.* at 10-11.

Yet Defendants continue their pattern of evasion. Despite claiming compliance, Defendants have provided only partial, outdated information that deliberately excludes the most critical time period: the months during and after Can Man's alleged wind-down and Best Bev's takeover of operations. Most egregiously, Defendants refuse to produce Best Bev's 2024 tax return—a document that was filed with the IRS no later October 15, 2025, and which Defendants indisputably possess.

Despite producing 2022 and 2023 tax returns, neither Defendant provided a 2024 tax return. It is not disputed that the commonly controlled canning operation moved from Pennsburg, Pennsylvania to Waverly, New York in the late months of 2023 and the early months of 2024. Discovery in this critical timeframe is paramount to proving the alter ego allegations.  For example, in a November 18, 2024 discovery response to interrogatory 6, Defendants attested that "Can Man, LLC has assets **in excess** of $1,000,000." Dkt. No. 59-3 at p. 4. This representation raises obvious questions that only 2024 tax returns and bank statements can answer.

Defendants cannot have it both ways. They voluntarily produced their 2021 to 2023 tax returns without being compelled to do so, thereby conceding that tax returns are the appropriate vehicle for financial disclosure in this litigation. Having made that choice, Defendants cannot now selectively refuse to produce critical tax returns simply because those returns contain evidence of the suspicious Can Man-to-Best Bev transition that Plaintiff seeks to investigate.

Defendants' pattern is clear: object to everything, provide minimal information, force Plaintiff to file motions to compel, then comply partially only when ordered—while still withholding the most damaging evidence. That pattern must end. With discovery currently scheduled to close December 30, 2025, and critical 30(b)(6) depositions on the horizon (that Plaintiff is trying to schedule for November), Plaintiff needs complete, current financial information from Defendants immediately.

## II. BACKGROUND

### A. The Litigation and Prior Discovery Disputes

This case arises from Defendants' production of hundreds of thousands of defective beverage cans that leaked and could not be sold, causing substantial damages to Happy Hour. Dkt. No. 1, ¶¶ 13-25. The Complaint alleges negligence, unjust enrichment, fraudulent misrepresentation, and fraudulent inducement against Can Man and Best Bev. *Id.*

Discovery has revealed suspicious circumstances surrounding the relationship between these two entities. Both entities share the same address tucked away in the U.S. Virgin Islands. Both entities are controlled by Shawn Sheehan, Casey Parzych, and Ryan Uzenski. Both entities are entangled in other litigation alleging alter ego claims against the same bad actors. *See Midnight Madness Distilling LLC Adversary Action*, filed in this action as Dkt. No. 59-1. Can Man—the original defendant that allegedly caused the defective production—has purportedly ceased operations and "has no employees" and is not "functioning as a business." *See* Dkt. No. 59, at 1. Meanwhile, Best Bev has taken over operations at a facility in Waverly, New York, apparently using the same equipment and conducting the same business. The financial mechanics of this transition remain unexplained, as Defendants claim "no agreement" exists between the entities. *See* Oral Argument Tr., Dkt. No. 67-5, at Transcript p. 8:4-5.

Plaintiff has been forced to file **three prior motions to compel** to obtain basic discovery that should have been produced voluntarily. *See* Dkt. Nos. 21, 38, 59. Each motion was granted in full. *See* Dkt. Nos. 30, 40, 64. Most recently, this Court granted Plaintiff's third motion to compel, ordering Defendants to produce comprehensive financial information including tax returns, financial statements, bank statements, and responses to interrogatories about the business operations and financial relationship between Can Man and Best Bev. *See* Dkt. No. 64. Defendants appealed to the District Court, arguing the discovery was premature, overly broad, and that less intrusive alternatives were available. The District Court rejected these arguments and affirmed this Court's order, finding that the financial information is "relevant to deciphering the financial relationship between Best Bev and Can Man" and relevant to "the question of alter ego liability and culpability." Decision & Order, Dkt. No. 90, at 10-11. The District Court specifically adopted this Court's reasoning that financial records would "tell the story" of what happened between these entities because "you see where money is being transferred in to which accounts, how it's being sent, how much of it on what basis, and where does that money go." *Id.* at 5 (quoting Oral Argument Tr., Dkt. No. 67-5, at Transcript pp. 8-9).

The District Court remanded on only one narrow issue: whether the information in tax returns is "available from other, less-intrusive sources." *Id.* at 11. The District Court explicitly found tax returns **relevant** and directed this Court to determine whether alternative sources could provide the same information. *Id.* Instead of objecting and seeking this Court's guidance on whether alternative sources could provide the same information, Defendants, following a good faith meet and confer (Dkt. No. 91), advised on October 15, 2025 that "defendants will be providing plaintiff's counsel with the tax returns for both defendants as demanded by plaintiff in its previously submitted demand for documents, subject, of course, to the protective order . . . ." Dkt. No. 94. Furthermore, by producing certain tax returns, Defendants have waived any privilege-based objections.

Defendants seemed to have waved the white flag, which prompted this Court to find on October 16, 2025 that: "In light of Status Report 94: (1) the parties advise the Court that Defendants will be providing Plaintiff's counsel with the tax returns for both Defendants as demanded by Plaintiff in its previously submitted demand for documents; (2) as a result, there are no remaining issues regarding the matters discussed in Decision & Order [90] . . ." Dkt. No. 95. But because Defendants were being tricky once again, Plaintiff filed a status report on October 22, 2025 (Dkt. No. 96), attempted to further meet and confer to obtain the intentionally withheld

documents (Dkt. No. 97), and are filing this Motion following the Court's October 30, 2025 order. Dkt. No. 100.

## B. Defendants' Deficient Supplemental Responses

On October 29, 2025, after the District Court's decision, Defendants filed a status report claiming they had "provided plaintiff's counsel with the financial records from inception through August of 2024 and tax returns for both defendants through 2023." Dkt. No. 99, at 1. Defendants provided no 2024 tax returns for either entity, despite the fact that Best Bev's 2024 return was due no later than October 15, 2025—weeks before their status report—and Defendants' counsel confirmed during the meet and confer process that Best Bev's 2024 return was, indeed, filed. Additionally, all financial information stops at August 2024—more than 15 months ago.

## C. Defendants' Meritless Objections

In their status report, Defendants raise two principal objections, both without merit.

**First**, Defendants claim that post-August 2024 financial records are only relevant to "ability to pay a judgment" and therefore not discoverable until after judgment is obtained, citing *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). Dkt. No. 99, at 1. This argument mischaracterizes both the law and Plaintiff's discovery requests. *EM Ltd.* involved post-judgment discovery of a sovereign nation's assets for execution purposes—an entirely different context. Here, Plaintiff seeks current financial information to prove alter ego liability, which goes to whether Plaintiff can hold Best Bev liable for Can Man's conduct. This discovery is relevant to liability, not damages.

**Second**, Defendants claim that Rule 26(e)'s supplementation requirement does not apply because the Court's original order specified a three-year time period. Dkt. No. 99, at 2 (citing *In re Weatherford Int'l Sec. Litig.*, 2013 WL 5788680, at *2 (S.D.N.Y. Oct. 28, 2013)). This argument fundamentally misunderstands Rule 26(e) and the cited case law. Notably, the *Weatherford* opinion does not reference Rule 26(e) or supplementing a document request. *See generally Weatherford* at *2. The *Weatherford* Plaintiffs only sought "an order, pursuant to Rule 37(a), compelling Weatherford to respond to" a single interrogatory. *Id.* at *1. Additionally, the court actually granted the Motion to Compel except for part (iv) of Interrogatory 17 which it held that "document requests" were more appropriate for seeking adjustments on tax related materials. *Id.* at *4.

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure permit broad discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information need not be admissible at trial to be discoverable; it need only be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004). "Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351

(1978).

Rule 26(e) imposes a continuing obligation to supplement discovery responses in a timely manner when a party "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). Moreover, the "federal discovery rules place a duty on a party to turn over not only proper materials of which he is aware, but also those of which he reasonably *ought* to have been aware." *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) (emphasis in original). Information is "incomplete or incorrect" in some "material respect" if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation. *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 77 (W.D.N.Y. 2011).

While tax returns are not privileged, courts apply a two-part test before ordering their production: "(1) the returns are relevant to the subject matter of the action; and (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *Hazeldine v. Beverage Media, Ltd.*, 1997 WL 362229, at *4 (S.D.N.Y. June 27, 1997). The party resisting production bears the burden of showing that less intrusive alternatives can provide the same information. *Trudeau v. New York State Consumer Protection Bd.*, 237 F.R.D. 325, 331 (N.D.N.Y. 2006).

## IV. ARGUMENT

### A. Defendants Must Produce All Tax Returns

The District Court already found that tax returns are relevant to investigating the financial relationship between Can Man and Best Bev and to establishing alter ego liability. Decision & Order, Dkt. No. 90, at 10-11. More importantly, Defendants have waived any objection to producing tax returns by voluntarily producing their tax returns for both entities without being compelled to do so.

 "As a general rule, the voluntary production of a privileged document waives any claim of privilege with respect to that document." *United States v. Rigas*, 281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003); *see also Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) ("the privilege is generally waived by voluntary disclosure . . . to another party"). Defendants cannot argue any privilege prevents it from producing tax returns.

By producing five sets of tax returns, Defendants implicitly conceded that: (1) tax returns are an appropriate vehicle for disclosing their financial information in this litigation; (2) the protective order adequately safeguards any confidentiality concerns; and (3) production of tax returns is neither unduly burdensome nor disproportionate to the needs of the case. Having made these concessions by their voluntary conduct, Defendants cannot now refuse to produce 2024 tax returns on the ground that less intrusive alternatives are available. They have already chosen tax returns as the means of disclosure and identified no less intrusive alternatives.

The District Court's remand question—whether less intrusive alternatives can provide the same information—is answered by Defendants' own actions. Defendants determined that the most effective way to provide comprehensive financial information is through tax returns. Without even being compelled by the District Court to do so, they proved this by producing 2022 returns rather than offering depositions, affidavits, or piecemeal financial statements as alternatives. Their selective refusal to produce 2024 returns is not based on any legitimate discovery objection—it is strategic obstruction designed to conceal evidence of the Can Man-to-Best Bev transition.

Put simply: Defendants cannot produce tax returns when it suits them (pre-transition) and refuse to produce tax returns when it doesn't (during and after transition). This Court should compel production of the complete set of returns that Defendants themselves identified as the appropriate means of disclosure.

Even if the Court considers the question of less intrusive alternatives despite Defendants' waiver, the answer remains clear: alternatives have failed and cannot provide the information that tax returns contain, as demonstrated by Defendants' own inadequate responses.
Best Bev's refusal to produce its 2024 tax return is the most egregious example of Defendants' obstruction. Best Bev's 2024 corporate tax return was due by March 17, 2025, or with an automatic six-month extension by October 15, 2025. It is now November 2025. Best Bev has indisputably filed this return with the Internal Revenue Service. The return exists. Defendants possess it. Yet they refuse to produce it.

This refusal is both inexplicable and suspicious. Defendants produced Best Bev's 2023 tax return without court order, demonstrating that they have no principled objection to producing Best Bev's tax returns generally. They produced 2022 tax returns for both entities, again without being compelled. Yet when it comes to Best Bev's 2024 return—the return covering the year when Best Bev allegedly took over Can Man's operations—Defendants suddenly refuse. This selective withholding strongly suggests that the 2024 return contains evidence Defendants wish to conceal.

The 2024 return would provide critical evidence regarding the core disputed issues in this case. Form 1120 Schedule K specifically requires disclosure of related-party transactions, including any transactions between Best Bev and Can Man during 2024. If Best Bev acquired assets from Can Man, borrowed money from Can Man, made payments to Can Man, or engaged in any other financial dealings with Can Man during the transition year of 2024, Schedule K would reveal those transactions. The income and expense schedules would show whether Best Bev's revenue increased in 2024 as Can Man's allegedly decreased, supporting Plaintiff's theory that Best Bev simply assumed Can Man's business. The depreciation schedules would identify equipment acquired during 2024 and potentially trace it to Can Man's former operations. The balance sheet would show Best Bev's asset composition as of year-end 2024, allowing comparison to Can Man's reported assets and revealing whether assets moved between entities.

Defendants offer no legitimate justification for withholding this document. It is not burdensome to produce—the return is already prepared, filed, and in Defendants' possession. It requires no compilation, no redaction, no analysis. Defendants need only produce an existing document that

they filed with the government weeks ago.

## B. Less Intrusive Alternatives Have Failed and Cannot Provide the Same Information

The burden is on Defendants to show that less intrusive alternatives can provide the same information as tax returns. *Trudeau*, 237 F.R.D. at 331. Defendants cannot meet this burden and waived any opportunity to raise the issue following the Decision & Order and their October 15, 2025 status letter (Dkt. No. 94). Their own deficient discovery responses prove that the alternatives they suggest—interrogatories, affidavits, bank statements, and depositions—are inadequate substitutes for comprehensive tax returns.

### 1. Interrogatory Responses Provide Only Vague Ranges and Conclusory Statements

Defendants' interrogatory responses are the epitome of evasive, unhelpful discovery responses. Rather than providing specific financial information, Defendants offer only broad ranges that tell Plaintiff virtually nothing about the entities' actual financial condition, business operations, or relationship with each other.

In response to Interrogatory No. 6, which requested detailed financial information, Defendants stated only that Can Man has "assets in excess of $1,000,000" and Best Bev has "assets in excess of $50,000,000 with annual gross revenue of approximately $8,000,000." Dkt. No. 59-3 at 4.

These vague ranges raise more questions than they answer:

1. What is the actual amount of Can Man's assets—$1,000,001 or $10,000,000? The range "in excess of $1,000,000" is meaningless.
2. What types of assets does Can Man hold? Cash? Equipment? Real property? Accounts receivable? Each type of asset has different implications for alter ego liability.
3. If Can Man holds $1 million in cash, where did that cash come from and why wasn't it used to satisfy Plaintiff's claims?
4. If Can Man holds $1 million in equipment, is that the same equipment it formerly used to can beverages, and if so, why isn't Best Bev using it?

The same deficiencies plague the Best Bev response. "Assets in excess of $50,000,000" is an absurdly broad range. Is it $50 million or $500 million? The magnitude matters. Similarly, "annual gross revenue of approximately $8,000,000" provides no useful information. Revenue from what sources? From how many customers? Did any of that revenue come from customers that previously paid Can Man? These details are critical to alter ego analysis but entirely absent from Defendants' evasive responses.

More fundamentally, Defendants refuse to explain the business transition between Can Man and Best Bev. Plaintiff asked detailed interrogatories about the nature of the business operations during the relevant period, the relationship between the entities, and what happened when Can Man ceased operations. Defendants responded with boilerplate objections and the uninformative statement, in response to interrogatory 2, that Can Man's business is "more particularly described on the website for Best Bev, LLC which can be found at www.bestbev.com." Dkt. No. 59-3 at 2-3. This is not a substantive response—it is obstruction. Corporate parties cannot satisfy their

discovery obligations by directing opposing counsel to review their marketing website. Interrogatory responses, even when properly answered, cannot provide the detailed, verified, comprehensive financial information that tax returns contain. Tax returns include specific line items for dozens of categories of income and expenses. They include depreciation schedules listing individual assets. They include balance sheets showing the composition of assets and liabilities. They include mandatory disclosures of related party transactions. No interrogatory response, no matter how detailed, can replicate this standardized, comprehensive financial picture.

## 2. Bank Statements Alone Are Incomplete and Do Not Show the Full Financial Picture

Defendants produced some bank statements through August 2024, but these partial bank statements suffer from multiple deficiencies. First and most obviously, they are 15 months out of date. Bank statements from August 2024 do not show what happened to Can Man's assets during the critical transition period of late 2024. They do not show Best Bev's current financial condition. They do not show ongoing financial transactions between the entities.

## 3. Depositions Cannot Substitute for Documentary Evidence of Complex Financial Transactions

Defendants suggest that the upcoming Rule 30(b)(6) depositions scheduled for November can address Plaintiff's financial questions. This suggestion ignores both practical reality and established discovery principles. Depositions are not a substitute for documentary discovery of financial information; they are a complement to it.

Plaintiff cannot effectively depose corporate representatives about complex financial relationships without first reviewing the documentary foundation that tax returns provide. Tax returns will reveal specific transactions, account numbers, asset transfers, income sources, related party dealings, and changes in financial condition over time. Armed with this documentary evidence, Plaintiff can ask targeted questions. Without the complete tax returns requested, Plaintiff is forced to conduct blind depositions, asking witnesses to recall years-old financial details from memory—an inefficient and unreliable approach.

Additionally, deposition testimony about finances is inherently less reliable than contemporaneous documents prepared under penalty of perjury and filed with the IRS. Witnesses may claim lack of memory regarding specific transactions from 2023 or 2024. They may provide vague or incomplete answers. They may characterize transactions in ways favorable to Defendants without documentary evidence to contradict them. Tax returns, by contrast, provide objective data compiled by professional accountants, verified under penalty of perjury, and filed with a government agency.

Depositions serve an important function in financial discovery: they allow Plaintiff to question witnesses about the documents after reviewing them. But depositions cannot replace documentary discovery. Defendants' suggestion that Plaintiff should simply ask that question in a deposition reflects a fundamental misunderstanding of how financial discovery works in complex commercial litigation.

## V. CONCLUSION

Defendants' strategy is transparent: produce just enough to avoid sanctions while withholding the most probative evidence. They produced pre-transition tax returns, but not returns during and after transition. They produced financial records through August 2024, but not September 2024-November 2025 (the period when Can Man allegedly wound down). They claim Can Man filed no 2024 tax return, but report Can Man holding over $1 million in assets. They refuse to produce Best Bev's filed 2024 return for no articulated reason. As explained above, there is a significant objectively reasonable likelihood that the additional or corrective information demanded herein will substantially affect or alter Plaintiff's discovery plan or trial preparation. *Robbins & Myers*, 274 F.R.D. at 77.

This is Plaintiff's fourth motion to compel. The previous three were granted. Enough is enough. Therefore, for the foregoing reasons, the Court should order that Defendants produce and provide:

(1) Best Bev's 2024 tax returns;
(2) Can Man's 2024 tax returns, or a sworn explanation of why none exists;
(3) complete bank statements and financial records for both Defendants through November 2025; and
(4) complete and accurate interrogatory responses to interrogatories 2 and 6 from Plaintiff's third set of interrogatories through the present date.

In addition, the Court should award monetary sanctions to Plaintiff for having to file the present motion, which should never have been necessary.


Respectfully submitted,

*Joseph Churgin*

JOSEPH A. CHURGIN
JAC/mc
cc:     Eric Kurtz, Esq.
        Happy Hour Drinks Company, Inc.