# COOK, KURTZ & MURPHY, P.C.

ATTORNEYS & COUNSELORS AT LAW
85 MAIN STREET
P.O. BOX 3939
KINGSTON, N.Y. 12402
(845) 331-0702

| | | |
|---|---|---|
| ERIC M. KURTZ<br>THOMAS A. MURPHY<br>MICHAEL T. COOK<br>JOHN C. BURNS | FAX: (845) 331-1003<br>e-mail: ekurtz@cookfirm.com<br>www.cookfirm.com | ANDREW J. COOK, SR. (1884-1958)<br>ANDREW J. COOK, JR.  (1918-1997)<br>FRANCIS X. TUCKER (1923-1987)<br>_____ |

ROBERT D. COOK (Retired)

November 12, 2025

Hon. Miroslav Lovric
Federal Building and US Courthouse
15 Henry Street
Binghamton, New York 13901

Re: **Happy Hour Drinks Company, Inc. vs. Can Man, LLC d/b/a Best Bev Co., and Best Bev LLC**
**Case No.: 3:24-cv-00047(ECC/ML)**
**Our File No.: 2024-116**

Dear Magistrate Judge Lovric:

      This correspondence is submitted in opposition to Happy Hour Drinks Company, Inc.'s (hereinafter "Plaintiff") motion to compel seeking a further production of financial records and further response to plaintiff's third demand for documents and third demand for interrogatories.  As the Court is aware, Plaintiff brings this complaint against Defendants Can Man, LLC and Best Bev, LLC for claims of negligence, unjust enrichment, fraudulent misrepresentation, and fraudulent concealment (Doc. No. 1, at pages 7-14). Plaintiff is seeking damages resulting from production runs that occurred in June 2022, November 2022, April 2023 at Can Man, LLC's facility in Pennsburg, Pennsylvania, and July 2023 at Best Bev, LLC's facility in Waverly, New York and further alleges that these failed runs nearly resulted in Plaintiff's bankruptcy (*Id.* at pages 14-15).  This most recent motion seeks disclosure of Defendants financial records from August of 2024 to the present along with their respective 2024 tax returns.

      Defendants object to producing financial records beyond the three-year period previously ordered by the Court, as such records are not relevant to the claims or defenses in this case. The Court's order dated January 21 (see page 17 of the 1/21/25 hearing transcript) and the District Court's decision (see page 8, referencing Magistrate Lovric's reliance on the alter ego theory) limited discovery to the three-year period during which Defendants had a business relationship. The Second Circuit has held that

1

post-litigation financial records are not discoverable for the purpose of determining ability to pay a judgment until after a judgment is obtained. **See EM Ltd. V. Republic of Argentina, 695 F. 3d 201,207 (2d Cir. 2012)**. The financial records plaintiff now seeks are post commencement of litigation and well past the end of their business relationship. Therefore, Defendants object to any further production as irrelevant and not proportional to the needs of the case.

Defendants also object to Plaintiff's interpretation of Rule 26(e). Defendants are only required to supplement discovery for the three-year period previously identified, and will do so if additional responsive documents are found. There is no Court order requiring ongoing production of new documents beyond this period. The Court's order (January 21, 2025 transcript, page 17) and the District Court's decision (page 8) confirm that discovery is limited to this timeframe. **See Fed. R. Civ. P. 26(e); see also In re Weatherford Int'l Sec. Litig. No. 11 Civ. 1646 (LAK/JCF), 2013 WL 5788680, at *2 (S.D.N.Y. Oct. 28, 2013)(supplementation does not require production of documents created after the relevant period)**. The financial records already produced show that Can Man, LLC and Best Bev, LLC are separate entities, and there is no evidence of improper asset transfers. Producing current bank statements is not relevant to liability.

Defendants further object to any request that would require them to create documents that were not created and maintained in the ordinary course of business, as such requests exceed the permissible scope of discovery under Fed. R. Civ. P. 34(a).

Discovery to date has been extensive and has revealed that from March of 2021 up until June of 2022, the defendant, Can Man, LLC had performed at least four (4) production runs at its Pennsylvania facility involving Plaintiff's product without any issue. The first issue was discovered by employees of Can Man, LLC in September of 2022 and Plaintiff was immediately notified of the same (that being a discovery of pinhole leaks in inventory stored at Can Man's facility in the State of Pennsylvania). In late September and early October of 2022 another production run was performed by Can Man, LLC. Shortly after that production run Can Man, LLC was observing leaking cans for a number of its customers that were not pinhole leaks but, rather, leaks in the seams of the cans which resulted in emails which were previously disclosed to Plaintiff. Having experienced this issue in the fall of 2022, Plaintiff retained a second co-packer in Las Vegas Nevada to produce its product with the first production run occurring in December of 2022. This second co-packer went on to perform approximately three additional production runs in 2023. During this time, Can Man LLC continued to investigate the cause of the pinhole leaks, requesting the specs for the aluminum cans provided by plaintiff through a manufacturer by the name of Ardagh and sending out samples of Plaintiff's product to two different labs to determine the copper and dissolved oxygen levels. Both Plaintiff and Can Man, LLC were incurring costs (Plaintiff having to buy back damaged products and Can Man, LLC not receiving payments for the production runs). Despite these issues, at least two additional production runs were

performed. The first was performed by Can Man, LLC in April of 2023, however, despite the changes to the formula, Plaintiff claims that the product continued to leak from the cans. By June of 2023, Can Man, LLC was winding down its production facility and Best Bev, LLC was opening up a new, larger, faster production facility in Waverly, New York. Best Bev, LLC's one and only production run for the Plaintiff occurred in July of 2023 but resulted in a defective seam in the cans. Plaintiff was notified of this issue and documentation concerning that issue has already been exchanged. Plaintiff was never invoiced for that final production run by Best Bev, LLC. According to the Plaintiff, its business shut down in mid-November of 2023. Thus, from the above information one can conclude that the issues in this case involve four production runs performed between June of 2022 and July of 2023. Although the last production run was performed in July of 2023, the business relationship between the parties did not officially conclude until November of 2023.

As this Court is well aware, Plaintiff's successfully moved to compel the production of financial records and tax returns for a three year period from August of 2021 to August of 2024 based on the theory that this information was needed to examine a claim of an alter ego status between the two LLCs. Defendants have fully complied with this Court's order and have produced income tax returns for the years 2021, 2022 and 2023 as well as financial records through August of 2024. Plaintiff's counsel recently served a Fifth Demand for Documents seeking the financial records from August 2024 to the present along with the 2024 tax returns (presumably to eliminate defendant's argument concerning Rule 26(e) supplementation requirements).

There are a number of very inaccurate statements set forth in Plaintiff's letter motion to compel and a clear attempt to "move the goal posts". For instance, Plaintiff now claims that the really critical time period is not when the parties were actually doing business with each other but quite some time after their business relationship ended. Plaintiff asserts that the months during and after Can Man, LLC wound down its operation are now the critical times. Yet there has already been testimony that Can Man's last production run for Plaintiff was in April of 2023 and its last production run for anyone was in December of 2023. Plaintiff already has financial records that encompass a period of 8 months **after the last production run.**

Plaintiff also incorrectly claims that "It is not disputed that the commonly controlled canning operation moved from Pennsburg, Pennsylvania to Waverly, New York in the late months of 2023 and early months of 2024. Discovery in this critical timeframe is paramount to proving the alter ego allegation". At the very least this is completely inaccurate and misleading. As noted above, and as established by documentary evidence already provided to plaintiff's counsel, Can Man LLC leased a facility in Pennsburg, Pennsylvania while Best Bev LLC leased a facility in Waverly, New York. Best Bev LLC never operated out of the Pennsylvania facility and Can Man LLC never operated out of the New York facility. There was no "commonly controlled canning operation". Can Man LLC's last production run for any customer was in

December of 2023 and Best Bev LLC was already conducting production runs by the summer of 2023.  Plaintiff has already received the financial records for both LLCs that cover the late months of 2023 and early months of 2024 (and even further to August of 2024).  If plaintiff had one scintilla of evidence from those financial records and tax returns to establish at least a question of alter ego status, that would have been mentioned in the letter motion to compel.  But that is not what is the driving force of the request for financial records that are long past the business relationship between the parties and well into this litigation.  It is quite simple, Plaintiff is seeking financial records to determine the Defendants ability to pay a judgment, one that has not been obtained to date.  The alter ego claim for these updated records is not a viable one.  As this Court noted in its previous decision, Plaintiff was entitled to the financial records to explore what had happened during the time that Plaintiff's production runs went from Pennsylvania to New York.  Plaintiff already has those records in addition to already having been provided with the records for the purchase of all of the equipment for the Best Bev LLC facility in New York and the leases held by Can Man LLC in Pennsylvania and Best Bev LLC in New York.

Counsel for Happy Hour also appears to elude to the fact that Can Man LLC may not have filed a 2024 tax return despite having assets in excess of $1,000,000.  This, again, is not accurate as Can Man LLC did file a federal tax return by the October 15th extension deadline.  Counsel was advised of this during the meet and confer over this issue.  Plaintiff's counsel also continues to elude to the claim that these more updated financials "contain evidence of the suspicious Can Man-to-Best Bev transition that Plaintiff seeks to investigate".  That is the same argument they utilized to convince this Court to compel production of financials for the relevant period of time that the parties conducted business, including the time period when production ended with Can Man LLC and began with Best Bev LLC.  As noted above, the records that defendants were compelled to disclose do not contain any evidence of improper asset transfers.

## **STANDARD OF REVIEW**

Fed. R. Civ. P. Rule 26(b)(1) states that "[u]nless otherwise limited by court order . . . Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. Rule 26(b)(1) (emphasis added).

"Information is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" ***Weilburg v. Koss*, No. 522CV00435BKSTWD, 2023 WL 4364201, at \*1 (N.D.N.Y. July 6, 2023)** (quoting Fed R. Evid. 401). "Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at

trial." ***Weilburg v. Koss***, No. 522CV00435BKSTWD, 2023 WL 4364201, at *1. "[I]t is well established that relevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself." ***Weilburg v. Koss***, No. 522CV00435BKSTWD, 2023 WL 4364201, at *1 (quoting ***Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.***, No. 13 CIV. 1654 RA HBP, 2014 WL 5420225 at *7 (S.D.N.Y. Oct. 24, 2014) (quoting ***Arch Assocs., Inc. v. HuAmerica Int'l, Inc.***, No. 93 CIV. 2168 (PKL), 1994 WL 30487 at *1 (S.D.N.Y. Jan. 28, 1994))) [internal quotation marks omitted]; (citing ***Degulis v. LXR Biotechnology, Inc.***, 176 F.R.D. 123, 125 (S.D.N.Y. 1997); ***Quaker Chair Corp. v. Litton Bus. Sys., Inc.***, 71 F.R.D. 527, 530-531 (S.D.N.Y. 1976)). "Relevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." ***Weilburg v. Koss***, No. 522CV00435BKSTWD, 2023 WL 4364201, at *1 (quoting ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)). "However, the amended rule is intended to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse' by emphasizing the need to analyze proportionality before ordering production of relevant information." ***Weilburg v. Koss***, No. 522CV00435BKSTWD, 2023 WL 4364201, at *1 (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment).

"The burden of demonstrating relevance remains on the party seeking discovery, and the newly-revised rule 'does not place on the party seeking discovery the burden of addressing all proportionality considerations.'" ***Weilburg v. Koss***, No. 522CV00435BKSTWD, 2023 WL 4364201, at *1 (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment). "In general, when disputes are brought before the court, 'the parties' responsibilities [ ] remain the same' as they were under the previous iteration of the rules, so that the party resisting discovery has the burden of showing undue burden or expense." ***Weilburg v. Koss***, No. 522CV00435BKSTWD, 2023 WL 4364201, at *1 (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment) (citing ***Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York***, 284 F.R.D. 132, 135 (S.D.N.Y. 2012)).

> The advisory committee's notes to the recent amendment of Rule 26 further explain that "[a] party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery."

***Weilburg v. Koss***, No. 522CV00435BKSTWD, 2023 WL 4364201, at *2 (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment).

"A district court has broad latitude to determine the scope of discovery and to manage the discovery process." ***Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC,***

2024 WL 1285390, at *1 (N.D.N.Y. 2024) (quoting *Tromblee v. New York*, 2022 WL 2818222, at *2 (N.D.N.Y. 2022) (quoting *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 134 S. Ct. 2250, 189 L. Ed. 2d 234 (2014))) [internal quotation marks omitted]. "This discretion includes imposition of 'limitations or conditions on discovery ... [and] extends to granting or denying motions to compel or for protective orders on just terms.'" *Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, 2024 WL 1285390, at *1 (quoting *Jenny Yoo Collection, Inc. v. David's Bridal, Inc.*, 2019 WL 6841966 (S.D.N.Y., 2019)). "[I]t is the discovering party who 'has the burden of demonstrating that the information sought is relevant to the subject matter of the pending action." *Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, 2024 WL 1285390, at *1 (quoting *Russell v. Scott*, 2022 WL 3084339, at *3 (D.Vt. 2022) (quoting *U.S. v. International Business Machines Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974) and citing *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F.Supp.3d 124, 139 (S.D.N.Y. 2017) [internal quotation marks omitted]. "The party opposing discovery on the grounds of relevancy also has a burden: to demonstrate that the requested documents either do not come within the broad scope of relevance defined pursuant to [Rule] 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure." *Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, 2024 WL 1285390, at *1 (quoting *Russell v. Scott*, 2022 WL 3084339, at *3 (quoting *Du Grenier v. Encompass Insurance Company*, 2018 WL 4692354, at *4 (D.Vt. 2018) (quoting *Go v. Rockefeller University*, 280 F.R.D. 165, 176 (S.D.N.Y. 2012)))) [internal quotation marks omitted].

## POINT I

**PLAINTIFF'S MOTION TO COMPEL SHOULD BE DENIED BECAUSE THE REQUESTED DOCUMENTS ARE NOT RELEVANT TO THE PUNITIVE DAMAGES CLAIM.**

"In order for a requesting party to prevail on a motion to compel the production of tax returns, whether corporate or personal, the requesting party must satisfy a two-prong test: (1) the tax returns must be relevant to the subject matter of the action, and (2) a compelling need must exist because the information is not readily obtainable from a less intrusive source. *Sadofsky v. Fiesta Products, LLC*, 252 F.R.D 143, 149 (E.D.N.Y. 2008) (citing *Hamm v. Potamkin*, 1999 WL 249721, at *2 (S.D.N.Y. 1999)). "The showing of a compelling need for the information within the tax returns falls upon the party making the demand for this form of disclosure." *Trudeau v. New York State Consumer Protection Bd.*, 237 F.R.D at 331 (N.D.N.Y. 2006) (citing *Laurin v. Pokoik*, 94 AFTR2d 2004-7080 (S.D.N.Y. 2004); *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D 625, 627 (E.D.N.Y. 1988)).

Plaintiff argues that the two-prong test referenced in *Sadofsky* is satisfied

because "the tax returns are broadly relevant to both the issues of alter ego and punitive damages." Doc. No. 59 at 6. However, there are no alter ego claims in the Complaint and the claim for punitive damages is premature. There has been no liability determination by any Judge or Jury to even get to the issue of punitive damages and even then, Defendants have provided information concerning their respective assets and gross revenue to address any issues regarding an ability to pay a judgment. It is also noteworthy that Defendants have provided Plaintiff with: 1) copies of leases for the various production facilities they run and 2) copies of invoices for the purchase of production line equipment.

Financial statements are considered relevant where a plaintiff seeks punitive damages, however, "courts in this circuit are split on the issue of allowing pretrial disclosure of financial information relevant to a determination of punitive damages. Some permit it. Others have found such disclosure is premature." ***Pasternak v. Dow Kim***, **275 F.R.D 461, 463 (S.D.N.Y. 2011)** (quoting ***Copantitla v. Fiskardo Estiatorio, Inc.*, 09 CIV. 1608 RJH JCF, 2010 WL 1327921, at \*16 (S.D.N.Y. 2010)** [citations omitted]). The court in ***Hazeldine*** looked at the timing of punitive damages discovery. ***Hazeldine v. Beverage Media, Ltd.*, 94 CIV. 3466 (CSH), 1997 WL 362229, at \*2 (S.D.N.Y. 1997)**. There, the court summarized the following

> In *Tillery v. Lynn,* 607 F.Supp. 399, 402 (S.D.N.Y.1985), involving a state law claim for fraud, then Chief Judge Motley allowed the plaintiff to take discovery of defendant's personal assets prior to a determination of liability for punitive damages, reasoning that "[i]t would be unduly burdensome to plaintiff, and most particularly a jury and the court, to delay resolution of the issue as to the amount of punitive damages, if any, which should be awarded until discovery as to defendant's personal assets had been completed." However, to avoid any prejudice to the defendant, Judge Motley bifurcated the trial between liability and damages.

***Hazeldine v. Beverage Media, Ltd.*, 94 CIV. 3466 (CSH), 1997 WL 362229, at \*2**. The ***Hazeldine*** court then compared the following

> In contrast, in *Davis v. Ross,* 107 F.R.D. 326, 327 (S.D.N.Y.1985), involving a state law claim for libel, Judge Carter relied on New York law and denied plaintiff's request for financial discovery prior to trial, holding that "[d]iscovery of defendant's net wealth will become necessary only in the event plaintiff obtains ... a special verdict [that she is entitled to punitive damages.]"

***Hazeldine v. Beverage Media, Ltd.*, 94 CIV. 3466 (CSH), 1997 WL 362229, at \*2**. Notably, in ***Pasternak v. Dow Kim*** (**275 F.R.D. at 463**), the court held that disclosure of financial information was premature given that "the discovery sought is highly sensitive and confidential, it would be premature to order that it be produced given that the need for its disclosure may be abrogated by motion." The court in ***McNamee*** also reached a similar conclusion: "The financial information sought here is clearly sensitive and

confidential, and [the defendant] has indicated that he intends to file a motion for summary judgment which may negate the need for disclosure." ***McNamee v Clemens*** **09 CV 1647 SJ, 2013 WL 6572899 (E.D.N.Y. 2013),** *clarified on denial of reconsideration,* **09 CV 1647 (SJ), 2014 WL 12775660 (E.D.N.Y. 2014)**.  To be clear, dispositive motions in this matter have not been filed to date.

Financial records that cover a timer period beginning long after the end of the business relationship between the parties and post commencement of this litigation has no bearing on the elements of Plaintiff's claims and only relates to damages should Plaintiff's action be successful. Therefore, this issue would also be moot if Plaintiff was not awarded any damages. As such, Plaintiff's demand for Defendants' financial records from August 2024 to the present is premature, and, therefore, the records are not relevant at this stage in the litigation.

## POINT II

### PLAINTIFF'S MOTION TO COMPEL SHOULD BE DENIED BECAUSE THE REQUESTED DOCUMENTS ARE NOT RELEVANT TO THE ALTER EGO CLAIM.

Plaintiff continues to argue that the requested documents are "highly relevant for Plaintiff to evaluate its alter ego claims." Plaintiff now seeks financial documents from August 2024 to the present despite the fact that this time period is 9 months post the end of the business relationship and 8 months post commencement of this litigation. Even the 2024 tax returns are post the end of the business relationship and post commencement of this litigation.  Plaintiff has not come forward with any evidence to support the claim of any alter ego status despite having received three years worth of financial records and tax returns which cover the complete operational time frame for Can Man LLC and the commencement of operations for the first year of Best Bev LLC's business. Plaintiff continues to assert this alter ego claim without any support either in documentary form or actual testimony. In addition, Plaintiff has failed to identify which Defendant or other individual engaged in the use of an alter ego. Specifically, Plaintiff alludes that the "entities are alter egos of each other and are controlled by a single individual." (Doc. No. 59 at page 7). Without providing clarity as to the identity of the individual or entity that used an alter ego and the acts they committed, Plaintiff's alter ego allegations are futile. *See* ***EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005)**. If Plaintiff wishes to bring an alter ego claim, it would first need to amend the complaint. *See* ***In re Priv. Cap. Partners, Inc.*, 139 B.R. 120, 126 (Bankr. S.D.N.Y. 1992)**. Further, Plaintiff cannot use these discovery proceedings to go on a fishing expedition to weigh whether it wants to bring an alter ego claim. *See* ***Florence v. New York State Department of Environmental Conservation*, 2024 WL 1116286, at \*5 (N.D.N.Y. 2024)**.  It is noteworthy that Defendants have disclosed the members for both LLC's both at inception and currently

as well as their respective domiciles.

Even if the Court finds an alter ego claim has been brought in Plaintiff's pleadings, Plaintiff has not sufficiently alleged facts that would permit the Court to pierce either Defendants' corporate veil. "In order to piece the corporate veil under New York Law, a party must demonstrate that '(1) the owner has exercised such control that the corporation has become a mere instrumentality of the owner, which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff.'" *Network Enterprises, Inc. v. APBA Offshore Prods., Inc.*, No. 01 CIV. 11765 (CSH), 2002 WL 31050846, at *3 (S.D.N.Y. Sept. 12, 2002) (quoting *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir. 1997)). It should be noted that *all* elements—not just fraud *or* mere instrumentality—must be established in order to justify piercing the corporate veil. *Micro Fines Recycling Owego LLC v. Ferrex Eng'g, Ltd.*, 585 F. Supp. 3d 289 (N.D.N.Y. 2022), *appeal withdrawn sub nom. Micro Fines Recycling Owego LLC v. Clarkson*, No. 22-513, 2022 WL 4086695 (2d Cir. July 25, 2022) (citing *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (quoting *Morris v. New York State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 623 N.E.2d 1157, 1160-61 (1993))).

"It is well-established that determining whether the purported dominator 'exercised complete domination is highly case-specific and must be made in view of the totality of the facts.'" *138-77 Queens Blvd LLC v. Silver*, 682 F. Supp. 3d 271, 281 (E.D.N.Y. 2023) (citing *Mirage Ent., Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018); *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1051 (2d Cir. 1997); *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 646 (S.D.N.Y. 2018)). "While the determination of a 'complete domination' is always fact dependent, courts have outlined ten factors that may be relevant to such a finding," and these factors include:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

***Micro Fines Recycling Owego LLC v. Ferrex Eng'g, Ltd.*, 585 F. Supp. 3d 289, 296** (quoting ***Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)**). None of the factors listed above are present in this case.

Even disregarding these factors, the facts do not show that any Defendants exercised "complete domination" over any entity and, further, do not show that any Defendants "abused the privilege of doing business in the corporate form." ***Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 297 (E.D.N.Y. 2014)** (citing ***JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 386, 465 F. Supp. 2d 461 (S.D.N.Y. 2005)** (quoting ***Morris v. New York State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 141, 623 N.E.2d 1157 (1993)**)). As Plaintiff failed to allege *any* of the above-listed facts, Plaintiff's bare allegations are insufficient to raise an alter ego claim. Further, there are no facts shown present in this case that would present an alter ego claim. Thus, Plaintiff's demands for financial records that are long after the end of any business relationship between the parties and post commencement of this litigation is groundless.

## **CONCLUSION**

Plaintiff's motion to compel should be denied as defendants have fully complied with this Court's order compelling disclosure of the financial records for a three-year period covering the time frame of the business relationship, including the time covering the winding down of operations and Can Man, LLC and the startup of operations at Best Bev, LLC. Despite all of the documentation produced by the defendants, plaintiff has come forward with no documentary evidence that would even suggest the existence of an alter ego claim.

Defendants' interrogatory responses are also sufficient as there are no known records to support Plaintiff's continual insinuations that Defendants are one and the same. As noted previously, each defendant operated its own facility. Leases for the Pennsylvania facility operated by Can Man, LLC and the New York facility operated by Best Bev, LLC have already been provided. Discovery documents and testimony has already established that Can Man, LLC ceased operations at its Pennsylvania facility by December of 2023 and that Best Bev, LLC had started its operations in New York at a brand new facility in June or July of 2023. Further, the nature of the business has not changed, even though Plaintiff baselessly concludes otherwise. To be sure, there has already been testimony that the New York facility that is run by Best Bev, LLC is larger and utilizes a production line that can produce more product than the facility that was operated by Can Man, LLC in Pennsylvania. Responses to previous interrogatories further outline the production process from start to finish, including a flow chart!

Defendants respectfully request that this Court finally put an end to these

unlimited demands of the Plaintiff which requests highly personal, privileged and confidential documentation that has absolutely no bearing on the liability claims in this case and is only being sought after to ascertain defendants ability to pay a judgment which does not exist to date.

      Very truly yours,

      COOK, KURTZ & MURPHY, P.C.

      ERIC M. KURTZ

EMK:tmr

cc:    Joseph A. Churgin, Esq.
       Savad Churgin