UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

HAPPY HOUR DRINKS COMPANY, INC.,

Plaintiff,

-against-

CAN MAN, LLC d/b/a Best Bev Co.;
BEST BEV, LLC and
JOHN DOES 1 through 100,

Defendants.

**AFFIDAVIT IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND**

Case No. 3:24-cv-00047 (ECC/ML)

STATE OF NEW YORK )
) SS:
COUNTY OF BROOME )

PAUL T. SHEPPARD, ESQ., being duly sworn, deposes and says:

1. I am an attorney duly licensed to practice before the courts of the State of New York and this Court. I am a member of Hinman, Howard & Kattell, LLP, counsel for the defendants in the above-captioned action. I make this affidavit in opposition to plaintiff's motion for leave to file an amended complaint and to add several new defendants.

2. As the Court is aware, and as detailed below, the Court-ordered deadline to join parties or amend any pleading in this action expired on December 19, 2024. [Docket No. 55] Accordingly, plaintiff's motion is untimely and should be denied.

3. In addition, as the Court is aware, the discovery deadline in this action expired and discovery was closed (except with regard to the completion of specific depositions) on January 30, 2026. [Docket No. 107] The discovery deadline was subsequently extended, first to March 20, 2026 and then to April 3, 2026, but "ONLY in order to complete the … remaining depositions" in the case. [Docket Nos. 114, 122]

4. Further, as the Court is aware, the deadline for filing dispositive motions in this action is May 1, 2026. [Docket No. 114]

5. This Court has made it eminently clear that the above-referenced deadlines are final and will not be extended for any reason.

**Joinder/Amendment Deadlines**

6. In its complaint, filed on January 11, 2024, Happy Hour named Can Man, LLC, Best Bev, LLC and "John Does 1 through 100" as defendants. [Docket No. 1]

7. In paragraph 5 of its Complaint, regarding the "John Doe" defendants, Happy Hour alleged that it would "seek leave of the court to amend the complaint to set forth the true names of and capacities of said defendants when the same has been ascertained. Upon information and belief DOES 1 through 100, inclusive, and each of them, are responsible in some manner for the wrongful acts, occurrence

and/or omissions alleged herein and for the damages caused to Happy Hour." [Id. at ¶ 5]

8. Significantly, Happy Hour's Complaint does not include a single substantive allegation against Best Bev.

9. On January 11, 2024, the Court entered a Text Notice stating that "In the event plaintiff wishes to pursue the claims against [the John Doe defendants], plaintiff shall take reasonable steps to ascertain their identity."

10. Happy Hour was provided with information regarding the members of Can Man and Best Bev on May 3, 2024. [Docket No. 16]

11. On April 17, 2024, the original Uniform Pretrial Scheduling Order in this case was signed by Magistrate Judge Lovric ("the Court"). Said Order provided that "Any motion to join any person as a party to this action" and/or "Any motion to amend any pleading in this action" had to be made "on or before" September 3, 2024. [Docket No. 13 at ¶¶ 4, 5]

12. Following a hearing held on August 21, 2024 [see, Docket No. 23] Happy Hour filed a letter asking the Court to extend the "joinder of parties" and "amendment of pleadings" deadlines. [Docket No. 24] In that letter/request, Happy explained that the discovery issues pending before the Court "implicate plaintiff's decision on whether to join parties and/or amend the pleadings" and further noted

that "the issues at hand relate to the identities of the Parties (and unknown third parties), and potential claims against unknown Parties." [Id.]

13. While the details regarding the pending discovery issues that Happy Hour subsequently submitted to the Court do not appear to support its assertion that joinder or amendment issues were implicated [Docket No. 26], the Court entered a Text Order on September 4, 2024 which provided, *inter alia*: "any motion for Joinder of Parties or Amended Pleadings shall be filed by 11/4/2024." [Docket No. 30]

14. On September 26, 2024, Defendants served their Response to Plaintiff's Third Set of Interrogatories. (Exhibit "A") In said response, Defendants again identified the members and managers of Can Man, LLC and Best Bev, LLC.

15. On November 1, 2024, Happy Hour submitted a letter/motion requesting a 45-day extension of all deadlines in this action. [Docket No. 43] In that letter, counsel for Happy Hour discussed its concern that, because Can Man was no longer functioning as a business, it might not have "the money or assets to satisfy a judgment." Based on that concern it requested, in particular, an extension of the joinder and amendment deadlines to December 19, 2024, to afford it an opportunity to evaluate "whether to amend the pleadings and add parties."

16. On November 4, 2024, the Court entered a Text Order extending the "Joinder of Parties" and "Amended Pleadings" deadlines to 12/19/24. [Docket No. 44]

17. On November 26, 2024, Happy Hour filed a letter/status report with the Court. [Docket No. 49] In that letter, Happy Hour's counsel stated "Plaintiff ***will be filing*** an amended complaint adding additional factual allegations, defendants, and alter ego theories." (emphasis added) This letter completely contradicts Happy Hour's assertion that it could not assert the claims and defendants it now seeks to add until March 2026.

18. Defendants' Supplemental Response to Plaintiff's Third Set of Interrogatories, dated November 18, 2024, was attached to Happy Hour's November 26, 2024 status report. [Docket No. 49, pp. 3-7] That response—once again—identified the members and managers of Can Man, LLC and Best Bev, LLC.

19. In addition, as reflected in Defendants' Supplemental Response to Third Demand for Production of Documents, dated November 18, 2024, which was also attached to Happy Hour's November 26, 2024 status report [Docket No. 49, pp. 8-12], defendants also produced copies of pleadings and a Court decision from the *Midnight Madness Distilling LLC* bankruptcy court adverse proceeding (U.S. Bankruptcy Court for the Middle District of Pennsylvania, Case No. 21-

11750-PMM, Adv. No. 23-00047-PMM). Those pleadings included allegations to the effect that Can Man, LLC and Best Bev, LLC were alter egos of each other, and Happy Hour subsequently referenced those *Midnight Madness* allegations in support of its motion to compel. [Docket No. 59, at p. 3, fn. 4]

20. On December 3, 2024, the Court held an on-the-record conference. According to the Minute Entry for that conference, the parties discussed "Plaintiff intention to seek to file an amended complaint" and "schedules for filing motions to compel and motion to file an amended complaint."

21. Following the December 3, 2024 conference, the Court entered a Text Order reiterating that the deadline for filing "any motion to file an amended complaint shall be filed by 12/19/24." [Docket No. 55]

22. On December 19, 2024—the last day to timely file a motion to amend—Happy Hour filed a letter/motion to compel production of certain financial documents, including tax returns and bank records. [Docket No. 59] In that motion, Happy Hour asserted that it needed the documents "to understand the financial viability of the Defendants in this case, particularly in light of Plaintiff's alter ego allegations." The motion includes allegations that (a) Best Bev "took over" Can Man's operations such that it should be deemed Can Man's "alter ego;" and (b) defendants were "improperly using the corporate form to unjustly avoid

paying creditors such as Plaintiff."[1] It is perfectly clear that Happy Hour could have asserted the amended claims it is now (a year and four months later) seeking to untimely assert.

23. At this point, it should be noted that Happy Hour, in support of its efforts to secure copies of Defendants' tax returns and bank records, vacillated between the argument that such records were *relevant* to its (unasserted) "alter ego" claims and the argument that it *needed* those records in order to formulate those claims. However, Happy Hour inexplicably did not file a motion to amend or move for a further extension of the amendment/joinder deadline.

24. On January 21, 2025, the Court held a hearing on Happy Hour's motion to compel. A transcript of that hearing is filed at Docket No. 65. During the hearing, Happy Hour's counsel continued to assert both that (a) it believed that Best Bev was Can Man's "alter ego" but wanted Defendants' financial records "to make that determination" (Id. at p. 6); and (b) it wanted those records "to establish alter ego." (Id.)

25. In contrast, counsel for Defendants pointed out that "there has been no attempt to amend the complaint, to commence an action to pierce the corporate veil of either LLC. There has not been an attempt to include the individual LLC

[1] Happy Hour is not a "creditor" of either defendant.

members who I've already disclosed long ago for both entities to be brought into this action." [Id. at p. 12]

26. Despite that, apparently based on the Court's understanding that "the plaintiff has alleged … alter ego aspects to this matter," [Id. at 17] the Court granted the motion to compel. [Id. at 19]

27. Significantly, in reaching its decision, the Court credited Happy Hour's argument that the financial records it sought—as opposed to deposition testimony—would "tell the story" and would permit Happy Hour to "follow the money," "see the picture," and "figure this out." [Id. at 16]

28. Thereafter, on January 21, 2025, the Court entered a Text Order granting the motion to compel, but specifically noting that the "schedules and deadlines set forth in Text Order 44 [including the 12/19/24 deadline for motions to amend] remain in effect." [Docket No. 64]

29. Happy Hour never sought any further extensions of the deadline for amendments/joinder.

**Additional Discovery**

30. Defendants appealed the Court's January 21, 2024 order to the District Court Judge.

31. In its Opposition to Defendants' Appeal [Docket No. 73], Happy Hour again presented its argument in a manner suggesting that there were extant "alter

ego" claims in the action ("Plaintiff's claims of fraud and alter ego liability..." [Id. at p. 11]) and that it needed the discovery at issue to prove these claims, not to assert them.

32. In the interim, on December 16, 2024 and February 4, 2025, Happy Hour deposed Andrew Zimmerman, a former employee of Can Man and, later, of Best Bev.

33. During Mr. Zimmerman's December 16, 2024 deposition—which occurred three days prior to the deadline for amendments—counsel for Happy Hour asked Mr. Zimmerman about the alleged "transition" from Can Man's operations in Pennsburg, Pennsylvania to Best Bev's operations in Waverly, New York. Copies of relevant portions of Mr. Zimmerman's testimony are submitted herewith as Exhibit "B." While defendants take issue with portions of Mr. Zimmerman's testimony, it is clear that Happy Hour could have alleged its "de facto successor" claim against Best Bev—a claim it had repeatedly told the Court it intended to assert in an amended complaint—prior to the amendment deadline.

34. On February 5, 2025, Happy Hour deposed Anthony Ciocci, a former Can Man employee.

35. On March 26, 2025 and March 27, 2025, Happy Hour deposed Tyler Mondoc, a former Can Man employee.

36. On October 1, 2025, the District Court issued its Decision and Order denying Defendant's appeal in part (insofar as financial and bank records were concerned), granting Defendant's appeal in part (regarding tax returns), and remanding to the Court to determine whether the information sought via the tax returns was available from other, less-intrusive sources. [Docket No. 90]

37. Following the District Court decision, on October 21, 2025, Defendants produced copies of their financial records through August 2024, and voluntarily produced their tax returns for 2021, 2022 and 2023 without requiring the Court to hold an additional hearing or make any determination whether the information sought via the tax returns was otherwise available. Happy Hour then moved to compel the production of Defendants' 2024 tax returns and financial information through November 2025. [Docket No. 101]

38. Defendants opposed Happy Hour's motion to compel, including its demand for returns from tax years that occurred well after the events at issue in this case. [Docket No. 104] Following a hearing on November 21, 2025, the Court entered a Text Order granting Happy Hour's motion to compel. [Docket No. 105]

39. As per the Court's order, Defendants produced the balance of the financial records at issue on December 12, 2025.

40. In the interim, on November 5, 2025, as part of its Response to Happy Hour's Fourth Demand for Production of Documents, Defendants produced copies

of the Operating Agreements for Can Man, LLC and Best Bev, LLC. Oddly, during the course of Mr. Uszenski's deposition, counsel for Happy Hour asserted that he had not seen Can Man's Operating Agreement. See, Uszenski Dep., 27:19-28:6 (Exhibit "C").

41. On March 3, 2026, Happy Hour deposed Ryan Uszenski.

42. On March 6, 2026, Happy Hour deposed James Peterson, Best Bev's Chief Financial Officer.

43. On March 9, 2026, Happy Hour deposed Shawn Sheehan.

44. On March 10, 2026, Happy Hour deposed John Pitts, a former employee of Can Man and a current employee of Best Bev.

45. Finally, on April 9, 2026, Happy Hour deposed Casey Parzych.

**Motion to Amend and Add Parties**

46. On April 3, 2026, Happy Hour filed two motions: (a) the instant motion for leave to file an amended complaint [Docket No. 124]; and (b) a related motion to seal portions of the motion for leave to file an amended complaint. [Docket No. 125]

47. Defendants do not oppose the motion to seal.

48. In support of its motion for leave to amend, counsel for Happy Hour asserts that the "facts supporting the new allegations" included in the proposed

amended complaint "were not and could not have been known until the March 2026 depositions." [Docket No. 124-2 at ¶ 4]

49. Defendants contest this assertion. In large part, the "new" allegations that Happy Hour seeks to add on this motion were known or should have been known to plaintiff well in advance of the depositions. In addition, the testimony of these witnesses did little if anything to "establish" the new "alter ego" claims asserted in the proposed amended complaint.

50. It is important to distinguish between the two categories of proposed "alter ego" claims being asserted.

51. First, Happy Hour seeks to add a claim that existing defendant Best Bev is the "de facto successor" or corporate "alter ego" of Can Man. Happy Hour cannot seriously contend that it was unable to assert this claim until these depositions concluded. As noted above, Happy Hour has been telling the Court that it planned to make this claim since 2024, but never did. As such, there is no valid excuse for its failure to do so until now.

52. Second, Happy Hour also seeks to "pierce the corporate veil" of existing defendants Can Man, LLC and Best Bev, LLC in an effort to impose liability on three new defendants: (a) Ryan Uszenski; (b) Shawn Sheehan, individually and in his capacity as the Trustee of the Shawn P Sheehan Revocable Trust; and (c) the Shawn P Sheehan Revocable Trust (the "Trust").

53. Defendants submit that leave to assert this second group of "alter ego" claims should be denied because (a) the alleged bases for these claims were not "discovered" during the relevant depositions; and (b) the proposed amendments are futile.

54. In support of its motion, Happy Hour's counsel makes reference to various pages of three depositions: (a) Ryan Uszenski; (b) James Peterson; and (c) Shawn Sheehan. While Happy Hour's counsel's declaration (denominated as an unnotarized "Affidavit") does not marshal the supporting "evidence" or tie the referenced deposition pages to any particular allegations of the proposed amended complaint, their accompanying Memorandum of Law ("MOL") makes some effort to do so. Accordingly, we will examine the Statement of Facts in Happy Hour's MOL.

55. There is no factual support presented for the factual allegations contained under the heading "The Underlying Manufacturing Defects."

56. Under the heading "Shawn Sheehan's Domination and Control," Happy Hour argues that Mr. Sheehan should be treated as the "alter ego" of both Can Man and Best Bev:

a. Citing to pages 28-29 of Sheehan's deposition, Happy Hour asserts that Sheehan holds a 90% "profit-and-loss interest in Can Man," ostensibly as evidence that he "controls" Can Man. As set forth in the

accompanying declaration of Can Man's accountant, this demonstrates a fundamental misunderstanding of Mr. Sheehan's 2024 K-1 from Can Man. In any event, Happy Hour has had this document—which it does not submit as an exhibit—since December 12, 2025, and there was nothing in Mr. Sheehan's testimony which provided any more information than plaintiff already had.

b. Citing to pages 21-22 of Sheehan's deposition, Happy Hour asserts that a Convertible Note in favor of the Trust was converted, in its entirety, to an equity interest in Can Man without extinguishing the debt. Happy Hour has had this Convertible Note since October 21, 2025; the document itself is not attached as an exhibit; and nothing in Mr. Sheehan's testimony provided Happy Hour with any relevant facts. Mr. Sheehan testified that he "did not know" whether counsel's interpretation of this document was correct. In addition, as detailed in Can Man's accountant's declaration, counsel's interpretation is decidedly incorrect.

c. The fact that Mr. Sheehan could not recall negotiating the terms of the Convertible Note is irrelevant.

d. Citing to pages 21, 26-27 and 28 of the Peterson deposition, Happy Hour asserts that Mr. Sheehan is the 100% beneficial owner of Best

Bev. Happy Hour did not need Mr. Peterson's "understanding" of Best Bev's corporate structure because Defendants provided this information to Happy Hour in 2024 and again in 2025. In addition, the mere fact of beneficial ownership does not establish "alter ego" status; Happy would still have to "pierce the corporate veil" of each entity in the "hierarchy," something it has neither claimed nor attempted to show.

e. The rest of the facts asserted in this "Best Bev" paragraph are meaningless. The fact that an individual decided to form an LLC, has invested substantial sums into the LLC, and has managerial authority for the LLC provides no evidence that the LLC is the individual's "alter ego." Finally, the observation that Mr. Sheehan has actually visited the LLC's facility on multiple occasions is a *non sequitur*.

f. Next, Happy Hour suggests that Mr. Sheehan's inability to answer questions about certain entities demonstrates a "complete disregard for corporate formalities." That is ludicrous. A deposition is not a quiz show. As Mr. Sheehan repeatedly noted, he has attorneys and accountants to deal with these issues (Sheehan Dep. 22:2-5; 35:24-36:2)

g. Citing to page 49 of Sheehan's deposition and pages 73-74 and 116 of Peterson's deposition, Happy Hour claims that "Can Man paid over a million dollars in rent in 2023 to an entity at Sheehan's address in St. Thomas." This is completely baseless and borders on the frivolous.

h. On page 74 of Sheehan's deposition, counsel asserted—without any evidence—that Can Man paid rent "to a landlord at 6501 Red Hook Plaza, Suite 201" in St. Thomas, and then asked if that was Sheehan's address. Sheehan explained that the address is a mail center for hundreds or thousands of people in St. Thomas, but he never said that Can Man's rent was paid to a landlord at that address.

i. On page 73 of Peterson's deposition, counsel asks if Best Bev pays rent to the same St. Thomas address; Mr. Peterson responded "No." Finally, on page 116 of Peterson's deposition, counsel again simply asserts that "Can Man's rent payments … went to" the 6501 Red Hook Plaza address. Leading questions or unsubstantiated assertions by counsel are not evidence of anything.

j. Next, Happy Hour cites to page 32 of Sheehan's deposition to support the assertion that he received a "six-figure cash distribution" from Can Man in 2024 (he did not). Again, the document—which Happy Hour has had since December 2025—is not attached as an exhibit, and Mr.

Sheehan's testimony does nothing to provide any additional facts. In fact, Mr. Sheehan testified that he does not remember receiving the alleged "cash distribution" in 2024.

k. Next, Happy Hour cites to pages 82-83 and 91-92 of Sheehan's deposition to support assertions regarding payments by Best Bev as reflected in its bank accounts. Again, Happy Hour has had these documents since October or December 2025, they are not attached as exhibits, and Mr. Sheehan's testimony that he does not know what these payments were for added nothing to the allegations in the proposed amended complaint.

l. Finally, the fact that Mr. Sheehan does not personally intend to satisfy any judgment against Can Man—which he is under no obligation to do—is not new evidence of anything.

57. Under the heading "Ryan Uszenski's Total Control of Can Man," Happy Hour argues that Mr. Uszenski should ***also*** be treated as the "alter ego" of Can Man (begging the question: who exactly was exerting "total control" over Can Man?):

a. Happy Hour was advised, long ago, that Mr. Uszenski was the managing member of Can Man and held the majority interest in the

LLC. These facts are not something that Happy Hour "discovered" during the Uszenski deposition.

b. Moreover, Happy Hour's cherry-picking of portions of Mr. Uszenski's testimony is not evidence of his "total control." For example, Happy Hour cites to page 16 of Uszenski's deposition to support the claim that his "purview was everything," but it ignores the rest of the sentence: "but I would say my focus was on administration and the finances." They also omit the portion of his deposition where he explains that Can Man had a management team which ran the day-to-day operations of the company. See Uszenski Dep. 20:20-21:21 (Exhibit "D")

c. Next, Happy Hour notes that Mr. Uszenski was not concerned with titles, his point being that whether he is called the sole member, or the managing member, or the President, he considered his responsibilities to be the same. This has no evidentiary value.

d. Next, the fact that Mr. Uszenski's initial capital contribution at formation was $1,000 is not evidence that Can Man was undercapitalized during its business operations or at the time of the events relevant to this litigation.

e. With regard to the decision to wind-down Can Man's operations, Happy Hour appears to assume that Can Man formally dissolved; it did not. Can Man continues to exist.

f. In addition, Happy Hour inconsistently asserts that (a) Mr. Uszenski "unilaterally" decided to wind down Can Man's co-packing business, and that (b) he and Kelly Festa, Can Man's sales manager, jointly participated in the process.

g. Finally, the fact that Can Man did not continue operations and continue to lose money in deference to Happy Hour's pending claims is not evidence that supports an "alter ego" claim *vis a vis* Mr. Uszenski. Again, Happy Hour is not a creditor of Can Man, it is a claimant in pending litigation.

58. Finally, under the heading "The Sham Transition from Can Man to Best Bev," Happy Hour recites certain allegations in support of its corporate "alter ego" claim which it should have asserted over sixteen months ago. A few allegations warrant comment:

a. Happy Hour asserts that "an estimated dozen employees *transitioned*" from Can Man to Best Bev. But that is not what the referenced testimony says. Mr. Uszenski estimated that a dozen of Can Man's

50-60 employees "went to work for Best Bev." (Uszenski Dep. 52:15-24) There is no evidence of a "transition."

b. Likewise, the assertion that Best Bev "acquired" inventory from Can Man is misleading. Mr. Uszenski testified that Best Bev purchased certain leftover ingredients. (Uszenski Dep. 50:18-21) He also testified that Best Bev did not acquire any of Can Man's equipment (Id. 50:14-14).

c. The fact that one of Can Man's many customers became a customer of Best Bev is hardly evidence of "de facto successor" liability.

d. Happy Hour's reference to page 69 of the Sheehan deposition and Mr. Sheehan's testimony about his comparison of Best Bev's Waverly facility in 2023 to Best Bev's Waverly facility in 2024 is, frankly, baffling.

e. Finally, all the remaining allegations in this section were available in the financial and tax documents produced to Happy Hour in October and December 2025, and nothing in the depositions added anything of value to those facts.

59. It is submitted that Happy Hour has not come close to establishing good cause for filing its motion for leave to amend over a year and three months after the deadline for such motions expired. Plaintiff could have brought the instant

motion prior to the now-expired deadline or, at the very least, months ago. Morevover, plaintiff's claim that it only "discovered" facts supporting its new allegations during the March 3, 2026, March 6, 2026 and March 9, 2026 depositions is specious. In particular, plaintiff's "new" *alter ego* allegations against defendant Best Bev, LLC could have been asserted in plaintiff's original complaint, but were not.

60. In addition, plaintiff's motion papers, which consist of a two-page attorney's declaration, excerpts from three deposition transcripts, and a memorandum of law which cites to one Southern District of New York case, do not support its efforts to "pierce the corporate veil" of several entities (some of which plaintiff does not even acknowledge) or to add three new defendants i.

61. As detailed in the accompanying memorandum of law, Happy Hour's claim that the Court should "pierce the corporate veil" of Can Man, LLC and/or Best Bev, LLC is futile.

62. Finally, defendants (and the proposed new defendants) would be severely prejudiced by the proposed amendment. If granted, all defendants—and particularly the new defendants—would need additional discovery. Defendants would also likely need to secure new experts and expert reports. The proposed new defendants may desire separate counsel and may also be seriously prejudiced with regard to available insurance coverage for the claims being asserted against them.

All relevant deadlines in the case—from pleading deadlines, to jurisdictional motion deadlines, to discovery and expert deadlines, to dispositive motion deadliines—would have to be re-set.

63. Based upon the foregoing, Defendants submit that Happy Hour's motion should be denied.

Paul T. Sheppard, Esq.

Sworn to before me this 24 day of April, 2026

Notary Public

ALEXANDER D. RACKETA
Notary Public, State of New York
No. 02RA6257316
Residing in Broome County
My Commission Expires 3/12/2028