# EXHIBIT "C"

Ryan Uszenski

A. No. I was the one that started Can Man.

Q. Do you know what initial capital Shawn Sheehan contributed to Can Man?

A. No. The convertible note, so I'm not sure.

Q. How would you describe the business purpose of Can Man at formation?

A. Sorry, can you clarify your question?

Q. Sure. You did mention earlier that Can Man was involved in low-end spirit sales and co-packing. But I'm -- was that the business purpose of Can Man at formation?

A. Yes.

Q. Okay. Is there any other business purpose of Can Man at formation?

A. No.

Q. Does Can Man have a written operating agreement?

A. Yes.

Q. To your knowledge has the written operating agreement been produced in discovery in the lawsuit?

A. I'm sure if all the records were kept

so if it was requested, it would be provided, all relevant documents.

*

MR. GOODMAN: All right, I'll represent to you that I haven't seen it. And if after the deposition I'll -- I'm going to make a note for your counsel to produce that to us. Okay?

THE WITNESS: Yep, if it's created. I would assume so, there might be some State Law as well so we just have to double check.

Q. Has the operating agreement for Can Man been amended at any time since formation?

A. I don't see why it would have.

Q. Do you know one-way or another whether it has?

A. No.

Q. Under the operating agreement for Can Man who has the authority to make decisions on behalf of Can Man?

A. Myself.

Q. Does the operating agreement require member approval for transactions above a certain dollar amount?