# EXHIBIT "A"

Confidential - Attorneys Eyes Only

# OPERATING AGREEMENT

# OF

# CAN MAN, LLC

## A Pennsylvania Limited Liability Company

## Employer Identification Number 86-3594814

This Operating Agreement (this "Agreement") of Can Man, LLC (the "Company"), is entered effective as of May 3, 2021, by Ryan Uszenski as the sole member (the "Member").

1. **Formation**. The Company was formed on May 3, 2021 pursuant to and in accordance with the Pennsylvania Limited Liability Company Act, as amended from time to time (the "Act"). The rights and obligations of the Member shall be set forth in the Act except as this Agreement provides otherwise. Ryan Uszenski, the Member, is hereby designated as an authorized person, within the meaning of the Act, to file any amendments and/or restatements thereof to the Certificate of Organization (as defined below) of the Company and any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business. "Certificate of Organization" means the document initially filed of record with the Pennsylvania Department of State, Bureau of Corporations and Charitable Organizations to establish the Company under the Act, including, without limitation, a Certificate of Organization.

2. **Name**. The name of the Company formed is **"Can Man, LLC"**. The business of the Company shall be conducted under such name or such other name or names as the Member shall from time to time select and which is in compliance with all applicable laws.

3. **Purpose**. The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act, including, without limitation, to own and operate one or more distilleries and to engage in any and all activities necessary or incidental to the foregoing.

4. **Registered Office and Registered Agent**. The registered office of the Company required by the Act to be maintained in the Commonwealth of Pennsylvania shall be as set forth in the Certificate of Organization of the Company and may, from time to time, be changed by the Member.

5. **Powers**. The business and affairs of the Company shall be managed exclusively by the Member. The Member shall have the power and authority to do any and all acts necessary or convenient to or for the furtherance of the purposes described herein, including all powers and authorities, statutory or otherwise, possessed by members of limited liability companies under the laws of the Commonwealth of Pennsylvania. In connection with the foregoing, the Member is hereby authorized and empowered to act through its officers and employees and other persons designated by the Member in carrying out any and all of its powers and authorities under this

Agreement, and to delegate any and all of the powers and authorities that the Member possesses under this Agreement to any of its officers and employees and to any other person designated by the Member. The Company may (i) acquire, hold, and dispose of interests (whether by the making of investments or otherwise and on such terms and conditions as the Member may determine) in other entities, including as a partner of a partnership, a member of a limited liability company and a stockholder of a corporation, and (ii) borrow money (on such terms and conditions as the Member may determine) in connection with its business.

6. **Dissolution**. The existence of the Company shall be deemed to have commenced as of the date of the filing of the Certificate of Organization with the office of the Secretary of State of the Commonwealth of Pennsylvania and shall continue until dissolved in accordance with the Act.

7. **Capital Contributions**. The Member has contributed the cost of formation of the Company and no other property to the Company.

8. **Additional Contributions**. The Member is not required to make any additional capital contribution to the Company, but may do so in the Member's sole discretion.

9. **Allocation of Profits and Losses**. The Company's profits, losses, and other tax attributes shall be allocated entirely to the Member.

10. **Distributions**. Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member. Such distributions shall be allocated solely to the Member.

11. **Assignments**. The Member may transfer or assign in whole or in part its limited liability company interest. Upon any such assignment, this Agreement (including, but not limited to Paragraphs 9 and 10 hereof) shall be amended to reflect such additional member.

12. **Admission of Additional Members**. One (1) or more additional members of the Company may be admitted to the Company with the consent of the Member. Upon any such admission, this Agreement (including, but not limited to Paragraphs 9 and 10 hereof) shall be amended to reflect such additional member.

13. **Liability of Members**. The Member shall not have any liability for the obligations or liabilities of the Company except to the extent provided in the Act.

14. **Subchapter S Election**.

a. Entity Classification Election. The Member may, in the Member's sole discretion, elect (the "S Election") to have the Company treated as a small business corporation for federal, state, and local income tax purposes under Section 1362(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and, if such S Election is made, must timely file Federal Form 2553 and any other applicable tax form or document required by the Code, applicable Treasury Regulations, or state or local taxing authorities in the manner provided at the time of such S Election. If such S Election is made, then neither the Company nor the Member may take any action that jeopardizes the Company's S Election. Specifically, the Company may not do any of the following:

i. issue interests in the Company that would constitute a second class of stock under Subchapter S of the Code;

ii. borrow funds from its Member or third parties that would constitute a second class of stock under Subchapter S of the Code;

iii. have more than one hundred (100) Members within the meaning of Subchapter S of the Code;

iv. have a nonresident alien as a Member; or

v. have any Member who would not be a permissible interest holder under Subchapter S of the Code.

b. Appointment of Tax Advisor. As soon as practicable before filing the S Election, should the Member choose to do so, the Company must appoint a tax advisor (the "Tax Advisor") to ensure the Company complies with the Code requirements for the Company's S Election. If the initial Tax Advisor is unable or unwilling to serve for any reason, the Company must remove and replace the initial Tax Advisor with another Tax Advisor. Any Tax Advisor so appointed must be competent with respect to Subchapter S of the Code.

c. Member's Duty to Consult with Tax Advisor. Before the Company make an S Election, should the Member choose to do so, the Member shall consult with the Tax Advisor to ensure that no part of the Member's estate plan jeopardizes the Company's S Election. The Tax Advisor may require that the Member revise the Member's estate plan to protect the Company's S Election. The Member has a continuing duty to inform the Tax Advisor of the Member's plans or activities that may affect the Company's S Election, and to provide detailed written information as reasonably requested by the Tax Advisor.

d. Tax Elections. The Member has the sole authority to make all Company elections for federal, state, and local income tax matters. The Member has sole and absolute discretion concerning any such election. The Member consents to any election and shall sign any documentation necessary to effectuate any elections. If the Member desires to revoke or terminate the S Election, if such S Election was previously made, the Member must comply with any Code requirements (including any state or local requirements) necessary to effectuate the revocation or termination and specify the revocation's effective date.

e. No Partnership Intended for Any Purpose. The Member does not intend to form a partnership under any partnership or limited partnership act.

f. Preservation of S Corporation Election. The Company and the Member shall take all necessary action to preserve the Company's S, should such S Election be made. If the Company's S Election would be terminated unintentionally because it fails to qualify as a small business corporation for any reason, then the Member shall take the steps necessary to restore the Company's S Election. Within a reasonable time after discovery of the event resulting

in unintentional termination of such S Election, the Company and the Member must make all adjustments required by the Internal Revenue Service to restore the Company's S Election.

15. **Governing Law**. This Agreement shall be governed by, and construed under, the laws of the Commonwealth of Pennsylvania, all rights and remedies being governed by said laws.

***[Remainder of Page Intentionally Left Blank; Signature Page Follows]***

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, has duly executed this Operating Agreement as of the date and year first aforesaid.

**MEMBER:**

By: ______________________________
Name: Ryan Uszenski
Title: Member