**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

HAPPY HOUR DRINKS COMPANY, INC.,

Plaintiff,

-against-

CAN MAN, LLC d/b/a Best Bev Co.;
BEST BEV, LLC and
JOHN DOES 1 through 100,

Defendants.

---

**DECLARATION OF SHAWN SHEEHAN IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND**

Case No. 3:24-cv-00047 (ECC/ML)

I, Shawn Sheehan, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, the following:

1. It is my understanding that the plaintiff, Happy Hour Drinks Company, Inc. ("Happy Hour"), is seeking leave of Court to add me, individually, as a defendant in this action. In addition, I am advised that Happy Hour is also seeking to add me, in my capacity as Trustee of the Shawn P. Sheehan Revocable Trust ("Trust") and the Trust as defendants in this action.

2. I am a resident of the United States Virgin Islands.

3. The Trust has dual situs in Delaware and the U.S. Virgin Islands. I am the Trustee of the Trust.

**Allegations Regarding Can Man, LLC**

4. As detailed in the accompanying declaration of Ryan Uszenski, in October 2021, the Trust acquired a 9.9% membership interest in Can Man, LLC ("Can Man") pursuant to an election under a Convertible Note executed by Can Man in favor of the Trust, which had agreed to loan up to $8 million to Can Man.

5. As a minority member of Can Man, the Trust never exercised any control—let alone complete domination—over Can Man at any time.

6. Likewise, I never exercised any control over Can Man, in my capacity as Trustee of the Trust or individually.

7. I have not—through the Trust or individually—engaged in any actions vis a vis Happy Hour or its alleged claims against Can Man. I had no involvement with Happy Hour or its products at Can Man and submit that Happy Hour's efforts to hold me personally liable for its claims against Can Man should be rejected.

8. In its proposed Amended Complaint, Happy Hour mischaracterizes the nature of the Trust's interest in Can Man. First and foremost, the Trust lent money to Can Man and exercised its option to convert a portion of this debt into a 9.9% equity interest in Can Man. The Convertible Note provides that such conversion is "[i]n lieu of payment." For reasons that are not clear, Happy Hour has failed to include a copy of this Convertible Note with its motion papers.

9. Happy Hour also alleges that the Convertible Note "was designed to ensure that Sheehan would be paid ahead of creditors such as Happy Hour in the event of Can Man's dissolution or insolvency." The notion that a lender exercising its option for conversion has anything to do with Happy Hour is specious. Happy Hour was not a customer of Can Man until long after this transaction took place and, to my knowledge, Happy Hour is not even a creditor of Can Man.

10. The Trust was not created as a vehicle to "further [my] personal interests" in any sort of improper manner. Rather, it is a relatively typical estate planning and tax planning vehicle sanctioned by applicable law.

11. Happy Hour has not alleged that I have misused the Trust in any manner so as to allow the Court to employ a "piercing the corporate veil" theory to disregard the Trust and expose me to personal liability.

**<u>Allegations Regarding Best Bev, LLC</u>**

12. Best Bev, LLC ("Best Bev") was formed in June 2022 as a United States Virgin Islands limited liability company. A copy of Best Bev's Operating Agreement is annexed hereto as Exhibit "A." A copy of Best Bev's Articles of Organization is annexed hereto as Exhibit "B."

13. At the time of its formation, the sole member of Best Bev was EtOH Worldwide, LLC ("EtOH"), a U.S. Virgin Islands limited liability company formed in April 2020. The sole member of EtOH is XO Energy Worldwide, LLLP

("XO Energy WW") a U.S. Virgin Islands limited liability limited partnership formed in October 2011. Above that, XO EW, LLC (a U.S. Virgin Islands limited liability company) is the general partner of XO Energy WW, and its sole member is the Trust. SPS, LLC (a U.S. Virgin Islands limited liability company) is one of the limited partners of XO Energy WW, and SPS, LLC's sole member is also the Trust.

14. Happy Hour has not alleged anything to suggest that there are facts which would justify "piercing the corporate veil" of EtOH, XO Energy WW, XO EW, LLC or SPS, LLC, let alone all of them.

15. To the best of my knowledge, at all times since its formation, with the assistance of counsel and accountants, Best Bev has been operated in accordance with the terms of its Operating Agreement and the laws of the U.S. Virgin Islands.

16. Best Bev was formed for the purpose of engaging in beverage co-packing. I also have an indirect ownership interest (through various entities) in certain beverage brands, including "Wynk," which is a hemp-based THC seltzer beverage. I decided that it would make economic sense to also have an ownership interest in a beverage production facility that was capable of producing Wynk and other beverage brands. In addition, I was aware of certain proposed Environmental, Social, and Governance (ESG) standards regarding the consumption of plastics

which will likely incentivize publicly traded companies to use aluminum cans instead of plastic bottles.

17. While the Trust had a minority interest in Can Man, it was not a viable vehicle for the production of Wynk or my plans for beverage production moving forward. My understanding is that Can Man produced and sold spirits and also had some co-packing operations for beverages in aluminum cans. My decision to move forward with Best Bev had absolutely nothing to do with Can Man's spirits business. Best Bev was not formed as a "successor" to Can Man, as Best Bev does not, and has never, produced or sold spirits. At the time Best Bev was formed, Can Man was still engaged is co-packing operations.

18. In its motion papers, Happy Hour includes certain portions of my deposition testimony in this action in an effort to suggest that the formation of Best Bev was somehow related to Can Man. However, it omits other portions of my testimony in which I explain that there was no such connection. For example, I would call the Court's attention to pages 55-57 of my testimony to provide a more complete picture of my testimony. (Exhibit "C")

19. In furtherance of Best Bev's intended purposes, it rented premises in Waverly, New York from Waverly Trade Center, LLC and nearby office space from Cleo Trio. None of the entities I own or control have any interest in Waverly Trade Center or Cleo Trio, nor do I individually. My understanding is that those

entities are owned and controlled by a local family with various business interests in the area.

20. For some reason, in its motion papers, Happy Hour makes a point of noting that when I was "asked what was different between visiting the Waverly facility in 2023 and 2024," I indicated that that I was not sure there was much of a difference. I do not understand why this would matter at all. In 2023, Best Bev was operating at its Waverly facility, and in 2024 it was still operating at its Waverly facility.

21. In furtherance of its business operations, Best Bev hired managers and employees who were responsible for the day-to-day operations of the business.

22. While a few (perhaps 5-6) of Best Bev's employees were previously employees of Can Man, they represent a small percentage of the 130 or so employees at Best Bev.

23. In addition, Best Bev purchased canning equipment, sought out customers, entered into co-packing relationships with beverage companies, purchased ingredients, paid vendors, and operated at all times as a functioning manufacturing and co-packing business.

24. Best Bev's beverage production lines were purchased from unaffiliated third parties, not Can Man.

25. Happy Hour has not suggested that Best Bev was inadequately capitalized. Best Bev is not a sham "shell" company that was formed or operated for the purpose of defrauding third parties.

26. Following the termination of its co-packing operations, Can Man did not "transition" or otherwise continue its business operations via Best Bev. Best Bev is not and never was the "successor" of Can Man.

27. Best Bev and Can Man are completely separate entities with different facilities, different beverage production capabilities and production lines, different vendors, different bank accounts and different business models.

28. I did not personally engage in any of the alleged actions that Happy Hour claims caused it harm. I was not involved in the production runs that form the basis of Happy Hour's claims in this litigation—at Can Man or Best Bev—and never made any representations to Happy Hour or its principals.

29. I would be personally prejudiced by Happy Hour's proposed amendment. Among other things, I anticipate that I would have to retain separate counsel to defend myself in a litigation thousands of miles from my home.

30. In addition, Best Bev would be prejudiced by Happy Hour's proposed amendment. Until now, Happy Hour's claims against Best Bev—to the extent it stated any claim against Best Bev in its complaint—was limited to a single production run in July 2023 in Waverly, New York. Opening Best Bev up to

potential liability for actions occurring at a different facility by a different and distinct corporate entity after discovery has closed should not be permitted.

Dated: April 24, 2026
St. Thomas
U.S Virgin Islands

Shawn P. Sheehan