# EXHIBIT "A"

Confidential - Attorneys Eyes Only

**OPERATING AGREEMENT**
**FOR**
**BEST BEV, LLC**
A U.S. Virgin Islands Limited Liability Company

The undersigned member and manager (the "Sole Member") of Best Bev, LLC (the "Company"), a limited liability company created under the U.S. Virgin Islands Uniform Limited Liability Company Act (the "Act"), adopts this Operating Agreement (the "Agreement"), effective as of June 13, 2022, upon the following terms and conditions:

## SECTION I
## ORGANIZATION & FORMATION

A. Formation. The Company has been organized as a U.S. Virgin Islands Limited Liability Company under and pursuant to the Act by the filing of Articles of Organization ("Articles") with the Office of the Lieutenant Governor, on June 13, 2022, as required by the Act.

B. Name. The name of the Company shall be "Best Bev, LLC." The Company upon proper notice and filing with the Office of the Lieutenant Governor of the U.S. Virgin Islands may conduct its business under one or more assumed names.

C. Purposes. The purpose of the Company is to engage in any lawful business or purpose permitted by the law of the territory of the U.S. Virgin Islands. The Company shall have all the powers necessary or convenient to affect any purpose for which it is formed, including all powers granted by the Act.

D. Duration. The Company shall continue in existence perpetually, beginning on the date of filing of the Articles, unless terminated by law or dissolved and terminated.

E. Registered Office and Resident Agent and Place of Business. The Registered Office and Resident Agent of the Company for service of process within the Territory shall be Hibiscus Business Services, LLC, whose mailing address is P.O. Box 6347, St. Thomas, U.S. Virgin Islands 00804-6347 and whose physical address is 1 Hibiscus Alley, 5093 Dronningens Gade, Ste. 1, St. Thomas, U.S. Virgin Islands 00802. The Company's principal place of business is East End Plaza, Suite 120, 6115 Estate Smith Bay, St. Thomas, U.S. Virgin Islands 00802, or such other place or places as the Sole Member may hereafter determine.

## SECTION II
## CAPITAL STRUCTURE: MEMBERSHIP UNITS AND CONTRIBUTIONS/TRANSFER OF MEMBERSHIP UNITS

A. Capital Contribution by Sole Member; Initial Issuance. The Sole Member's Membership Interest in the Company may be reflected in "Membership Units", as recorded in the Company's records and represented by a Certificate, as determined by the Sole Member. Upon the formation of the Company, the Sole Member shall make a capital contribution to the capital of the

Company in the amount of cash set forth opposite such Sole Member's name on Exhibit A attached hereto. The Sole Member may make additional capital contributions at any time and in any amount that he may desire, but is not required to do. As used herein, the term "Membership Interest" means the entire ownership interest of a Member in the Company at any particular time, including the right of the Member to any and all benefits to which a Member may be entitled as provided in this Agreement and under the Act, together with the obligations of the Member to comply with all of the terms and provisions of this Agreement.

B. Transfer of Membership Interest. The Sole Member may transfer any or all of his Membership Interest to any person or persons, at any time and from time to time. Subject to the provisions of this section, the Sole Member may assign his membership interest in the Company in whole or in part. The assignment of a membership interest does not itself entitle the assignee to participate in the management and affairs of the Company or to become a member. Such assignee is only entitled to receive, to the extent assigned, the distributions the assigning member would otherwise be entitled to, and such assignee shall only become an assignee of a membership interest and not a substituted member. An assignee of a membership interest shall be admitted as a substitute member and shall be entitled to all the rights and powers of the assignor only if the Sole Member consents. If admitted, the substitute member, has to the extent assigned, all of the rights and powers, and is subject to all of the restrictions and liabilities of a member.

C. No Interest; No Return of Capital. Capital contributions to the Company shall not earn interest, except as otherwise expressly provided for in this Agreement. Except as otherwise provided in this Agreement, the Sole Member shall not be entitled to withdraw, or to receive a return of, a capital contribution or any portion thereof.

## SECTION III
## ALLOCATIONS, DISTRIBUTIONS, AND TAX ELECTIONS

A. Allocations. All of the Company's net profits, net losses, expenses and other items of income, gain, loss, and credit shall be allocated to the Sole Member. All items of Company taxable income, gain, loss, deduction, and credit recognized or allowable for Federal income tax purposes shall be allocated and credited or charged to the Sole Member.

B. Distributions. All distributions will be made to the Sole Member, in such amounts and at such times as determined by the Manager.

C. Tax Elections. It is the intention of the Sole Member that the Company be disregarded for federal and all relevant tax purposes and that the activities of the Company be deemed to be activities of the Sole Member for such purposes. However, any time that two or more persons or entities hold equity interests in the Company, then the Company shall be treated as a "partnership" for federal and all relevant state, territory, and local tax purposes and shall make any available elections to be so treated. In the event that the Company is treated as a partnership for tax purposes, then within 90 days after the end of each fiscal year, the Company will cause to be delivered to each person who was a Member at any time during such fiscal year a Schedule K-1 and such other information, if any, with respect to the Company as may be necessary for the preparation of each

Confidential - Attorneys Eyes Only

Member's federal, state, territory, or local income tax (or information) returns, including a statement showing each Member's share of income, gain or loss, and credits for the fiscal year.

## SECTION IV
## MANAGEMENT OF BUSINESS

A. Manager. The management of the Company shall be vested in a Manager or Managers (the "Manager"). Ryan Uszenski shall serve as the initial Manager of the Company.

B. In General. Except to the extent otherwise provided herein, the Manager shall manage the business and affairs of the Company and shall have full and complete authority, power and discretion to do all things necessary or convenient to manage, control and carry out the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business. A Manager shall remain in office until removed by a written instrument signed by the Sole Member, until such Manager resigns in a written instrument delivered to the Sole Member, or until the dissolution or death of such Manager (or if the Manager is otherwise unable to serve). The Sole Member may appoint additional and successor Managers in a written instrument delivered to and signed by the appointee. The Manager shall perform its duties as such in good faith, in a manner it reasonably believes to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. A person who so performs its duties shall not have any liability by reason of serving or having served as a Manager. A Manager shall not be liable under a judgment, decree, or order of court, or in any other manner, for a debt, obligation, or liability of the Company. If there are two Managers serving, they shall act by unanimous vote, and if there are three or more Managers serving, they shall act by majority vote.

## SECTION V
## EXCULPATION OF LIABILITY: INDEMNIFICATION

A. Exculpation of Liability. Unless otherwise provided by law or expressly assumed, the Sole Member and the Manager shall not be personally liable for the acts, debts or liabilities of the Company.

B. Indemnification.

1. Except as otherwise provided in this section, the Company shall indemnify the Sole Member and the Manager and may indemnify any employee or agent of the Company who was or is a party or is threatened to be made a party to a threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative, and whether formal or informal, other than an action by or in the right of the Company, by reason of the fact that such person is or was an employee or agent of the Company, against expenses, including attorneys' fees, judgments, penalties, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with the action, suit or proceeding, if the person acted in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner that such person reasonably believed to be in the best interests of the Company and with respect to a criminal action or

proceeding, if such person had no reasonable cause to believe such person's conduct was unlawful.

2. To the extent that the Sole Member, the Manager, employee or agent of the Company has been successful on the merits or otherwise in defense of an action, suit or proceeding or in defense of any claim, issue or other matter in the action, suit or proceeding, such person shall be indemnified against actual and reasonable expenses, including attorneys' fees, incurred by such person in connection with the action, suit or proceeding and any action, suit or proceeding brought to enforce the mandatory indemnification provided herein.

3. Any indemnification permitted under this section, unless ordered by a court, shall be made by the Company only as authorized in the specific case upon a determination that the indemnification is proper under the circumstances because the person to be indemnified has met the applicable standard of conduct and upon an evaluation of the reasonableness of expenses and amounts paid in settlement. This determination and evaluation shall be made by the Sole Member. Notwithstanding the foregoing to the contrary, no indemnification shall be provided to any employee or agent of the Company for or in connection with the receipt of a financial benefit to which such person is not entitled, voting for or assenting to a distribution to the Sole Member in violation of this Agreement or the Act, or a knowing violation of law.

## SECTION VI
## LIQUIDATION

The Company shall be dissolved, and shall terminate and wind up its affairs, upon the determination of the Sole Member to do so.

## SECTION VII
## MISCELLANEOUS PROVISIONS

A. Section Headings. The section headings and numbers contained in this Agreement have been inserted only as a matter of convenience and for reference, and in no way shall be construed to define, limit or describe the scope or intent of any provision of this Agreement.

B. Entire Agreement. This Agreement constitutes the entire agreement among the parties hereto and contains all of the agreements among said parties with respect to the subject matter hereof. The Agreement supersedes any and all other agreements, either oral or written, between said parties with respect to the subject matter hereof.

C. Severability. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

D. Amendment. This Agreement may be amended or revoked at any time, in writing, with the consent of the Sole Member. No change or modification to this Agreement shall be valid unless in writing and signed by the Sole Member.

E. Binding Effect. Subject to the provisions of this Agreement relating to transferability, this Agreement will be binding upon and shall inure to the benefit of the parties, and their respective distributees, heirs, successors and assigns.

F. Governing Law. Regardless of the place where this Agreement may be executed by the Sole Member, the Agreement, the rights and obligations of the Sole Member, the rights and obligations of the Manager, and any claims and disputes relating thereto, shall be subject to and governed by, construed and enforced in accordance with the laws of the territory of the U.S. Virgin Islands.

**IN WITNESS WHEREOF**, the Sole Member makes and executes this Operating Agreement effective on the day and year first written above.

WITNESSETH:

EtOH WORLDWIDE, LLC
SOLE MEMBER

By: ______________________
Shawn Sheehan, its President

By: ______________________
Ryan Uszenski, MANAGER

Confidential - Attorneys Eyes Only

**EXHIBIT A**

**MEMBER LISTING; INITIAL CAPITAL CONTRIBUTIONS**

| Sole Member | Initial Capital Contributed | Percentage Interest |
|---|---|---|
| EtOH Worldwide, LLC<br>5093 Dronningens Gade, Ste. 1<br>St. Thomas, USVI | $1,000 | 100% |