**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

HAPPY HOUR DRINKS COMPANY, INC.,

                                        Case No. 3:24-cv-00047 (TJM/ML)

                        Plaintiff,

     -against-

CAN MAN, LLC d/b/a Best Bev Co.;
BEST BEV, LLC and
JOHN DOES 1 through 100,

                        Defendants.

------------------------------------------------------------------------x

**<u>PLAINTIFF HAPPY HOUR DRINKS COMPANY, INC.'S MOTION FOR LEAVE TO FILE REPLY PAPERS IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT</u>**

1

Plaintiff Happy Hour Drinks Company, Inc. ("Happy Hour"), by and through its undersigned counsel, respectfully requests leave of Court, pursuant to Local Rule 7.1(a)(2), to file the attached Reply Papers in further support of its Motion for Leave to File First Amended Complaint (Dkt. No. 124).

On April 3, 2026, Plaintiff filed its Motion for Leave to File First Amended Complaint. Dkt. No. 124. On April 24, 2026, Defendants filed their Memorandum of Law in Opposition (Dkt. No. 126), together with four affidavits and multiple exhibits and deposition excerpts.

Defendants' Opposition raises several arguments that were not and could not have been addressed in Plaintiff's opening papers, including:

- A choice-of-law argument that Pennsylvania and U.S. Virgin Islands law, rather than New York law, should govern the alter ego analysis;

- A challenge to the propriety of naming the Shawn P. Sheehan Revocable Trust as a defendant;

- An argument that the proposed First Amended Complaint fails to adequately allege LLC citizenship for diversity purposes;

- Affidavits from the proposed individual defendants that directly contradict their own sworn deposition testimony.

Plaintiff's proposed reply is narrowly focused on these new arguments and does not exceed 10 pages, consistent with Local Rule 7.1(a)(2). Plaintiff respectfully submits that the Court would benefit from a Reply addressing these issues before ruling on the Motion.

The proposed Reply is attached hereto as **<u>Exhibit A</u>** for the Court's consideration and can be filed immediately upon the granting of this request.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant leave to file the attached Reply.

Dated: May 1, 2026
      Los Angeles, California

                                Respectfully submitted,

                                **NOVIAN & NOVIAN LLP**

                                By: /s/ Andrew B. Goodman
                                    Andrew B. Goodman, Esq.
                                    1801 Century Park East, Suite 1201
                                    Los Angeles, California 90067
                                    Telephone: (310) 553-1222
                                    *Co-Counsel for Plaintiff*

                                **SAVAD CHURGIN, P.C.**

                                    Joseph A. Churgin (6854)
                                    55 Old Turnpike Road, Suite 209
                                    Nanuet, New York 10954
                                    Telephone: (845) 624-3820
                                    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that all counsel of record who are deemed to have consented to electronic service are being served with a true and correct copy of the above document on May 1, 2026, via the Court's CM/ECF system. Any other parties or counsel of record will be served by regular and/or electronic mail.

/s/ Andrew B. Goodman
Andrew B. Goodman

# Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

HAPPY HOUR DRINKS COMPANY, INC.,

                                                      Case No. 3:24-cv-00047 (TJM/ML)

                                  Plaintiff,

        -against-

CAN MAN, LLC d/b/a Best Bev Co.;
BEST BEV, LLC and
JOHN DOES 1 through 100,

                                  Defendants.

-------------------------------------------------------------------------x


**PLAINTIFF HAPPY HOUR DRINKS COMPANY, INC.'S REPLY MEMORANDUM OF**
**LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED**
**COMPLAINT**

1

**INTRODUCTION**

Defendants' Opposition (Dkt. 126) is designed to confuse the Court and distract from the applicable pleading standards, which are liberally construed in favor of amendment. Defendants conflate the choice-of-law analysis applicable to the merits of a veil-piercing claim with the threshold question on this motion—whether the proposed First Amended Complaint is so clearly futile that leave to amend should be denied outright. Without conceding that they require correction, Defendants point to easily curable pleading deficiencies—such as the form of the Trust's designation and the specificity of LLC citizenship allegations (which have never been challenged before)—and ask the Court to treat them as grounds for denying leave entirely, rather than as the sort of minor defects that are routinely corrected, or could be the subject of stipulated correction. Indeed, the only difference in citizenship between the original Complaint and proposed First Amended Complaint is Uszenski and Sheehan, the proposed new defendants, are citizens of the U.S. Virgin Islands. Dkt. Nos. 126-6 at p. 1, ¶ 2, 126-9 at p. 1, ¶ 2. So long as there is no new defendant that is a citizen of California and Delaware, like Happy Hour, there is still complete diversity, just as with the original Complaint. And Defendants' ask the Court to credit self-serving affidavits from the very individuals whose conduct is at issue—affidavits that are called into question by their own sworn deposition testimony in which they appeared to know much less.

None of Defendants' arguments warrants denial of leave. The liberal standard on this motion is whether the proposed amendment could survive a motion to dismiss. It plainly can. The proposed First Amended Complaint does not add new causes of action. It asserts the same four claims from the original Complaint against the individuals who dominated the entities that harmed Plaintiff, based on evidence that was not available until March 2026. There is no evidence of delay or bad faith, particularly with no trial date set. Accordingly, the motion should be granted.

2

<u>**ARGUMENT**</u>

**I. PLAINTIFF HAS DEMONSTRATED GOOD CAUSE**

**A. Defendants Mischaracterize *Soroof***

Defendants attempt to distinguish *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142 (S.D.N.Y. 2012), by pointing out that the plaintiff in *Soroof* filed its initial motion to amend within two months of the deadline, whereas Plaintiff here took longer. But Defendants omit the critical holding: the *Soroof* court's good cause analysis turned not on timing alone, but on whether the movant acted diligently and whether the evidence supporting the amendment was <u>available</u> before the deadline. *Id.* at 152-153. The court granted leave because the plaintiff *learned of corporate undercapitalization, lack of corporate employees, and redirection of corporate funds only in discovery. Id.* at 152. That is precisely the situation here.

**B. Plaintiff Could Not Have Alleged These Facts Before the March 2026 Depositions**

Defendants argue that Plaintiff had sufficient information to assert its alter ego claims before the December 19, 2024 deadline, or at least by December 2025 when the tax returns were produced. This is wrong for several reasons.

First, Plaintiff had Fed. R. Civ. P. 11 obligations not to make specific factual allegations without a reasonable basis. While Plaintiff knew the identities of Uszenski and Sheehan from earlier discovery responses, those responses were largely unverified. Knowing the names of individuals associated with a corporate defendant is not the same as having the factual basis to allege that those individuals exercised complete domination over the corporation and used that domination to commit a fraud or wrong against the plaintiff. The specific facts supporting those allegations—Uszenski's testimony that his purview was everything, that he gave zero consideration to Happy Hour's claims, that no assets were reserved for creditors; Sheehan's

3

testimony that he will not satisfy any judgment, that he controls 100% of Best Bev, that he could not identify basic corporate formalities—were not available until the March 2026 depositions.

Second, the tax returns produced in December 2025 revealed the money trail, but they did not, standing alone, provide a sufficient basis to allege alter ego liability. The tax returns showed capital flows, distributions, and ownership structures, but they required explanation and verification. It was not until Peterson was deposed on March 6, 2026 and could not explain tens of millions of dollars in capital transfers, and until Sheehan was deposed on March 9, 2026 and disclaimed knowledge of virtually every aspect of the entities he controls, that Plaintiff had the factual foundation for its alter ego allegations.

Third, the suggestion that Plaintiff could have simply alleged alter ego claims and then sought discovery to support them gets the analysis backwards. Alter ego allegations are serious. They seek to hold individuals personally liable for corporate obligations. A responsible plaintiff does not make such allegations on speculation and then hope discovery fills the gaps. Plaintiff waited until it had the evidence, as it was entitled to do.

### C. Plaintiff Was Diligent at Every Step

The procedural history of this case demonstrates Plaintiff's diligence, not delay. Discovery was contested at every turn. Defendants resisted document production, requiring a motion to compel that was not resolved until October 2025. Defendants substituted counsel mid-discovery. The Court extended deadlines to accommodate these disruptions. The key 30(b)(6) depositions could not be scheduled until March 2026. Plaintiff filed its motion promptly after completing them. At no point did the Court admonish Plaintiff for lack of diligence; to the contrary, the Court repeatedly granted extensions recognizing the good cause for them.

4

Defendants fault Plaintiff for not seeking an extension of the amendment deadline itself. But Plaintiff was trying to be efficient—to conduct discovery first and then seek amendment based on what it learned, rather than amend on speculation and risk having to amend again. The Court should not punish Plaintiff for that approach.

## II. THE PROPOSED AMENDMENT IS NOT FUTILE

An amendment is futile only if the proposed amended complaint could not survive a motion to dismiss. *Soroof*, 283 F.R.D. at 147; *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—**such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc**.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.") (emphasis added).

Defendants' futility arguments fail across the board.

### A. Defendants Apply the Wrong Choice-of-Law Framework

Defendants' lead futility argument is that Plaintiff applied New York law to its alter ego analysis when Pennsylvania law (for Can Man) and U.S. Virgin Islands law (for Best Bev) should govern. This argument confuses the merits of a veil-piercing claim with the threshold question on a motion for leave to amend.

This is a diversity action in the Northern District of New York. Under the *Erie* doctrine, this Court applies the substantive law of the forum state. New York's substantive law governs the alter ego analysis. Plaintiff's proposed FAC correctly applies the New York veil-piercing standard: (1) complete domination of the corporation in respect to the transaction attacked, and (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.

In any event, the question on this motion is not which state's law ultimately governs, but whether the proposed complaint is so clearly deficient under *any* applicable standard that it could not survive a motion to dismiss. Even if the Court were to conclude that Pennsylvania or USVI law applied, the proposed allegations—undercapitalization, absence of corporate formalities, self-dealing, asset stripping, and use of the corporate form to avoid liability to a known creditor—would state a plausible claim under any of these standards. Defendants' own cited authority, the Pennsylvania *Mortimer* decision, admits that there appears to be no clear test or settled rule in Pennsylvania as to exactly when the corporate veil can be pierced and when it may not be pierced. *Mortimer v. McCool*, 667 Pa. 134, 145 (2021). Defendants have not cited any definitive authority from the USVI that firmly establishes the futility of Plaintiff's pleading of alter ego liability.

Although Plaintiff is not suggesting this is necessary, the choice-of-law question is better resolved on a motion to dismiss. It is not a basis for denying leave to amend and the legal standards for pleading alter ego are not so markedly different in Pennsylvania and the USVI to warrant a finding that the proposed First Amended Complaint is futile.

**B. The Trust Issue Is a Curable Deficiency, Not Futility**

Defendants argue that the Trust is not a proper defendant because it cannot sue or be sued in its own name. Even accepting this proposition, it does not support a finding of futility. Plaintiff

has already named Sheehan in his capacity as Trustee of the Trust. If the Court concludes that the Trust should not be named as a standalone defendant, Plaintiff can stipulate to that correction. The substance of the allegations against the Trust—that it was used as a vehicle to position Sheehan as a priority creditor ahead of tort creditors like Happy Hour—would remain and would be asserted against Sheehan in his capacity as Trustee. A curable caption deficiency is not the kind of fundamental pleading failure that renders an amendment futile. *See Foman*, 371 U.S. at 182 (leave to amend should be freely given when justice so requires).

### C. The LLC Citizenship Allegations Can Be Cured

Defendants argue that the proposed First Amended Complaint does not adequately allege the citizenship of each LLC member in the chain for diversity purposes. To the extent this is a valid concern, it is a pleading issue that can be readily cured by amendment—not a basis for denying leave outright. Complete diversity exists here and always has. Plaintiff is a citizen of Delaware and California. Can Man is a Pennsylvania LLC. Best Bev is a USVI LLC. The proposed individual defendants reside in the U.S. Virgin Islands. No defendant is a citizen of Delaware or California and the analysis is not markedly different than it always has been. If the Court requires more specific citizenship allegations, Plaintiff can provide them. This technical objection, which has never been raised before, does not make the amendment futile.

### D. Deposition Testimony of Ryan Uszenski and Shawn Sheehan Casts Doubt on their Suddenly More Detailed Declarations

Defendants submit declarations from Uszenski, Sheehan, and their accountant (Eric Mendelsohn) that directly contradict the sworn deposition testimony that forms the basis of Plaintiff's motion. Plaintiff set forth very broad and detailed deposition topics for the Fed. R. Civ. P. 30(b)(6) designees for Can Man and Best Bev. Supplemental Affidavit of Andrew B. Goodman

filed concurrently herewith ("Supp. Goodman Aff."), ¶ 2, Exs. A-B. Based on the representations of Defendants' counsel, Mr. Paul Sheppard, Plaintiff understood that Ryan Uszenski would be testifying as to ownership and financial topics for Can Man. Supp. Goodman Aff., ¶ 3; *see also* Uszenski Dep. at p. 10. James Peterson would testify as to topics 1-3 and 8-12 for Best Bev. Supp. Goodman Aff., ¶ 3. Per a March 4, 2026 email from Mr. Sheppard, to the extent that Mr. Peterson did not have knowledge of specific portions of those topics, Shawn Sheehan would testify as to them. *Id.*, Ex. C. Defendants did not designate anyone else to testify as to the financial topics of either entity—certainly not Eric Mendelsohn, who Plaintiff could not depose. Supp. Goodman Aff., ¶¶ 4-5. Factual disputes abound in each of the three declarations.

For example, Uszenski's declaration claims that he holds a 90.1% controlling membership interest and the Trust holds only 9.9%. Dkt. No. 126-6 at p. 3, ¶ 9. But in his deposition, Uszenski described his purview at Can Man as everything, stated that he had authority over all decisions, and characterized his titles as irrelevant because he was the owner. Uszenski Dep. at pp. 17-18. Uszenski's knowledge of ownership topics during his deposition was lacking, which casts doubt on the detailed statements in his Declaration. Supp. Goodman Aff., ¶ 6, Ex. D.

Sheehan's declaration claims he never exercised any control over Can Man. Dkt. No. 126-9 at p. 2, ¶ 5. But in his deposition, Sheehan could not identify a single corporate formality observed by either entity, admitted he visited the Waverly facility hundreds of times, and stated that he would not satisfy any judgment against Can Man. Moreover, Sheehan's knowledge of his own entities was alarmingly insufficient and evasive, which casts doubt on the detailed statements in his Declaration. Supp. Goodman Aff., ¶ 7, Ex. E (Sheehan Dep. at pp. 13-17, 20.)

The Mendelsohn declaration attempts to recharacterize the 90% profit-and-loss allocation as a mere tax election with no bearing on control. Dkt. No. 126-13. But whether the allocation

reflects a tax strategy or an equity interest, the substance is the same: Sheehan's Trust bears 90% of Can Man's economic risk while holding what Defendants characterize as a 9.9% minority interest—an inverted structure that, at minimum, raises serious questions about the bona fide nature of the corporate form.

These factual disputes should not be conclusively resolve by denying leave to amend on the basis of self-serving declarations that contradict the declarants' own sworn testimony.

## III. DEFENDANTS HAVE NOT ESTABLISHED PREJUDICE

On a motion for leave to amend, the defendant bears the burden of establishing prejudice. *Soroof*, 283 F.R.D. at 152. Defendants have not met that burden in their self-serving, speculative statements. Dkt. No. 126-6 at pp. 7-8, ¶ 23; Dkt. No. 126-9 at pp. 7-8, ¶¶ 29-30. The case has not been tried. The dispositive motion deadline is May 1, 2026. Both sides have filed dispositive motions, such that delay is not inevitable while the dispositive motions are pending. The proposed individual defendants have already been deposed. The same counsel represents all defense interests and there is no basis to conclude that new counsel is needed. The same four claims are alleged against the individuals who, by their own testimony, dominated the corporate defendants. And no expert testimony is truly needed to evaluate the facts underlying alter ego.

Defendants suggest that granting leave would necessitate reopening discovery. But Plaintiff has not requested any additional discovery. As the *Soroof* court recognized, the addition of alter ego defendants *adds no new theory of recovery* where the original defendants have been alter egos of the parties in the complaint. *Soroof*, 283 F.R.D. at 153. At bottom, Defendants' claims of prejudice ring hollow and justice so requires the proposed amendments, which were made as diligently as possible following the March 2026 depositions and in good faith.

9

## CONCLUSION

Defendants' opposition amounts to a preview of the arguments they intend to make on a motion to dismiss and/or at trial. Those arguments—about choice of law, the propriety of naming the Trust, and the sufficiency of the citizenship allegations—may or may not have merit. But they are not grounds for denying leave to amend. The standard is whether the proposed amendment is so clearly futile that it could not survive a motion to dismiss. The proposed First Amended Complaint plainly can survive a motion to dismiss. Plaintiff's allegations of complete domination and fraud or wrong against the plaintiff are supported by overwhelming evidence from March 2026 depositions of Ryan Uszenski, Shawn Sheehan, and James Peterson. Nor is there sufficient prejudice to deprive Plaintiff of the opportunity to amend. For the foregoing reasons, Plaintiff respectfully requests that this Court grant leave to file the First Amended Complaint.

Dated: May 1, 2026
      Los Angeles, California

Respectfully submitted,

**NOVIAN & NOVIAN LLP**

By: /s/ Andrew B. Goodman
     Andrew B. Goodman, Esq.
     1801 Century Park East, Suite 1201
     Los Angeles, California 90067
     Telephone: (310) 553-1222
     *Co-Counsel for Plaintiff*

**SAVAD CHURGIN, P.C.**

     Joseph A. Churgin (6854)
     55 Old Turnpike Road, Suite 209
     Nanuet, New York 10954
     Telephone: (845) 624-3820
     *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that all counsel of record who are deemed to have consented to electronic service are being served with a true and correct copy of the above document on May 1, 2026, via the Court's CM/ECF system. Any other parties or counsel of record will be served by regular and/or electronic mail.

/s/ Andrew B. Goodman
Andrew B. Goodman

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

HAPPY HOUR DRINKS COMPANY, INC.,

                                                               Case No. 3:24-cv-00047 (TJM/ML)

                         Plaintiff,

      -against-

CAN MAN, LLC d/b/a Best Bev Co.;
BEST BEV, LLC and
JOHN DOES 1 through 100,

                           Defendants.

-------------------------------------------------------------------------x


**SUPPLEMENTAL AFFIDAVIT OF ANDREW B. GOODMAN IN SUPPORT OF
PLAINTIFF HAPPY HOUR DRINKS COMPANY, INC.'S REPLY MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT**

1

I, Andrew B. Goodman, declare:

1.      I am an attorney duly licensed to practice before the courts of the State of California and am admitted on a *pro hac vice* basis to practice in the United States District Court for the Northern District of New York (Dkt. No. 58). I am a partner at Novian & Novian, LLP, counsel for the plaintiff in the instant action. I am familiar with the files and pleadings in this case, and I have personal knowledge of the facts stated herein. If called upon to do so, I would competently testify to the contents of this Affidavit. I make this Supplemental Affidavit in support of the concurrently filed Reply Memorandum of Law In Support Of Motion For Leave To File First Amended Complaint.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the February 27, 2026 Third Amended Deposition Notice pursuant to Fed. R. Civ. P. 30(b)(6) for Can Man. Attached hereto as **Exhibit B** is s a true and correct copy of the February 27, 2026 Third Amended Deposition Notice pursuant to Fed. R. Civ. P. 30(b)(6) for Can Man.

3.      Based on the representations of Defendants' counsel, Mr. Paul Sheppard, I understood that Ryan Uszenski would be testifying as to ownership and financial topics for Can Man. James Peterson would testify as to topics 1-3 and 8-12 for Best Bev. Per a March 4, 2026 email from Mr. Sheppard, to the extent that Mr. Peterson did not have knowledge of specific portions of those topics, Shawn Sheehan would testify as to them. A true and correct copy of Mr. Sheppard's March 4, 2026 email is attached hereto as **Exhibit C**.

4.      Defendants did not designate anyone else to testify as to the financial topics of either entity—certainly not Eric Mendelsohn, who has submitted a Declaration in support of Defendants' Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint. Dkt. No. 126-13.

5.    If I knew that Defendants' Fed. R. Civ. P. 30(b)(6) designees would have incomplete knowledge of the tax returns at issue, such that Eric Mendelsohn would provide supplemental testimony, I would have sought to take his deposition. However, I could not have known that when we noticed depositions and were locked into a deposition schedule on February 6, 2026. Dkt. No. 115.

6.    Ryan Uszenski's knowledge of ownership topics during his deposition was lacking, as evidenced by the attached excerpts, which cast doubt on the detailed statements in his Declaration. Dkt. No. 126-6. Attached hereto as **Exhibit D** is a true and correct copy of excerpts (pp. 10, 20-25) from the March 3, 2026 deposition of Ryan Uszenski.

7.    Shawn Sheehan's knowledge of his own entities was alarmingly insufficient and, in my opinion, evasive, which casts doubt on the detailed statements in his Declaration. Dkt. No. 126-9. Attached hereto as **Exhibit E** is a true and correct copy of excerpts (pp. 13-17, 20) from the March 9, 2026 deposition of Shawn Sheehan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 1, 2026, at Los Angeles, California.

/s/ Andrew B. Goodman
Andrew B. Goodman

3

## CERTIFICATE OF SERVICE

I certify that all counsel of record who are deemed to have consented to electronic service are being served with a true and correct copy of the above document on May 1, 2026, via the Court's CM/ECF system. Any other parties or counsel of record will be served by regular and/or electronic mail.

/s/ Andrew B. Goodman
Andrew B. Goodman

4

# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTICT OF NEW YORK

---------------------------------------------------------------------x

HAPPY HOUR DRINKS COMPANY, INC.,          3:24-cv-00047 (TJM/ML)

*Plaintiff,*

-against-

**PLAINTIFF'S NOTICE OF DEPOSITION OF FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) DESIGNEE(S) FOR DEFENDANT BEST BEV, LLC (JAMES PETERSON)**

CAN MAN, LLC d/b/a Best Bev Co., BEST BEV, LLC
and JOHN DOES 1 through 100

*Defendants.*

---------------------------------------------------------------------x

     *PLEASE TAKE NOTICE* that on **Friday, March 6**, **2026** at **11:00 a.m. EST**, plaintiff HAPPY HOUR DRINKS COMPANY, INC. ("Happy Hour" or "Plaintiff"), by and through its counsel of record, pursuant to Federal Rule of Civil Procedure 30(b)(6), will take the deposition under oath of the designee or designees of **defendant BEST BEV, LLC** ("Best Bev") – specifically, on this date, James Peterson – before a certified court reporter via Zoom video conference. The parties will stipulate to taking the deposition by remote means, such that the location of the deposition will be wherever the witness answers the questions. The Zoom link and all necessary dial-in information will be provided in advance of the deposition date. The deposition may be recorded by videotape, simultaneous with a stenographic reporter duly authorized by law to administer oaths. The oral examination will be subject to continuance or adjournment from time to time or place to place until completed, and to be taken on the ground and for the reason that said witness or witnesses will give additional evidence material to the establishment of Plaintiff's case.

## DEFINITIONS

    1.    AFFILIATED WITH means, in relation to a PERSON or PERSONS, subsidiaries, parent corporations, owners and agents, all present and past employees, members, shareholders, contractors, subcontractors, consultants, agents, directors, officers, experts, and representatives, including all other persons or entities acting or purporting to act on behalf of that PERSON who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses to these document requests.

1

2.      ALL means any and all.

3.      BEST BEV means defendant Best Bev, LLC in this action, and ALL PERSONS acting on its behalf.

4.      CAN MAN means defendant Can Man, LLC in this action, and ALL PERSONS acting on its behalf.

5.      COMMUNICATIONS means any contact between two or more persons, companies, other personal or business entities, or any of their agents or representatives; and shall include, without limitation, written contact by such means as emails, text messages, letters, memoranda, telegrams, telex, or by any Documents, and oral contact by such means as face-to-face meetings, telephone conversations, and voicemail.

6.      CONCERN, CONCERNS, or CONCERNING means referring to, alluding to, responding to, relating to, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, evidencing, mentioning, reflecting, analyzing, constituting, pertaining to, and/or comprising.

7.      PERSON or PERSONS include, without limitation, natural persons, corporations, associations, unincorporated associations, partnerships, and any other governmental or non-governmental entity.

8.      PLAINTIFF means and refers to the plaintiff in this action, Happy Hour Drinks Company, Inc. and ALL PERSONS acting on its behalf.

## TOPICS

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Best Bev shall designate and produce for deposition one or more officers, directors, managing agents, or other persons who are knowledgeable about and consent to testifying on behalf of Best Bev regarding the following topics:

1. The formation, ownership, management, and operational structure of BEST BEV, including: the identity of all officers, directors, managers, and key personnel from 2021 to the present; and corporate governance procedures, including record-keeping practices.

2. ALL COMMUNICATIONS, agreements, and arrangements between BEST BEV and CAN MAN, including: the nature and extent of any shared personnel, facilities, equipment, or resources; BEST BEV's takeover of CAN MAN's operations in the Waverly, NY facility; the transition of business operations, contracts, assets, or employees

2

from CAN MAN to BEST BEV; and any consideration provided for acquired assets or business operations.

3. BEST BEV's financial condition, assets, sources of revenue and capital, and financial transactions with CAN MAN from January 2021 to the present.

4. BEST BEV's manufacturing processes and quality control protocols implemented for clients, including testing procedures for dissolved oxygen levels and copper content and training provided regarding quality control, from January 2021 to the present.

5. Knowledge of CAN MAN's leaking can issues prior to taking over operations and ALL COMMUNICATIONS CONCERNING the causes of CAN MAN's production failures, BEST BEV's awareness of PLAINTIFF's claims against CAN MAN, and measures taken to prevent similar leaking can issues in BEST BEV's operations.

6. ALL COMMUNICATIONS with HAPPY HOUR CONCERNING production runs, continuity of service for CAN MAN clients after BEST BEV's takeover, and knowledge of HAPPY HOUR's business losses due to CAN MAN's production issues.

7. ALL issues CONCERNING the personnel transition between CAN MAN and BEST BEV, including training, management changes, and continuity of institutional knowledge between the entities.

8. ALL issues CONCERNING the relationship between owners and managers of BEST BEV and CAN MAN, including common control or oversight between the entities and COMMUNICATIONS between the management teams of both entities.

9. ALL issues CONCERNING the process by which BEST BEV acquired CAN MAN's operations, including documentation of asset transfers or business acquisition, valuation of CAN MAN's assets or business operations, and any due diligence conducted before acquiring CAN MAN's operations.

10. ALL issues CONCERNING insurance policies covering BEST BEV for the present lawsuit, COMMUNICATIONS with insurance carriers CONCERNING HAPPY HOUR's claims, BEST BEV's position CONCERNING insurance coverage for HAPPY HOUR's claims, and successor liability considerations for CAN MAN's insurance obligations.

11. ALL issues CONCERNING continuity of business operations between CAN MAN and BEST BEV, including continuity of client relationships, marketing or representations CONCERNING the relationship between the entities, COMMUNICATIONS to clients

3

CONCERNING the transition, and BEST BEV's assumption of CAN MAN's business reputation or goodwill.

12.    ALL issues CONCERNING the decision-making process for BEST BEV to take over CAN MAN's operations, including considerations CONCERNING existing liabilities when acquiring operations.

Dated: February 27, 2026
        Nanuet, New York

*Joseph A. Churgin*

_____
JOSEPH A. CHURGIN, ESQ.
Savad Churgin
*Attorneys for Plaintiff*
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954
(845) 624-3820
j.churgin@savadchurgin.com

To:    PAUL T. SHEPPARD, ESQ.
       HINMAN, HOWARD & KATTELL, LLP
       *Attorneys for Defendants CAN MAN, LLC*
       *d/b/a BEST BEV CO.*
       *and BEST BEV, LLC*
       80 Exchange Street, PO Box 5250
       Binghamton, New York 13902-5250
       (607) 723-5341

4

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTICT OF NEW YORK

-----------------------------------------------------------------x

HAPPY HOUR DRINKS COMPANY, INC.,                3:24-cv-00047

*Plaintiff,*

-against-

**PLAINTIFF'S NOTICE OF DEPOSITION OF FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) DESIGNEE(S) FOR DEFENDANT CAN MAN, LLC (RYAN USZENSKI)**

CAN MAN, LLC d/b/a Best Bev Co., BEST BEV, LLC
and JOHN DOES 1 through 100

*Defendants.*

-----------------------------------------------------------------x

      *PLEASE TAKE NOTICE* that on **Tuesday, March 3, 2026 at 11:00 a.m. EST**, plaintiff HAPPY HOUR DRINKS COMPANY, INC. ("Happy Hour" or "Plaintiff"), by and through its counsel of record, pursuant to Federal Rule of Civil Procedure 30(b)(6), will take the deposition under oath of the designee or designees of **defendant CAN MAN, LLC ("Can Man")** – specifically, on this date, Ryan Uszenski – before a certified court reporter via Zoom video conference. The parties will stipulate to taking the deposition by remote means, such that the location of the deposition will be wherever the witness answers the questions. The Zoom link and all necessary dial-in information will be provided in advance of the deposition date. The deposition may be recorded by videotape, simultaneous with a stenographic reporter duly authorized by law to administer oaths. The oral examination will be subject to continuance or adjournment from time to time or place to place until completed, and to be taken on the ground and for the reason that said witness or witnesses will give additional evidence material to the establishment of Plaintiff's case.

## DEFINITIONS

      1.     AFFILIATED WITH means, in relation to a PERSON or PERSONS, subsidiaries, parent corporations, owners and agents, all present and past employees, members, shareholders, contractors, subcontractors, consultants, agents, directors, officers, experts, and representatives, including all other

1

persons or entities acting or purporting to act on behalf of that PERSON who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses to these document requests.

2.    ALL means any and all.

3.    BEST BEV means defendant Best Bev, LLC in this action, and ALL PERSONS acting on its behalf.

4.    CAN MAN means defendant Can Man, LLC in this action, and ALL PERSONS acting on its behalf.

5.    COMMUNICATIONS means any contact between two or more persons, companies, other personal or business entities, or any of their agents or representatives; and shall include, without limitation, written contact by such means as emails, text messages, letters, memoranda, telegrams, telex, or by any Documents, and oral contact by such means as face-to-face meetings, telephone conversations, and voicemail.

6.    CONCERN, CONCERNS, or CONCERNING means referring to, alluding to, responding to, relating to, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, evidencing, mentioning, reflecting, analyzing, constituting, pertaining to, and/or comprising.

7.    PERSON or PERSONS include, without limitation, natural persons, corporations, associations, unincorporated associations, partnerships, and any other governmental or non-governmental entity.

8.    PLAINTIFF means and refers to the plaintiff in this action, Happy Hour Drinks Company, Inc. and ALL PERSONS acting on its behalf.


## TOPICS

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Can Man shall designate and produce for deposition one or more officers, directors, managing agents, or other persons who are knowledgeable about and consent to testifying on behalf of Can Man regarding the following topics:

1. The formation, ownership, management, and operational structure of CAN MAN, including: the identity of all officers, directors, managers, and key personnel from 2021 to the present; and corporate governance procedures, including record-keeping practices.

2

2. ALL COMMUNICATIONS, agreements, and arrangements between BEST BEV and CAN MAN, including: the nature and extent of any shared personnel, facilities, equipment, or resources; the circumstances surrounding CAN MAN's cessation of operations in December 2023; the transition of business operations, contracts, assets, or employees from CAN MAN to BEST BEV; and any consideration provided for acquired assets or business operations.

3. CAN MAN's financial condition, assets, sources of revenue and capital, and financial transactions with BEST BEV from January 2021 to the present.

4. CAN MAN's manufacturing processes and quality control protocols implemented for clients, including testing procedures for dissolved oxygen levels and copper content, training provided regarding quality control, and any changes to manufacturing processes or quality control procedures during 2022 to 2023.

5. ALL issues CONCERNING leaking cans experienced by CAN MAN with any clients, including COMMUNICATIONS between CAN MAN personnel regarding leaking cans, root cause analyses performed regarding leaking can issues, actions taken to address leaking can problems, and corporate policies on disclosing quality issues to clients.

6. ALL issues and COMMUNICATIONS CONCERNING HAPPY HOUR production runs from 2021 to 2023.

7. ALL issues CONCERNING insurance policies covering CAN MAN for the present lawsuit, COMMUNICATIONS with insurance carriers CONCERNING HAPPY HOUR's claims, CAN MAN's position CONCERNING insurance coverage for HAPPY HOUR's claims, and successor liability considerations for CAN MAN's insurance obligations.

8. ALL issues and COMMUNICATIONS CONCERNING other clients besides HAPPY HOUR experiencing leaking can issues during 2021 to 2023.

9. ALL issues CONCERNING the decision to wind down CAN MAN's operations, including plans for CAN MAN's assets and liabilities and any documentation of asset transfers or business transitions.

3

Dated: February 27, 2026
       Nanuet, New York

*Joseph A. Churgin*

_____

JOSEPH A. CHURGIN, ESQ.
Savad Churgin
*Attorneys for Plaintiff*
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954
(845) 624-3820
j.churgin@savadchurgin.com

To:    PAUL T. SHEPPARD, ESQ.
       HINMAN, HOWARD & KATTELL, LLP
       *Attorneys for Defendants CAN MAN, LLC*
       *d/b/a BEST BEV CO.*
       *and BEST BEV, LLC*
       80 Exchange Street, PO Box 5250
       Binghamton, New York 13902-5250
       (607) 723-5341

4

# <u>Exhibit C</u>

| From: | Sheppard, Paul T. |
|---|---|
| To: | Andrew B. Goodman; Mariana Cotter; Marian Fass |
| Cc: | Joe Churgin; James Peterson; Joseph Williams |
| Subject: | RE: Happy Hour vs. Can Man - 30B6 Deposition Notices: 3/3/2026 and 3/6/2026 [NNLLP-CLIENT_WORK.5336.06] |
| Date: | Wednesday, March 4, 2026 2:23:41 PM |
| Attachments: | image002.png |

Topics 1-3, and 8-12.

To the extent that Mr. Peterson does not have knowledge of specific portions of those topics (i.e., specific communications—if any—between principals of Can Man, LLC and Best Bev, LLC), Mr. Sheehan will be testifying next week.

**Paul T. Sheppard**

Hinman, Howard & Kattell, LLP

80 Exchange Street, PO Box 5250

Binghamton, New York 13902-5250

Phone: (607) 723-5341 | Fax: (607) 723-6605

Email: sheppard@hhk.com | Web http://www.hhk.com

_____

This e-mail, including any attachments, may contain information that is protected by law as privileged and confidential, and is transmitted for the sole use of the intended recipient.  If you are not the intended recipient, you are hereby notified that any use, dissemination, copying or retention of this e-mail or the information contained herein is strictly prohibited.  If you have received this e-mail in error, please immediately notify the sender by telephone or reply e-mail, and permanently delete this e-mail from your computer system.  Thank you.

**From:** Andrew B. Goodman <agoodman@novianlaw.com>
**Sent:** Wednesday, March 4, 2026 5:17 PM
**To:** Sheppard, Paul T. <psheppard@hhk.com>; Mariana Cotter <m.cotter@savadchurgin.com>; Marian Fass <rowork@courtreportingny.com>
**Cc:** Joe Churgin <j.churgin@savadchurgin.com>; James Peterson <jpeterson@bestbev.co>; Joseph Williams <jwilliams@bestbev.co>
**Subject:** RE: Happy Hour vs. Can Man - 30B6 Deposition Notices: 3/3/2026 and 3/6/2026 [NNLLP-CLIENT_WORK.5336.06]

Will do re the exhibits. Which topics is Mr. Peterson testifying to?

Andrew B. Goodman | Partner

## NOVIAN & NOVIAN LLP

1801 Century Park East, Suite 1201, Los Angeles, CA 90067

T (310) 553-1222 [ext. 305]
F (310) 553-0222
E agoodman@novianlaw.com

This message is intended solely for the use of the addressee(s) and is intended to be privileged and confidential. If you have received this message in error, please immediately notify the sender and delete all copies of this email message along with all attachments. Any tax information or tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.) Thank you.

---

**From:** Sheppard, Paul T. <psheppard@hhk.com>
**Sent:** Wednesday, March 4, 2026 1:35 PM
**To:** Mariana Cotter <m.cotter@savadchurgin.com>; Andrew B. Goodman <agoodman@novianlaw.com>; Marian Fass <rowork@courtreportingny.com>
**Cc:** Joe Churgin <j.churgin@savadchurgin.com>; James Peterson <jpeterson@bestbev.co>; Joseph Williams <jwilliams@bestbev.co>
**Subject:** RE: Happy Hour vs. Can Man - 30B6 Deposition Notices: 3/3/2026 and 3/6/2026

Please provide the Zoom link for Friday's deposition of Mr. Peterson, and any exhibits that you intend to use during the deposition, as soon as possible.

We would like to get the exhibits sufficiently in advance of the deposition so that the witness can print them out and have them in front of him during the deposition.

**Paul T. Sheppard**
Hinman, Howard & Kattell, LLP
80 Exchange Street, PO Box 5250
Binghamton, New York 13902-5250
Phone: (607) 723-5341 | Fax: (607) 723-6605
Email:  sheppard@hhk.com  | Web http://www.hhk.com

_____

This e-mail, including any attachments, may contain information that is protected by law as privileged and confidential, and is transmitted for the sole use of the intended recipient.  If you are not the intended recipient, you are hereby notified that any use, dissemination, copying or retention of this e-mail or the information contained herein is strictly prohibited.  If you have received this e-mail in error, please immediately notify the sender by telephone or reply e-mail, and permanently delete this e-mail from your computer system.  Thank you.

**From:** Mariana Cotter <m.cotter@savadchurgin.com>
**Sent:** Friday, February 27, 2026 2:36 PM
**To:** Andrew B. Goodman <agoodman@novianlaw.com>; Marian Fass
<rowork@courtreportingny.com>; Sheppard, Paul T. <psheppard@hhk.com>
**Cc:** Joe Churgin <j.churgin@savadchurgin.com>; Mariana Cotter <m.cotter@savadchurgin.com>
**Subject:** Happy Hour vs. Can Man - 30B6 Deposition Notices: 3/3/2026 and 3/6/2026

> You don't often get email from m.cotter@savadchurgin.com. Learn why this is important

**Caution:** This email was sent from the external user m.cotter@savadchurgin.com. Please take care when clicking links or opening attachments. When in doubt, contact Tech Support.

Dear Mr. Sheppard: As you are aware, we are NY counsel to plaintiff Happy Hour Drinks Company, Inc.

Attached please find the following deposition notices which testimony will be taken **virtually** on **Tuesday March 3, 2026** and **Friday, March 6, 2026**, each commencing at **11:00 am EST**:

1. PLAINTIFF'S NOTICE OF DEPOSITION OF FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) DESIGNEE(S) FOR DEFENDANT CAN MAN, LLC (**RYAN USZENSKI**); and

2. PLAINTIFF'S NOTICE OF DEPOSITION OF FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) DESIGNEE(S) FOR DEFENDANT BEST BEV, LLC (**JAMES PETERSON**).

**Marian: Please provide a Court Reporter for each of the above.**

Gentlemen: Please provide Marian Fass/Rockland & Orange Reporting with the emails of the participants for each of the above.

WE REQUEST COMFIRMATION OF THE FOREGOING FROM ALL.

Mariana Cotter, Paralegal
Savad Churgin
55 Old Turnpike Road
Suite 209
Nanuet, New York 10954
Phone: 845.624.3820

Fax: 845.624.3821
Email: m.cotter@savadchurgin.com

**Disclaimer**

ALERT: Beware of WIRE FRAUD. Do not wire funds based upon email instructions. Email hacking is on the rise to fraudulently misdirect funds. Before wiring us any money, always call our office to verbally verify our wiring instructions.

# Exhibit D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT COURT OF NEW YORK

-------------------------------------------------x

HAPPY HOUR DRINKS COMPANY, INC.,

                Plaintiff,

                            DOCKET#
   - against -             3:24-cv-0047

CAN MAN, LLC d/b/a BEST BEV CO., BEST BEV, LLC
and JOHN DOES 1 THROUGH 10,

                Defendants.

-------------------------------------------------x

                      Tuesday
                      March 3, 2026
                      11:03 a.m.

       EXAMINATION BEFORE TRIAL of the

Defendant, CAN MAN, LLC, by and through its

Witness, RYAN USZENSKI, taken pursuant to

Notice, held via Zoom Videoconferencing on

the 3rd day of March 2026, before a Notary

Public of the State of New York.

        ROCKLAND & ORANGE REPORTING
         2 Congers Road, Suite 2
        New City, New York  10956

          (845) 634-4200

2

A P P E A R A N C E S:


    SAVAD CHURGIN, P.C.
        Attorneys for the Plaintiff
        55 Old Turnpike Road, Suite 209
        Nanuet, New York 10954
        (845) 624-3820
        (NOT PRESENT)


    NOVIAN & NOVIAN, LLP
        Co-Counsel for the Plaintiff
        1801 Century Park East, Suite 1201
        Los Angeles, California 90067
        (310) 553-1222
    BY:  ANDREW B. GOODMAN, ESQ.
        agoodman@novianlaw.com
        MATTHEW NOVIAN, ESQ.


    HINMAN, HOWARD & KATTELL, LLP
        Attorneys for the Defendants
        80 Exchange Street
        Binghamton, New York 13901
        (607) 723-5341
    BY:  PAUL T. SHEPPARD, ESQ.
        psheppard@hhk.com


    ALSO PRESENT:

        JOSEPH WILLIAMS, ESQ.
              In-house counsel for Best Bev

10

Ryan Uszenski

e-mail?

A.    I have everything closed.  I'm going to have to reboot everything.  I was dedicating my time to you.

MR. GOODMAN:  I appreciate it.  So I'm going to share my screen on this one.

Q.    Do you see this document entitled 30(b)(6) Designee(S) for Defendant Can Man, LLC (Ryan Uszenski)?

A.    Yes.

Q.    And based on this document do you have an understanding that you are here to testify on behalf of Can Man, LLC?

A.    Yes.

Q.    Your counsel has represented that you are here to testify on behalf of ownership and financial topics.  I'm going to go through the topics that we've designated and I have some educated guesses as to which ones you are here to testify to based on your counsel's representation. But I would like you to verify it, okay?

A.    Yep.

MR. SHEPPARD:  Andrew, if I may?  It's one, two, three, seven and nine.

20

Ryan Uszenski

Q.  So, all right, from the beginning of your time at Can Man until the present how much time per week or per month did you spend on Can Man's business?

A.  Say 30 hours a week.

Q.  Were you running a full-time financial advisory practice from St. Thomas during the same period?

A.  Yes.

Q.  How did you divide your time between your advisory practice and Can Man business?

A.  To make sure everything gets done, work weekends if you have to, have a team, be efficient with your time.

Q.  Who was managing the day-to-day operations at the Pennsburg, Pennsylvania facility?

A.  I'm sorry, you have to clarify the time again.

Q.  All right, let me -- starting at the beginning of your time at Can Man, LLC who was managing the day-to-day operations of the Pennsburg, Pennsylvania facility?

A.  Ultimately I was the member and we had a team.

www.courtreportingny.com

21

Ryan Uszenski

Q.   Who was on the team?

A.   The initial during that time was Kelly Festa, Angus Rittenburg, John Pitts.  I don't -- I know Andrew Zimmerman was on it.  I think that's the core team that ran the day-to-day.

Q.   And then you mentioned there was a different time period where there were perhaps others.  What time period were there different team members running the operations of Can Man?

MR. SHEPPARD:  I object to the form.

But you can go ahead and answer, Ryan.

A.   We -- that's the core group.  That's the core group that kind of stayed until I believe Andy Zimmerman at some point left.  But, again, we ceased operations at the end of 2023 so I wasn't sure if you were talking about then, or now, or the time after.

Q.   No.  To clarify, during the time where operations were active --

A.   It was the core group.

Q.   Okay.  Who is managing the day-to-day operations at the Waverly, New York facility?

A.   Can Man didn't have a location in Waverly.

22

Ryan Uszenski

Q.   Do you know one-way or another who was managing the day-to-day operations at the Waverly, New York facility?

A.   No.  I'm a representative of Can Man.

Q.   I understand that.  I'm asking if you know?

A.   I would be guessing.

Q.   Okay, I appreciate that.  Another deposition instruction, I'm going to do my best to ask you questions about the topics that we've designated.  Sometimes if there is a question that may go to your individual knowledge I'll try to clarify that.  Okay?

A.   Yes.

Q.   Other than Can Man and your financial advisory work what other businesses or entities are you involved with?

A.   I would have to ask you at what time period again?

Q.   Let's go from 2020 to the present?

A.   I -- the only addition on that would be I'm involved with a fund, an energy fund.

Q.   What is the name of that fund?

A.   340 Capital Fund.

23

Ryan Uszenski

Q.   What is your role at 340 Capital Fund?

A.   I am V.P. of finance.

Q.   How long have you been V.P. of finance at 340 Capital Fund?

A.   Less than one year.

Q.   Are you familiar with a company called XO Worldwide?

A.   Yes.

Q.   Do you have any involvement with XO Worldwide?

A.   Yes.  I was a limited partner of that in an advisory role.

Q.   During what time period?

A.   Don't recall.

Q.   Do you have an estimate?

A.   I believe 2021 to the end of -- middle of '24, maybe.

Q.   What is the nature of the business of XO Worldwide?

A.   It's a software subscription company.

Q.   How did you get involved with XO Worldwide?

A.   Personal referral.

Q.   From who?

24

Ryan Uszenski

A.    I don't recall.

Q.    Are you familiar with an entity called AgTech VI, Roman numeral VI?

A.    AgTech VI?  No.

Q.    Are you familiar with an entity called MCOB VI, Roman numeral VI, LLC?

A.    Sorry, can you repeat that?

Q.    Are you familiar with an entity called MCOB VI, LLC?

A.    Yes.

Q.    Do you have any involvement with MCOB VI, LLC?

A.    Yes.

Q.    What involvement is that?

A.    It owns a timeshare.

Q.    Where?

A.    In the U.S. Virgin Islands.

Q.    What kind of a timeshare, or hotel, or --

          (Multiple voices speaking at once.)

A.    Ritz Carlton.

Q.    I'm going back to 340 Capital Fund.

          Does 340 Capital Fund have any business relationship with Can Man or Best Bev?

25

Ryan Uszenski

A.   No.

Q.   Does XO Worldwide have any business relationship with Can Man or Best Bev?

A.   No.

Q.   Does MCOB VI, LLC have any business relationship with Can Man or Best Bev?

A.   No.

Q.   When was Can Man, LLC formed?

A.   Guessing summer 2021.

Q.   In what state was Can Man, LLC organized?

A.   Pennsylvania.

Q.   Who are the members of Can Man, LLC?

A.   Myself.

Q.   And Shawn Sheehan?

A.   That came later.

Q.   When did that come?

A.   Guessing the end of '21.

Q.   How did Shawn Sheehan become a member of Can Man, LLC?

A.   Isn't that why we sidebarred earlier?

Q.   Can you --

(Multiple voices speaking at once.)

Q.   Can you answer the question, please?

131

C E R T I F I C A T I O N

I, Yvette Arnold, a Stenotype Reporter and Notary Public within and for the State of New York, hereby certify:

That the witness whose examination is hereinbefore set forth was duly sworn or affirmed by a Notary Public and that the transcript of said examination is a true record of the testimony given by said witness; and

That I am not related to any of the parties to this action by blood or marriage, and I am in no way interested in the outcome of this matter.

_____
Yvette Arnold

# Exhibit E

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------X

HAPPY HOURS DRINKS COMPANY, INC.,
                              Docket #
                              3:24-cv-0047
                    Plaintiff,

          -against-

CAN MAN, LLC d/b/a BEST BEV CO., BEST BEV, LLC
and JOHN DOES 1 THROUGH 10,

                    Defendants.

---------------------------------------X

                         Monday
                         March 9, 2026
                         11:05 a.m.


        EXAMINATION BEFORE TRIAL of the

     Defendants, CAN MAN, LLC d/b/a BEST BEV CO.,

     BEST BEV, LLC, by and through its Witness,

     SHAWN P. SHEEHAN, taken pursuant to Court

     Order, held via Zoom, on the 9th day of

     March 2026, before a Notary Public of the

     State of New York.



        ROCKLAND & ORANGE REPORTING

        2 Congers Road, Suite 2

        New City, New York  10956

           (845) 634-4200

2

A P P E A R A N C E S:


        SAVAD CHURGIN, P.C.
            Attorneys for the Plaintiff
            55 Old Turnpike Road, Suite 209
            Nanuet, New York 10954
            (845)624-3820
            (NOT PRESENT)


        NOVIAN & NOVIAN, LLP
                Co-Counsel for the Plaintiff
                1801 Century Park East, Suite 1201
                Los Angeles, California 90067
        BY:   ANDREW B. GOODMAN, ESQ.
                MATTHEW NOVIAN, ESQ.
                agoodman@novianlaw.com
                (310) 553-1222


        COOK, KURTZ & MURPHY, P.C.
                Attorneys for the Defendants
                85 Main Street
                PO Box 3939
                Kingston, New York 12402
        BY:   PAUL SHEPPARD, ESQ.
                psheppard@hhk.com
                (845)331-0702



        ALSO PRESENT:   Joseph Williams, Esq.

13

Shawn P. Sheehan

Q. If you're not the trustee, do you know who would be the trustee?

A. I don't know.

Q. Are you the sole beneficiary?

A. I don't know.

Q. What assets does the Shawn P. Sheehan Revocable Trust hold?

A. I'm not sure, I don't know. I mean I've got a bunch of attorneys and accountants that handle all of that stuff.

Q. We talked about XO Energy and the Shawn P. Sheehan Revocable Trust at somewhat of a high level.

Are you familiar with Can Man and Best Bev?

A. Generally, yes.

Q. Do you have any ownership interest in Can Man or Best Bev?

A. I believe that my trust may have some ownership interest in Best Bev, potentially in Can Man, I think.

Q. What is ETOH Worldwide, LLC?

A. It's one of the companies that I own.

Q. When was ETOH Worldwide, LLC formed?

14

Shawn P. Sheehan

A.   I have no idea.

Q.   Do you have an approximation?

A.   I don't.

Q.   Are you the sole ownership of ETOH Worldwide, LLC?

A.   I don't know.

Q.   Do you know if there are any other owners of ETOH Worldwide, LLC?

A.   I don't know.

Q.   What does ETOH stand for?

A.   I don't know.

Q.   What is Maho, LLC, M-a-h-o?

A.   I don't know.

Q.   Do you have any ownership interest in Maho, LLC?

A.   Not that I'm aware of.

Q.   What is Waverly Trade Center, LLC?

A.   I don't know.

Q.   Do you have any ownership interest in Waverly Trade Center, LLC?

A.   I don't know.

Q.   What is Cleo Trio, C-l-e-o, T-r-i-o, LLC.

A.   I don't know.

15

Shawn P. Sheehan

Q.   Do you have any ownership interest in Cleo Trio, LLC?

A.   I don't think so, I don't know, I never heard of it.

Q.   What is located at 6501 Red Hook Plaza, Suite 201, in St. Thomas, Virgin Islands?

A.   That is a mail center where, I don't know, several hundred to several thousand people in businesses have their mail delivered to.

Q.   That's not your office?

A.   No, it's a mail center.

Q.   Where is your office located?

A.   In, I have an office in St. Thomas.

Q.   What's the address?

A.   I don't know.

Q.   You don't know the address of your office?

A.   No.

Q.   What is located at 6116 State Smith Bay, St. Thomas, Virgin Islands?

A.   I don't know.

Q.   Do you know what business entities operate from or have accounts at the State Smith Bay address?

16

Shawn P. Sheehan

MR. SHEPPARD:   Object to the form.

You can go ahead and answer, Shawn.

A.   Yeah, I don't know.

Q.   Do you know Ryan Uszenski?

MR. GOODMAN:   For the record, it's U-s-z-e-n-s-k-i.

A.   Yes.

Q.   How did you first meet Ryan Uszenski?

A.   I first met Ryan when he was working at Merrill Lynch in St. Thomas.

Q.   When was that?

A.   I don't know.

Q.   Do you have an approximation?

A.   2011 or 2015.

Q.   What is your business relationship with Ryan Uszenski?

A.   I believe that Ryan may work for one of my entities.

Q.   Which entity or entities?

A.   I'm not sure which one.

Q.   Do you know if Ryan Uszenski works for Can Man?

A.   I think he did, yeah.

Q.   Do you know if Ryan Uszenski works for

17

                    Shawn P. Sheehan

Best Bev?

        A.    I believe he has done some work for
Best Bev.

        Q.    Other than Can Man or Best Bev, do you
have any other business relationships with Ryan
Uszenski?

        A.    Yes.

        Q.    What other business relationships do
you have with Ryan Uszenski?

        A.    He is a personal financial adviser, so
I've used him in the past for investments.

        Q.    Does Mr. Uszenski have any role at ETOH
Worldwide?

        A.    I don't know.

        Q.    Does Mr. Uszenski have any role at XO
Energy?

        A.    Yes.

        Q.    What is his role at XO Energy?

        A.    He has helped out with accounting and
finance issues.

        Q.    What is the nature of those accounting
finish issues that he's helped with?

        A.    Just general accounting and finance.

                    MR. GOODMAN:   I'd like to mark for

20

Shawn P. Sheehan

A.   I don't know.

Q.   As of October 1, 2021, how much had the Shawn P. Sheehan Revocable Trust actually advanced to Can Man?

A.   I don't know if my trust had advanced money prior to this.

Q.   What is the total amount drawn under this note from its inception to the present?

A.   I have no idea.

Q.   Do you know the interest rate?

A.   I don't know.

Q.   What is the current outstanding principle balance of this note?

A.   I have no idea.

Q.   What is the total accrued interest on this note?

A.   I don't know.

Q.   Has Can Man made any payments on this note, either in principle or interest?

A.   I don't know.

MR. GOODMAN:  I would like to mark for identification as Exhibit B a document dated October 10, 2021 and the subject is Notice of Conversion of Amounts Due Under

111

C E R T I F I C A T I O N

I, Suzanne DiMarzo, a Stenotype Reporter and Notary Public within and for the State of New York, hereby certify:

That the witness whose examination is hereinbefore set forth was duly sworn or affirmed by a Notary Public and that the transcript of said examination is a true record of the testimony given by the said witness; and

That I am not related to any of the parties to this action by blood or marriage, and I am in no way interested in the outcome of this matter.

_____
Suzanne DiMarzo