UNITED STATES DISCTRICT COURT
NORTHERN DISTRICT OF NEW YORK

HAPPY HOUR DRINKS COMPANY, INC.,

Plaintiff,

vs.

CAN MAN, LLC, d/b/a Best Bev Co., BEST BEV LLC and JOHN DOES 1 through 100,

Defendants.

**AFFIDAVIT OF PAUL T. SHEPPARD, ESQ. IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Case No. 3:24-cv-00047 (ECC/ML)

STATE OF NEW YORK )
) SS:
COUNTY OF BROOME )

PAUL T. SHEPPARD, ESQ., being duly sworn, deposes and says:

1. I am an attorney duly licensed to practice before the courts of the State of New York and this Court. I am a member of Hinman, Howard & Kattell, LLP, the attorneys for the defendants Can Man, LLC ("Can Man") and Best Bev, LLC ("Best Bev") in the above-captioned action. I make this affidavit in opposition to plaintiff Happy Hour Drinks Company, Inc.'s ("Happy Hour") motion for partial summary judgment.

2. Attached hereto as Exhibit "A" is a true and correct copy of pages 62-63 of the December 16, 2024 deposition of Andrew Zimmerman.

3. Attached hereto as Exhibit "B" is a true and correct copy of pages 107-113 and 154-157 of the February 4, 2025 deposition of Andrew Zimmerman.

4. Attached hereto as Exhibit "C" is a true and correct copy of pages 181-184, 188-189, and 191-192 of the February 5, 2025 deposition of Andrew Zimmerman.

5. Attached hereto as Exhibit "D" is a true and correct copy of pages 80-83 of the February 5, 2023 deposition of Andrew Ciocci.

6. Attached hereto as Exhibit "E" is a true and correct copy of pages 129, 133-134, and 136-137 of the March 27, 2025 deposition of Tyler Mondoc.

7. Attached hereto as Exhibit "F" is a true and correct copy of pages 55-58, 68, 80, 82-83 and 92 of the April 9, 2026 deposition of Casey Parzych.

8. Attached hereto as Exhibit "G" is a true and correct copy of pages 15, 62-63 and 73-74 of the December 11, 2024 deposition of Matthew Novian.

9. Attached hereto as Exhibit "H" is a true and correct copy of pages 1571-72 of the February 12, 2025 deposition of Matthew Novian.

10. According to the file for this matter, a copy of the October 13, 2022 email from Andrew Zimmerman, titled "Leakers Sinking the Ship," referenced throughout plaintiff's motion papers, and based on which plaintiff is asserting a new theory of liability, was produced in discovery to the plaintiff's counsel on August 12, 2024.

11. Thereafter, counsel for plaintiff deposed Mr. Zimmerman over three days (December 16, 2024, February 4, 2025 and February 5, 2025), and questioned Mr. Zimmerman at length regarding this email.

12. I have reviewed the May 1, 2026 declaration of Dr. Rober Iezzi, and the "Expert Report" dated September 26, 2025 annexed thereto as Exhibit "A" (Dkt. No. 133-5). I make the following observations regarding Dr. Iezzi's declaration and report which, defendants submit, the Court ought to take into consideration on this motion, in connection with its role as the "gate-keeper" regarding his qualifications and the reliability of his conclusions, and in determining whether and to what extent his proffered testimony should be considered.

13. First, Dr. Iezzi explains that he was retained to offer an expert opinion on what caused Happy Hour's cans to leak. (Dkt. No. 133-5, Iezzi Aff. ¶ 8.) He does not claim to, nor does he actually offer an opinion as to any applicable "standard of care" relevant to this motion.

14. There is nothing in Dr. Iezzi's *curriculum vitae* or his report establishing that he is qualified to opine on the standard of care in the "ready to drink" beverage or beverage co-packing industry. He is a metallurgist and notes only that he is "qualified to offer opinions on aluminum can corrosion because of [his] more than 40 years' experience in corrosion technology." (Dkt. No. 133-5, Iezzi Decl. ¶¶ 5-7, and Ex. A, p. 3).

15. There is no indication, in his declaration or report, that Dr. Iezzi surveyed RTD beverage co-packers or relied on any such evidence in formulating or expressing any opinion regarding "standard of care."

16. Plaintiff's assertions to the contrary notwithstanding, Dr. Iezzi does not opine that any applicable "standard of care" required defendants—in the absence of a specific request from plaintiff—to perform pre-production validation testing, or to test for and maintain copper levels below 0.2 ppm and chloride levels below 50 ppm.

17. While Dr. Iezzi does assert that that the "industry-wide standard" for dissolved oxygen (DO) levels is 1.2 ppm (Dkt. No. 133-5, Iezzi Decl. ¶ 12[c]), he also notes that the Ardagh cans at issue in this litigation had a "warranty limit" of 1,000 ppm (*Id.*), *i.e.*, below his asserted "industry-wide standard," but offers no evidence that any applicable "standard of care" required defendants—in the absence of a specific request from plaintiff—to maintain DO levels below Ardagh's warranty limit, particularly in light of plaintiff's failure to provide Can Man with those can-specific specifications.

18. There are several glaring errors and omissions in Dr. Iezzi's analysis and report:

a. He states that "Can Man changed tequila suppliers in the summer of 2022 from Casa Maestri to Infinity tequila. Prior to the change in tequila, leakers did not occur." (Dkt. No. 133-5, Ex. A at p. 9) This is not true. The June 2022

production run, which used Casa Maestri tequila, developed "pinhole" leaks. (Dkt. No. 130-13, Pitts Decl ¶¶ 12-13).

b. He highlights (for some reason) the assertion that Can Man experienced leaking cans with other customers (Dkt. No. 133-5, Ex. A at pp. 5, 7), but ignores the fact that none of these other customer's cans involved "pinhole" leaks. (Zimmerman Decl. ¶ 11; Dkt. No. 130-13, Pitts Decl. ¶¶ 13-14).

c. He ignores the fact that cans from the April 2023 production run, which controlled for and adhered to Ardagh' DO specifications, still developed "pinhole" leaks. (Dkt. No. 130-13, Pitts Decl. ¶¶ 34, 35)

19. These errors and omissions call the reliability of his conclusions into doubt. If both tequilas were ingredients in production runs that resulted in pinhole leaks (i.e., the June 2022 production run for the old tequila and the August/September/October runs for the new tequila), the suggestion that the "switch" from one tequila to another triggered the leaks is unsupportable. Likewise, if the same leaks developed following the April 2023 production run, in which DO levels were maintained below 700 ppm, the conclusion that DO levels caused the leaks is not reliable.

20. In addition, Dr. Iezzi completely failed to take two obvious possible contributory factors into account: Happy Hour's other (non-tequila) ingredients and, in particular, the Ardagh cans, all of which were sourced and provided by plaintiff.

21. Another, more technical flaw is disclosed by Dr. Iezzi's report. He references two sets of test results: one from Bdas and one from Eurofins. (Dkt. No. 133-5, Ex. A at pp. 9-12). The unit of measure for those respective tests is different: (a) mg/L for Bdas; and (b) parts per million (ppm) for Eurofins. (See i*d*.) Dr. Iezzi failed to translate the results of one of the tests to make an apples-to-apples comparison of the BDAS and Eurofins results. Again, this seriously undercuts the validity of his conclusions.

22. In addition, Dr. Iezzi relied heavily on an undisclosed, unattached report from Ardagh, identified only as "TR # T23046 & T23064, 4/15/2025." (Dkt. No. 133-5, Ex. A at pp. 4, 10-15) Obviously, Ardagh would be disinclined to blame its own cans for any of problems at issue in this case.

23. Finally, Dr. Iezzi's suggestion—and plaintiff's assertion—that Can Man is responsible for the leaking issues completely ignores plaintiff's fault for the resulting issues. As the record makes clear, plaintiff never requested pre-production validation testing, never requested testing for or maintenance of any specific copper or chloride levels, and never requested that Can Man adhere to any particular DO level in the production of plaintiff's products.

24. In sum, Dr. Iezzi lacks sufficient qualifications to opine on the relevant "standard of care," and plaintiff's assertions regarding this issue are disputed vis a vis the parties' respective obligations under their co-packing agreement. Further,

even if Dr. Iezzi is qualified to opine on the cause of the leaks at issue, the validity and reliability of his conclusions are called into question by his various errors and omissions. At the very least, to the extent admissible, his opinions should be subject to vigorous cross-examination and the trier of fact should have the final word on the issue of causation. Finally, any suggestion that Dr. Iezzi or the plaintiff have established that defendants—as opposed to the plaintiff—are responsible for the leaks (whatever the cause) should be rejected and left for the jury to decide.

Paul T. Sheppard

Sworn to before me this 22nd day
of May, 2026.

Karen M. Currier
Notary Public

KAREN M CURRIER
Notary Public, State of New York
No. 01CU6353038
Residing in Tioga County
My Commission Expires Jan. 17, 2029