# EXHIBIT "F"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT COURT OF NEW YORK

-----------------------------------------------x

HAPPY HOUR DRINKS COMPANY, INC.,

Plaintiff,

- against -

DOCKET#
3:24-cv-0047

CAN MAN, LLC d/b/a BEST BEV CO., BEST BEV, LLC
and JOHN DOES 1 THROUGH 10,

Defendants.

-----------------------------------------------x

Thursday
April 9, 2026
2:03 p.m.

EXAMINATION BEFORE TRIAL of the Non-Party Witness, CASEY PARZYCH, taken pursuant to Notice, held via Zoom Videoconferencing on the 6th day of March 2026, before a Notary Public of the State of New York.

ROCKLAND & ORANGE REPORTING
2 Congers Road, Suite 2
New City, New York 10956

(845) 634-4200

A P P E A R A N C E S:

SAVAD CHURGIN, P.C.
Attorneys for the Plaintiff
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954
(845) 624-3820
(NOT PRESENT)

NOVIAN & NOVIAN, LLP
Co-Counsel for the Plaintiff
1801 Century Park East, Suite 1201
Los Angeles, California 90067
(310) 553-1222
BY: ANDREW B. GOODMAN, ESQ.
agoodman@novianlaw.com

A P P E A R A N C E S:

HINMAN, HOWARD & KATTELL, LLP
Attorneys for the Defendants
80 Exchange Street
Binghamton, New York 13901
(607) 723-5341
BY: PAUL T. SHEPPARD, ESQ.
psheppard@hhk.com

HAL PITKOW, ESQUIRE
Attorney for the Witness
1107 Taylorsville Road, Suite 101
Washington Crossing, Pennsylvania 18977
(215) 321-1313
pitkow@aol.com

ALSO PRESENT:
JOSEPH WILLIAMS, ESQ.
In-house counsel for Best Bev

MR. GOODMAN: Yes.

Q. Do you have -- I'll see if I can ask it this way, did you have an understanding that the leaking can issues with Happy Hour were caused by either elevated copper levels or excessive dissolved oxygen?

MR. SHEPPARD: Object to the form.

MR. PITKOW: Objection.

A. I don't believe the leaking can issues that Best Bev Happy Hour runs had were related to those two things.

Q. And why not?

A. Because I'm -- because I have -- because, as I told you, I was on the line during -- during that run and -- and I believe it was a tooling related issue.

Q. Did you say tooling related issue?

A. Yes.

Q. What was the tooling related issue with respect to the runs for Happy Hour in which you were personally on the line?

A. I believe that there was -- the tooling on the seamer was not -- was not setup right, I think.

Casey Parzych

Q. And as a result of the tooling on the seamer not being setup right, what happened with the Happy Hour production runs?
A. The --
MR. SHEPPARD: Object to the form.
A. I believe the cans produced by Best Bev leaked.
Q. Going back to Exhibit C and your e-mail from November 1, 2023, there is a reference in the e-mail to a failure of leadership at that time. Who is the leadership you were referring to?
A. I believe I was referring to leadership at Can Man at that time.
Q. And what persons?
MR. PITKOW: Objection.
A. Sorry, did you say what percent?
Q. What persons?
A. Oh, persons. I am -- I was probably most likely referring to Andy and Tyler.
Q. Were you referring to Ryan Uszenski?
MR. SHEPPARD: Objection to the form.
A. I don't believe so.
Q. Were you referring to Shawn Sheehan?
MR. SHEPPARD: Objection to the form.

A. No.

Q. Was the failure of leadership at the time that you are referencing a failure in not establishing proper quality control procedures?

MR. PITKOW: Objection --

MR. SHEPPARD: Objection to the form.

A. I'm not sure.

Q. Was the failure of leadership at that time referenced in your November 1, 2023 e-mail in Exhibit C to this deposition a failure in not having the capability to test for copper and chloride?

MR. SHEPPARD: Object to the form.

MR. PITKOW: Objection.

A. I would say no.

Q. Why is that?

A. Because that's not a common -- copper and chloride are not, in my industry experience, things that average co-packagers have the equipment to test for.

Q. Okay. And then when you referenced your experience in the industry you are referencing your experience at Midnight Madness, Wynk and Best Bev? Does that cover it?

Casey Parzych

MR. PITKOW: Objection.

A. Yes. And other facilities that I've been to during the same timeline as my involvement in those companies.

Q. What other facilities are you referring to?

A. I've been to Coca-Cola facilities, been to Pepsi facilities. I've been to Fresco facilities and other independent co-packagers.

Q. Who at Best Bev had the authority to file insurance claims?

A. I'm not sure that that was ever clearly defined.

Q. There were -- Amanda Wieand and Jesse King, what was Amanda Wieand's role at Best Bev?

A. I believe -- I believe she worked in the warehouse.

Q. What was her job title at Best Bev?

A. I don't -- I don't remember or recall.

Q. What was Jesse King's role at Best Bev?

A. He was the -- I believe it was Vice-President of Business Development.

Q. And what was John Pitts' role at Best Bev?

Casey Parzych

MR. SHEPPARD: Object to the form.

A. No.

Q. All right, and then Midnight Madness Adversary Complaint alleges that Best Bev was created either as at successor to Can Man or to avoid liability for Can Man's misconduct. Do you agree with that characterization?

MR. SHEPPARD: Object to the form.

A. I do not agree with that.

Q. Why not?

A. Why not? Because I -- they are two different businesses in two different places and -- yeah.

Q. Any other reason?

MR. PITKOW: I'm going to object. I think you are asking the witness to draw legal conclusions about liability and that is not really his question. I think you have to ask focused questions, Andrew.

MR. GOODMAN: For the love of God, if you could please stop making speaking objection and coaching. My question was a simple follow-up question. He said that he didn't agree with the characterization of why

Casey Parzych

Best Bev, LLC in Waverly, New York?

A. My best estimation is in 2022, but I'm not sure.

Q. What is your understanding of the difference between Best Bev, LLC in Waverly, New York and Can Man d/b/a Best Bev?

A. What is my -- sorry, the question is what is my understanding of the difference?

Q. Yes.

A. That they are two different companies.

Q. Do you have an understanding as to why Can Man used the d/b/a Best Bev?

A. I think that Can Man, if I remember, was a colloquialism in the Virgin Islands and didn't seem like a good fit for a business identity.

Q. When you say Can Man was a colloquialism in the Virgin Islands, where did you learn that?

A. I think in discussion with Ryan Uszenski.

Q. And what is your understanding of why Can Man was not good as a business identity?

A. I think it was tongue-in-cheek in the

MR. GOODMAN: We were going to, but --

Q. Do you know one-way or another --

MR. PITKOW: I can spell it for you, but you don't want me to talk, right?

MR. GOODMAN: If you know how to spell it, feel free. I just don't want you to coach the witness and interfere, but if you know how to spell it, that's helpful.

MR. PITKOW: That may be coaching the witness on how to spell.

It's D-R-A-N-G-U-L-A, I believe.

MR. GOODMAN: All right, we will take that.

Q. Anyone else involved in the decision to form Best Bev besides yourself, Shawn Sheehan, and Carey Drangula?

A. I think Angus Rittenburg was involved too.

Q. Anyone else?

A. I think that was it.

Q. Why was Best Bev, LLC formed?

A. Because there seemed to be an opportunity in the canned beverage co-packaging base for years leading up to -- let's just say

years leading up to 2022, 2023, maybe for a decade there was a shortage of aluminum can manufacturers and that shortage went away based on more aluminum can manufacturing plants being made, which then resulted in a shortage of aluminum can filling companies.

Q. Who is Carey Drangula?

A. She is an attorney.

Q. And who is she an attorney for?

A. Currently I'm not sure.

Q. At the time where yourself, Shawn Sheehan, Carey Drangula and Angus Rittenburg decided to form Best Bev who was she an attorney for?

MR. SHEPPARD: Object to the form.

A. She was, at that time, I believe an attorney for Shawn Sheehan and entities that he had. Myself and Angus, she provided legal advice for, I believe. The other -- and then once Best Bev was formed she was an attorney for Best Bev.

Q. What kind of services did she provide for you, legal services that is?

A. One example, she reviewed a lease for some storage space for me.

Casey Parzych

Q. Do you recall any such customers?
A. Happy Hour.
Q. Anyone else?
A. The one in the exhibit I've already forgotten the name of. If you want to put up -- I can pull-up the exhibit to get the name, that's another example of one.
MR. GOODMAN: Sure, if it would refresh your recollection.
A. Oh, Casa Tera. Yep. And then those are the ones I remember right now.
Q. Okay. Did Best Bev take-over Can Man's lease at the Waverly facility in New York?
MR. SHEPPARD: Objection to the form.
MR. PITKOW: Objection.
A. I don't -- I don't -- I wasn't -- I don't recall. Or -- yeah, I don't recall Can Man having a lease in the Waverly area.
Q. Did Best Bev take-over any of Can Man's supplier relationships?
MR. SHEPPARD: Object to the form.
A. I would say that Best Bev at least used to purchase from some suppliers that Can Man also purchased from.

C E R T I F I C A T I O N

I, Yvette Arnold, a Stenotype Reporter and Notary Public within and for the State of New York, hereby certify:

That the witness whose examination is hereinbefore set forth was duly sworn or affirmed by a Notary Public and that the transcript of said examination is a true record of the testimony given by said witness; and

That I am not related to any of the parties to this action by blood or marriage, and I am in no way interested in the outcome of this matter.

Yvette Arnold